Thomas E. Luebben
Samuel D. Hough
LUEBBEN JOHNSON & BARNHOUSE LLP
7424 4th Street NW
Los Ranchos de Albuquerque, New Mexico 87107
(505) 842-6123 (telephone)
(505) 842-6124 (facsimile)
tluebben@luebbenlaw.com
shough@luebbenlaw.com

Attorneys for Plaintiff,
PUEBLO OF JEMEZ, a federally recognized Indian tribe

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

| | |
|---|---|
| PUEBLO OF JEMEZ, a federally recognized Indian tribe, | Case No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT TO QUIET TITLE TO ABORIGINAL INDIAN LAND** |
| UNITED STATES OF AMERICA, | |
| Defendant. | Honorable _____ |

For its cause of action Plaintiff states as follows:

### Nature of Case

1.      Since at least the 12th century A.D., the ancestral Jemez people (whose descendants comprise the modern Pueblo of Jemez) used and occupied the lands of the Valles Caldera National Preserve and surrounding areas in the Jemez Mountains of New Mexico.  The ancestral Jemez people were the predominant and primary Native American occupants and land users of the Jemez Mountains, including the lands of the Valles Caldera National Preserve and the greater

Rio Jemez watershed, over a period of 800 years, thereby establishing federal common law aboriginal Indian title to the lands of the Valles Caldera National Preserve based upon exclusive use and occupancy. This aboriginal Indian title is now vested in Plaintiff, the modern federally-recognized Pueblo of Jemez.

2.      In 1860 Congress authorized the heirs of Luis Maria Cabeza de Baca (the "Baca heirs") to select 496,447 acres, in no more than five square parcels, of so-called "public domain" lands anywhere in the Territory of New Mexico. This American land grant was provided as settlement of a Mexican land grant claim in the area of Las Vegas, New Mexico, that conflicted with the Town of Las Vegas Community Grant. This American land grant was known as the "Baca Float."

3.      One of the parcels selected by the Baca heirs encompassed approximately 99,289 acres including and surrounding the Valles Caldera. This tract was subsequently known as Baca Location No. 1, or the Baca Ranch. The Baca heirs received this grant subject to the continuing aboriginal Indian title of the Pueblo of Jemez.

4.      On July 25, 2000, the United States purchased the property interests of the Baca heirs' successors in interest, the Dunnigan family, to establish the Valles Caldera National Preserve. The property interest in these lands now held by the United States remains subject to the aboriginal Indian title of the Pueblo of Jemez.

5.      The lands purchased from the Dunnigan family are more particularly described in the Warranty Deed and Assignment of Rights under Warranty Deed and Reciprocal Conservation and Access Easement to the United States on July 25, 2000. A copy is attached to this complaint as Exhibit 1.

6.     The lands described in Exhibit 1 include the lands encompassed within the Valles Caldera National Preserve and Bandelier National Monument as acquired pursuant to Section 104 of the Valles Caldera Preservation Act, codified at 16 U.S.C. § 698v-2 (hereinafter collectively referred to as the "Valles Caldera National Preserve").

7.     This action seeks a judgment quieting the aboriginal Indian title of the Pueblo of Jemez to the lands described in Exhibit 1.

## Jurisdiction

8.     This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346(f), and 28 U.S.C. § 2409a. This action arises under the federal common law of aboriginal Indian title and the Quiet Title Act, as more particularly set forth below.

9.     Pursuant to 28 U.S.C. § 2409a(a), defendant United States of America has consented to be sued in civil actions to adjudicate disputes regarding title to real property in which the United States claims an interest.

10.    Plaintiff first learned of the existence of the claim of interest of the United States in the lands of the Valles Caldera National Preserve on or after July 25, 2000, the date the United States purchased the lands of the Valles Caldera National Preserve.

## Venue

11.    This Court is the proper venue under 28 U.S.C. §§ 1391 and 1402, as it is the judicial district where the property that is the subject of this quiet title action is located.

## Parties

12.     Plaintiff, the Pueblo of Jemez, New Mexico (hereinafter "Jemez Pueblo"), is a federally-recognized Indian tribe (references to the "ancestral Jemez", "ancestral Jemez People" and to "Jemez Pueblo" are references to Plaintiff).

13.     Defendant is the United States of America.

## Factual Allegations

14.     The Valles Caldera is the dormant crater of a supervolcano in the center of the Jemez Mountains, New Mexico. The crater rim is approximately 20 miles in diameter, and contains four high-mountain valleys and eleven resurgent volcanic domes.

15.     The Valles Caldera, the Caldera rim, the four high mountain valleys and the eleven resurgent volcanic domes are located within the exterior boundaries of the Valles Caldera National Preserve established pursuant to the Valles Caldera Preservation Act, P.L. 106-248, 114 Stat. 598, codified at 16 U.S.C. §§ 698v – 698v-10.

16.     The modern Jemez Pueblo is a consolidation of the ancestral Jemez populations of Towa-speaking pueblos, including Pecos Pueblo and the modern Jemez Pueblo village of Walatowa.

17.     The ancestral Jemez aboriginal Indian title area including and surrounding the Rio Jemez drainage and the Valles Caldera is the western Jemez homeland.

18.     References to the "western Jemez homeland" in this complaint are synonymous with references to the "Jemez Pueblo aboriginal Indian title area," a portion of which, within the Valles Caldera National Preserve, is the subject of this complaint. However, as used in this complaint, neither the term "western Jemez homeland" nor "Jemez Pueblo aboriginal Indian title area" includes Jemez Pueblo's aboriginal Indian title area known as the "eastern Jemez

homeland," which surrounds Pecos Pueblo.  The western and eastern Jemez homelands are not adjacent.

19.     The western Jemez homeland extends over an area of more than 1,100 square miles in and around the Jemez Mountains, including the Valles Caldera National Preserve, the entire Rio Jemez drainage system above Walatowa (the modern Jemez Pueblo village), and sections of the Rio Puerco drainage west of the Jemez Mountains.

20.     Ancestral Jemez pueblo villages, important sacred areas, ceremonial sites and shrines, and geological features mark the boundaries of the western Jemez homeland.

21.     The ancestral Jemez have occupied this western Jemez homeland for over 800 years since migrating in from the mesa and canyon country to the northwest prior to 1200 A.D.

22.     Jemez Pueblo oral history refers to the area to the northwest and describes the ancestral Jemez great southern migration to their western Jemez homeland.

23.     There are numerous ancestral Jemez place names along this migration route and many of the stopping places are recognized sacred areas.

24.     When the ancestral Jemez arrived there were no other Native American villages in the upland area of the Jemez Mountains.

25.     The ancestral Jemez were drawn to their western homeland by the great mountain *Wav e ma* (Redondo Peak), fertile land, and the large image of a flying eagle that is visible to this day on the south side of *Wav e ma ku kwa* (Redondo Peak summit area).

26.     Archaeological investigations within the western Jemez homeland have identified at least 60 pueblo villages, all linked with an extensive network of trails, and many thousands of farmhouse sites, agricultural fields, ceremonial sites, sacred areas, mineral procurement areas,

hunt traps and blinds, camp sites, and various other activity areas that are associated with the ancestral Jemez.

27.     Ancestral Jemez populations in the western Jemez homeland ranged from approximately 10,000 to 15,000 during the prehistoric period.

28.     During the early Spanish colonial period, the ancestral Jemez populations ranged from approximately 7,000 to 10,000.

29.     Throughout the western Jemez homeland and surrounding the many ancestral Jemez pueblo villages are thousands of individual agricultural field houses and garden plots.

30.     The ancestral Jemez practiced agriculture in the Jemez Mountains and established an extensive high altitude farming complex in the eight square mile area of *Say wa kin tu kwa* (Banco Bonito), within the area of the Valles Caldera National Preserve.

31.     Ancestral Jemez agricultural activities in the Jemez Mountains provided food for the dozens of ancestral Jemez pueblo villages on the mesa tops and in the deep canyons to the south.

32.     Archaeological surveys in Banco Bonito have revealed an extensive complex of small masonry farm houses, pueblo structures and garden terraces.

33.     The ancestral Jemez were the only Native American tribe to establish farmsteads within the area of the Valles Caldera National Preserve.

34.     The Valles Caldera contains many very important sacred areas and religious sites of traditional ancestral Jemez culture.

35.     The Valles Caldera is greatly valued by Jemez Pueblo as a spiritual sanctuary.

36.     The pattern of the resurgent volcanic domes within the Caldera is said to resemble a bear paw print, which is important to Jemez Pueblo culture as a symbol of strength.

37.     The Valles Caldera area is sometimes described as the Jemez Holy Land or Hemish Paradise, because of the spiritual importance of the area in Jemez Pueblo religious belief.

38.     The system of trails that links these sacred areas and resource gathering areas was established in prehistory.

39.     The trails, ceremonial sites and gathering areas are all still actively used by Jemez Pueblo members today and are crucial to the continuing survival of traditional Jemez Pueblo culture and religion.

40.     Redondo Peak and surrounding areas within the Valles Caldera provide the central and indispensable geographical and spiritual core of Jemez Pueblo religion and culture.

41.     Redondo Peak is the most powerful and spiritually significant mountain to Jemez Pueblo.

42.     Redondo Peak is the location of the most sacred area for Jemez Pueblo, the Redondo Peak summit area known as *Wav e ma ku kwa*.

43.     The modern Jemez Pueblo village of Walatowa, the Redondo Peak summit area and the Valles Caldera are considered a unitary whole in Jemez Pueblo religion and culture.

44.     All of the waters from the mountain springs and rivers of the Valles Caldera, including Redondo Peak, flow down to sustain Jemez Pueblo and its irrigated fields at the modern Jemez Pueblo village of Walatowa and are considered the unitary source of Jemez Pueblo life.

45.     The Jemez Underworld Trail is an ancient religious pilgrimage trail to the north that serves as a direct spiritual channel uniting the central plaza at the Jemez Pueblo village of Walatowa to the highly sacred area and ceremonial sites, *Wav e ma ku kwa*, in the Redondo Peak summit area.

46.     North is a primary direction for the Jemez.

47.     North faces the Place of Emergence and the Underworld.

48.     There are ceremonial sites along the Jemez Underworld Trail, a complex of ceremonial sites in the Redondo Peak summit area, and ceremonial sites at cardinal positions and sacred springs around the mountain.

49.     The Jemez Underworld Trail passes across the eastern area of Banco Bonito.

50.     The Jemez Underworld Trail has been continually followed by Jemez Pueblo pilgrims and religious societies from ancient times to the present for various rituals and initiation rites at the numerous ceremonial sites and at the Redondo Peak summit area.

51.     There is an additional network of Jemez Pueblo pilgrimage trails within the Valles Caldera linking the Redondo Peak summit area to ceremonial areas and sacred springs at cardinal positions and to other trails that have been continually used by Jemez Pueblo religious societies for access to sacred areas and shrines.

52.     Jemez Pueblo pilgrimage visits to Redondo Peak and other sacred areas in the Valles Caldera continue to be made by Jemez Pueblo members to leave prayer offerings and to conduct initiations and other rituals.

53.     North of the Redondo Peak summit area are areas where Jemez Pueblo members gather medicinal plants and where Jemez Pueblo religious societies conduct initiations and other important religious activities.

54.     East of the Redondo Peak summit area are traditional hunting camps, ceremonial sites and sacred areas of the Jemez Pueblo hunt societies.

55.     South and west of the Redondo Peak summit area are ritual trails and sacred areas used by specific Jemez religious societies.

56.     Jemez Pueblo hunt societies continue to make lengthy visits in the Valles Caldera for the purposes of hunting, religious ceremonies and initiations of new members.

57.     There are numerous springs in the Valles Caldera.  All of these springs are recognized by Jemez Pueblo as sacred sites and many bear traditional ancestral Jemez place names.

58.     Mineral and hot springs in the Valles Caldera are used by the specialized Jemez Pueblo medicine societies for curing.

59.     Like their ancestors, Jemez Pueblo members continue to rely on the Valles Caldera to supply many critical resources including:

     a.     forage for livestock (cattle, sheep and horses);

     b.     water for livestock;

     c.     catchment, storage and watershed to provide irrigation water from the Rio Jemez at Walatowa;

     d.     wild plant foods for subsistence;

     e.     deer, elk, turkey and other animal foods for subsistence;

     f.     timber for construction and firewood;

     g.     mountain and forest shelter from the elements (wind, cold and heat);

     h.     plants, herbs and roots for medicine;

     i.     aspen and willow for drums and ritual objects;

     j.     oak, cherry and mahogany for bows and ritual objects;

     k.     rosewood, plumes and reeds for arrows;

     l.     obsidian and chert for stone tools;

     m.     minerals for paint and pigments;

n.     spring water and evergreens for ceremonial rites;

o.     large and small game for ceremonial use; and,

p.     feathers for ceremonial use and for arrows.

60.    The ancestral Jemez gathered and mined the extensive obsidian deposits within the Valles Caldera for local use and trade export as spear points, arrow heads, knives, scrapers, planes, gouges, drills and other tools.

61.    Jemez Pueblo members continue to mine and gather obsidian from the Valles Caldera for the manufacture of ceremonial items.

62.    Ancestral Jemez use of the Valles Caldera for livestock herding is a long tradition documented in the historic record.

63.    The ancestral Jemez grazed livestock, including horses, cattle and sheep, in the area of the Valles Caldera National Preserve after acquiring livestock from the Spanish during the Spanish colonial period and continuing through the 20th century.

64.    Jemez Pueblo continues to graze livestock in the Valles Caldera National Preserve pursuant to consensual arrangements with the Preserve.

65.    Prior to the arrival of the American military, the ancestral Jemez maintained a military presence in the Valles Caldera area.

66.    The ancestral Jemez frequently attacked and drove off Navajo raiders in the Valles Caldera area, even after the arrival of the American military.

67.    The United States has never been at war with Jemez Pueblo and has never militarily conquered the Pueblo.

68.     Prior to the establishment of the Valles Caldera National Preserve in 2000, the United States never opposed or interfered with Jemez Pueblo's continued traditional use and occupancy of the area of the Valles Caldera National Preserve pursuant to the Pueblo's aboriginal Indian title.

69.     Jemez Pueblo's right of possession, use and occupancy has not been extinguished by conquest, voluntary cession, or voluntary abandonment, or by any express act of the United States Congress purporting to take or extinguish Jemez Pueblo's aboriginal Indian title.

70.     Jemez Pueblo has never been compensated by the United States for any alleged "taking" of its aboriginal Indian title lands within the Valles Caldera National Preserve.

71.     In 1821 Luis Maria Cabeza de Baca obtained a land grant in the vicinity of Las Vegas, New Mexico, from the government of Mexico.

72.     In 1835 Hispanic settlers in the area of Las Vegas, New Mexico, obtained the Town of Las Vegas Community Grant from the government of Mexico, with similar boundaries as the earlier grant to Luis Maria Cabeza de Baca.

73.     As part of the postwar settlement between the United States and Mexico in 1848, the Treaty of Guadalupe-Hidalgo provided that all land grants from the Spanish and Mexican governments would be evaluated and, if found to be valid, would be honored.

74.     On July 22, 1854, Congress established the Office of the Surveyor General of New Mexico and appointed William Pelham Surveyor General in Santa Fe to determine the validity of New Mexico land grant claims.

75. In 1858 the heirs of Luis Maria Cabeza de Baca (the "Baca heirs") submitted their claim, seeking a determination of the validity of their large 1821 Mexican land grant in the vicinity of Las Vegas, New Mexico, to the Surveyor General of New Mexico.

76. Early in 1860 William Pelham determined that both the Baca heirs' grant and the Town of Las Vegas Community Grant were valid, although they largely overlapped.

77. On June 21, 1860, to settle the conflict between the Baca heirs' grant and the Town of Las Vegas Community Grant, the United States Congress enacted legislation authorizing the Baca heirs to select up to five unspecified square tracts of vacant land totaling up to 496,447 acres anywhere within the Territory of New Mexico. P.L. 36-197, 12 Stat. 71. These tracts were initially known as "the Baca float" because the locations were not specified by Congress.

78. Jemez Pueblo received no notice from the United States of the grant to the Baca heirs.

79. The Baca heirs' first selection, Baca Location No. 1, encompassed approximately 99,289 acres within and adjacent to the Valles Caldera within the Jemez Mountains, including the Valle Grande, the Valle Toledo and the Valle San Antonio, all of the volcanic domes within the Caldera, and the surrounding peaks comprising the rim of the Caldera.

80. The Surveyor General's office in Santa Fe approved the selection of Baca Location No. 1 by the Baca heirs on December 11, 1860.

81. The federal land department subsequently approved the selection of Baca Location No. 1 by the Baca heirs, which relinquished the interest of the United States in the Valles Caldera subject to all pre-existing rights of other parties in the tract.

82.     The lands included in Baca Location No. 1 were not "vacant," but were in fact exclusively possessed, used and occupied by Jemez Pueblo pursuant to the Pueblo's aboriginal Indian title.

83.     The Baca heirs received these lands subject to the continuing aboriginal Indian title of Jemez Pueblo.

84.     Jemez Pueblo continued to use and occupy the Valles Caldera in the ways detailed in Paragraphs 39 through 64 of this complaint during the 19th century without opposition from the Baca family.

85.     The United States purchased the property interests of the Baca heirs' successors in interest, the Dunnigan family, to approximately 94,761 acres of the lands of the Baca Location No. 1 on July 25, 2000, pursuant to the Valles Caldera Preservation Act, P.L. 106-248, 114 Stat. 598 (codified at 16 U.S.C.§§ 698v-10) to establish the Valles Caldera National Preserve.

86.     The United States purchased the Dunnigan family property interests, as described in Exhibit 1, subject to the continuing aboriginal Indian title of Jemez Pueblo.

87.     Plaintiff did not know or have reason to know of the existence of any interest of the United States in the lands of the Valles Caldera National Preserve at any time prior to July 25, 2000, the date that the United States purchased such lands.

**Cause of Action**

**To Quiet Aboriginal Indian Title in Jemez Pueblo**

88.     Plaintiff incorporates paragraphs 1 through 87 as though all such paragraphs were set forth fully herein.

89.     The United States claims title to the area of the Valles Caldera National Preserve.

90.     The United States' claim of title is subject to Jemez Pueblo's aboriginal Indian title right of possession, use and occupancy that has existed since prehistoric times.

91.     Jemez Pueblo's continuing aboriginal Indian title right of possession, use and occupancy is a real property interest in the area encompassed by the Valles Caldera National Preserve.

92.     Aboriginal Indian title may only be extinguished by a sovereign and unambiguous act of the United States Congress.

93.     The aboriginal Indian title right of possession, use and occupancy of Jemez Pueblo to the lands of the Valles Caldera National Preserve has not been terminated by conquest, by voluntary cession by Jemez Pueblo to the United States, by abandonment, or by any Act of the United States Congress purporting to extinguish Jemez Pueblo's aboriginal Indian title.

94.     The United States Congress has never ratified or otherwise consented to the alienation of the Pueblo's Indian title lands of the Valles Caldera National Preserve.

95.     The aboriginal Indian title and right of possession, use and occupancy of the lands of the Valles Caldera National Preserve remain in Jemez Pueblo.

96.     A present controversy exists between Plaintiff Jemez Pueblo and the defendant United States in that the United States controls and occupies the lands of the Valles Caldera National Preserve thereby denying Plaintiff exclusive possession, use, occupancy and control of such lands pursuant to Plaintiff's aboriginal Indian title.

### Prayer for Relief

Wherefore, Plaintiff prays that the court grant relief as follows:

1.     Enter a judgment pursuant to 28 U.S.C. § 2409a that Plaintiff has the exclusive right to use, occupy and possess the lands of the Valles Caldera National Preserve pursuant to its

continuing aboriginal Indian title to such lands.

2.      Enter a judgment pursuant to 28 U.S.C. § 2409a quieting the aboriginal Indian title to the lands of the Valles Caldera National Preserve in Plaintiff.

3.      Award Jemez Pueblo its attorneys' fees, costs and expenses for this action.

DATED: July 20, 2012

                                    LUEBBEN JOHNSON & BARNHOUSE LLP


                                    _Thomas E. Luebben_
                                    Thomas E. Luebben
                                    Samuel D. Hough
                                    7424 4th Street NW
                                    Los Ranchos de Albuquerque, New Mexico 87107
                                    (505) 842-6123 (telephone)
                                    (505) 842-6124 (facsimile)
                                    tluebben@luebbenlaw.com (email)
                                    shough@luebbenlaw.com (email)

                                    Attorneys for Plaintiff,
                                    Pueblo of Jemez

# WARRANTY DEED AND ASSIGNMENT OF RIGHTS
## UNDER WARRANTY DEED AND RECIPROCAL
## CONSERVATION AND ACCESS EASEMENT

014645

THIS WARRANTY DEED AND ASSIGNMENT OF RIGHTS UNDER WARRANTY DEED AND RECIPROCAL CONSERVATION AND ACCESS EASEMENT, made this 25ᵗʰ day of ___July___, 2000, by and between **DUNIGAN ENTERPRISES, INC., a Texas Corporation; BL & C COMPANY, a Texas Partnership; BL & C COMPANY NO. 2, a Texas Partnership; JMD '77 TRUST; ANDY DUNIGAN LIFE TRUST; PAD-JPD LIFE TRUST; BAD-JPD LIFE TRUST; FAD-JPD ESTATE TRUST; PATRICK A. DUNIGAN TRUST; BRIAN A. DUNIGAN TRUST; and BRIAN DUNIGAN LIFE TRUST** (collectively the "Grantors"), and the **UNITED STATES OF AMERICA**, by and through the Secretary of Agriculture (the "Grantee").

WITNESSETH: That the said Grantors, for $96,523,042.00 and other good and valuable consideration, to the said Grantors in hand paid by the said Grantee, the receipt and sufficiency of which is hereby acknowledged, hath granted, sold, and conveyed, and by these presents do hereby grant, sell, and convey unto said Grantee, its successors and assigns, forever, that certain parcel of land commonly known as the Baca Location No. 1 located in Sandoval and Rio Arriba Counties, New Mexico, more particularly described on Exhibit A hereto.

## I.   WARRANTY OF TITLE:

Grantors are lawfully seized in fee simple of the Property; that the Property is free from all former and other grants, bargains, sales, taxes, assessments, and encumbrances of what kind and nature soever; that Grantors have good right to sell and convey the same; and that Grantors will, and Grantors' successors and assigns shall, warrant and defend the same to Grantee, its successors and assigns forever against the lawful claims and demands of all persons, EXCEPT (1) any claims and demands of any Indian Nation, tribe or pueblo; (2) any claims and demands arising from or associated with any survey issues including, without limitation, changes in the location of the Property's exterior boundaries caused by or resulting from the Surveyor General approved survey and plat dated November 10, 1876 (surveyed by Sawyer and McBroom, U.S. Deputy Surveyors, under contract No. 68 of April 15, 1876), and the October, 1912 resurvey of the Property by William B. Douglass, General Land Office.

SUBJECT, to all reservations, easements, rights-of-way, conditions and restrictions of record, and taxes from and after the date of recordation of this instrument, and

SUBJECT TO an undivided 12 1/2% interest in and to all minerals, hot water, steam, geothermal and thermal energy, in, on, and under (a) the 89,716.31 acres, more or less, described above, (b) the 969.85 acres, more or less, referenced in the aforementioned deed dated June 29, 1966 to the United States of America (Department of Agriculture, Forest Service) described above, (c) the 185.282 acres, more or less, referenced in the

EXHIBIT
1

40652

aforementioned deed dated December 27, 1974 to the Los Alamos Ski Club, Inc., (d) the 12.158 acres, more or less, referenced in the aforementioned deed dated November 12, 1975 to J.B. Harrell, Jr., (e) the 20.161 acres, more or less, referenced in the aforementioned deed dated September 28, 1984 to J. B. Harrell, Jr., (f) the 111.983 acres, more or less, referenced in the aforementioned deed dated September 28, 1984 to Larry Knecht and Paula J. Knecht, (g) the 36.68 acres, more or less, referenced in the aforementioned deed dated September 4, 1991 to the United States of America (Department of Agriculture, Forest Service) and (h) the 49.77 acres, more or less, referenced in the aforementioned condemnation action by the United States Department of Energy commenced July 12, 1999, all as are outstanding in J.B. Harrell, Jr., Donald F. Harrell, Bubba Spears, George Thompson, Nan Gullahorn, Claire Gullahorn, and Jack Gullahorn, as set forth in those mesne instruments of record.

## II.   CONSERVATION AND ACCESS EASEMENTS:

This grant is further subject to the Conservation and Access Easement attached to the Warranty Deed from Grantors to the Pueblo of Santa Clara of even date herewith and incorporated herein by reference (the "Easement"). Grantor has conveyed to the Pueblo of Santa Clara in perpetuity the rights and restrictions set forth in said Easement that are applicable to the Federal Side of the Easement Area, as defined in said Easement and Exhibits C, D and E thereto. Within the Federal Side of the Easement Area, the rights and restrictions of said Easement run with the land and constitute a perpetual servitude thereon. Such rights and restrictions thereby imposed are deemed to be covenants and limitations on the use of the property from the date and time of the recordation of the Warranty Deed from Grantors to the Pueblo of Santa Clara of even date herewith. Said restrictions conveyed on the Federal Side of the Easement Area are appurtenant to and for the benefit of the adjoining lands of the Pueblo of Santa Clara.

This grant includes the conveyance to the Grantee of all of Grantors' right, title and interest in the Conservation and Access Easement applicable to the Pueblo Side of the Easement Area, as defined therein. Within the Pueblo Side of the Easement Area, the rights and restrictions of said Easement run with the land and constitute a perpetual servitude thereon. Such rights and restrictions thereby imposed are deemed to be covenants and limitations on the use of the property from the date and time of the recordation of the Warranty Deed from Grantors to the Pueblo of Santa Clara of even date herewith. Said restrictions reserved on the Pueblo Side of the Easement Area are appurtenant to and for the benefit of the adjoining lands of the Baca Location No. 1 acquired by the United States on or about the date of this Deed and the Santa Fe National Forest.

TO HAVE AND TO HOLD the same unto the said Grantee, its successors and assigns, forever,

IN WITNESS WHEREOF, the said Grantor has caused this instrument to be signed by its authorized representatives, attested

40653

**Dunigan Enterprises, Inc.**

By: *Walter A. Cramer*
      Walter A. Cramer

Its:  President


**BL&C Company**

By: *Walter A. Cramer*
      Walter A. Cramer

Its:  Managing Partner


**BL&C Company No. 2**

By: *Walter A. Cramer*
      Walter A. Cramer

Its:  Managing Partner


**JMD '77 Trust**

By: _____
      James Michael Dunigan, Co-Trustee

By: _____
      Paul Lenker, Co-Trustee

By: *Dorothy Pearson*
      Dorothy Pearson, Co-Trustee

**BAD-JPD Life Trust**

By: _____
      Patrick A. Dunigan, Co-Trustee

By: *Walter A. Cramer*
      Walter A. Cramer, Co-Trustee

40654

**FAD-JPD Estate Trust**

By: _____
Anne Dunigan Wilson, Co-Trustee

By: _____
Jim P. Wilson, Co-Trustee

**Patrick A. Dunigan Trust**

By: _____
Patrick A. Dunigan, Co-Trustee

By: _____
Walter A. Cramer, Co-Trustee

**Brian Dunigan Life Trust**

By: _____
Patrick A. Dunigan, Co-Trustee

By: _____
Walter A. Cramer Co-Trustee

**Andy Dunigan Life Trust**

By: _____
Brian A. Dunigan, Co-Trustee

By: _____
Walter A. Cramer, Co-Trustee

Page 4 of 18

40655

**PAD-JPD Life Trust**

By: _____
   Brian A. Dunigan, Co-Trustee

By: _____
   Walter A. Cramer, Co-Trustee

**Brian A. Dunigan Trust**

By: _____
   Brian A. Dunigan, Co-Trustee

By: _____
   Walter A. Cramer, Co-Trustee

STATE OF TEXAS
COUNTY OF TAYLOR

    This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as President of Dunigan Enterprises, Inc., a Texas corporation.

[Notary Seal: NEDRA MIDDLETON, Notary Public, State of Texas, My Commission Exp 03-26-03]

_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_

STATE OF TEXAS
COUNTY OF TAYLOR

    This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Managing Partner of BL&C Company, a Texas general partnership.

[Notary Seal: NEDRA MIDDLETON, Notary Public, State of Texas, My Commission Exp 03-26-03]

_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_

40656

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Managing Partner of BL&C Company No. 2, a Texas general partnership.



NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_


STATE OF TEXAS
COUNTY OF TARRANT

This instrument was acknowledged before me on _JUNE 26_, 2000, by James Michael Dunigan as Co-Trustee of the JMD '77 Trust.

_____
Notary Public

My commission expires: _12-22-2003_

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Paul Lenker as Co-Trustee of the JMD '77 Trust.

_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_



NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

40657

STATE OF TEXAS
COUNTY OF TARRANT

This instrument was acknowledged before me on June 26 , 2000, by Dorothy
Pearson as Co-Trustee of the JMD '77 Trust.

_____
Notary Public

(Seal)

My commission expires: 12-22-2003

STATE OF TEXAS
COUNTY OF DALLAS

This instrument was acknowledged before me on 6 -26 , 2000, by Patrick
A. Dunigan as Co-Trustee of the BAD-JPD Life Trust.

_____
Notary Public



CAROL ESSARY
Notary Public, State of Texas
My Comm. Exp. 5-12-2002

My commission expires: 5-12-2002

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on June 27 , 2000, by Walter
A. Cramer as Co-Trustee of the BAD-JPD Life Trust.

_____
Notary Public



NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

My commission expires: 03/26/03

40658

STATE OF TEXAS
COUNTY OF DALLAS

    This instrument was acknowledged before me on _____ 6-26 _____, 2000, by Anne Dunigan Wilson as Co-Trustee of the FAD-JPD Estate Trust.

CAROL ESSARY
Notary Public, State of Texas
My Comm. Exp. 5-12-2002

Notary Public

My commission expires: _____ 5-12-2002 _____

STATE OF TEXAS
COUNTY OF DALLAS

    This instrument was acknowledged before me on _____ 6-26-6 _____, 2000, by Jim P. Wilson as Co-Trustee of the FAD-JPD Estate Trust.

CAROL ESSARY
Notary Public, State of Texas
My Comm. Exp. 5-12-2002

Notary Public

My commission expires: _____ 5-12-2002 _____

STATE OF TEXAS
COUNTY OF DALLAS

    This instrument was acknowledged before me on _____ 6-26 _____, 2000, by Patrick A. Dunigan as Co-Trustee of the Patrick A. Dunigan Trust.

CAROL ESSARY
Notary Public, State of Texas
My Comm. Exp. 5-12-2002

Notary Public

My commission expires: _____ 5-12-2002 _____

Page 8 of 18

40659

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Co-Trustee of the Patrick A. Dunigan Trust.



Nedra Middleton
Notary Public

My commission expires: _03/26/03_

STATE OF TEXAS
COUNTY OF DALLAS

This instrument was acknowledged before me on _6-26_, 2000, by Patrick A. Dunigan as Co-Trustee of the Brian Dunigan Life Trust.



Carol Essary
Notary Public

My commission expires: _5-12-2002_

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Co-Trustee of the Brian Dunigan Life Trust.

Nedra Middleton
Notary Public

My commission expires: _03/26/03_

40660

STATE OF NEW MEXICO
COUNTY OF SANTA FE

This instrument was acknowledged before me on June 23, 2000, by Brian A. Dunigan as Co-Trustee of the Andy Dunigan Life Trust.



(Seal)

_____
Notary Public

My commission expires: 10-18-2001

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on June 27, 2000, by Walter A. Cramer as Co-Trustee of the Andy Dunigan Life Trust.



NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

_____
Notary Public

My commission expires: 03/26/03

STATE OF NEW MEXICO
COUNTY OF SANTA FE

This instrument was acknowledged before me on June 23, 2000, by Brian A. Dunigan as Co-Trustee of the PAD-JPD Life Trust.



(Seal)

_____
Notary Public

My commission expires: 10-18-2001

40661

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Co-Trustee of the PAD-JPD Life Trust.



_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_

NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

STATE OF NEW MEXICO
COUNTY OF SANTA FE

This instrument was acknowledged before me on _June 23_, 2000, by Brian A. Dunigan as Co-Trustee of the Brian A. Dunigan Trust.

(Seal)

_Fel Gallegos_
Notary Public

My commission expires: _10-18-2001_

STATE OF TEXAS
COUNTY OF TAYLOR

This instrument was acknowledged before me on _June 27_, 2000, by Walter A. Cramer as Co-Trustee of the Brian A. Dunigan Trust.



_Nedra Middleton_
Notary Public

My commission expires: _03/26/03_

NEDRA MIDDLETON
Notary Public, State of Texas
My Commission Exp 03-26-03

W0100566.WPD

40662

EXHIBIT A to Warranty Deed and Assignment of Rights Under
Warranty Deed and Reciprocal Conservation and Access Easement
from Dunigan Enterprises, Inc. et al. to
United States of America dated _July 25_____, 2000

NEW MEXICO PRINCIPAL MERIDIAN, Sandoval and Rio Arriba Counties, New Mexico

**BACA LOCATION NO. 1**

All of that certain land which is commonly known as "Baca
Location No. 1", in Rio Arriba and Sandoval Counties, New
Mexico, as shown and designated on the official Government
plat entitled "PLAT showing INDEPENDENT RESURVEY of the
BACA LOCATION No. 1, made by L.A. Osterhoudt, W.V. Hall,
and Chas. W. Devendorf, U.S. Cadastral Engineers, June 30,
1920-Aug. 24, 1921, under Special Instructions for Group No.
107 dated Feb. 12, 1920 in New Mexico", approved September
30, 1922, on record with the Office of Cadastral Surveys, New
Mexico State Office, Bureau of Land Management, and
containing 99,289.39 acres, more or less.

LESS AND EXCEPTING THEREFROM:

10.09 acres, more or less, in conflict, Homestead
Certificate/Patent No. 1418, Application 2306,
dated October 18, 1890, located within sec. 16, T.
19 N.,  R. 3 E., NMPM; and

20.00 acres, more or less, Mineral Survey No.
553, Jemez Mining District, General Land
Office/Patent No. 25904 dated July 27, 1895;
located within sec. 4, T. 19 N., R. 3 E., NMPM;
and

19.22 acres, more or less, Mineral Survey No.
1019, Jemez Mining District, General Land
Office/Patent No. 31902 dated December 18,
1899; located within sec. 4, T. 19 N., R. 3 E.,
NMPM; and

13.05 acres, more or less, Homestead Entry (H.E.)
Survey No. 138, Patent Number 700929, Santa Fe
013686 dated July 30, 1919; located within sec. 9,
T. 19 N., R. 3 E., NMPM; and

40663

0.52-acre, more or less, near the south boundary of the Baca Location No. 1 within sec. 34, T. 19 N., R. 4 E., NMPM, said conflict arising from Homestead Entry (H.E.) Survey No. 76, Patent Number 973622, Santa Fe 038713 dated January 30, 1926, recorded on May 25, 1927, Sandoval County, New Mexico, in Book 2 Misc., at pages 248-249; and

A parcel of land along the north boundary containing 969.85 acres, more or less, conveyed to the United States of America (Department of Agriculture, Forest Service) from Baca Land & Cattle Company and Dunigan Tool And Supply Company, as set forth in that certain Warranty Deed dated June 29, 1966, recorded July 7, 1966, Sandoval County, New Mexico, in Vol. DR-20, pages 428-430; and

The surface estate to a parcel of land along the east boundary containing 185.282 acres, more or less, conveyed to Los Alamos Ski Club, Inc., from Dunigan Enterprises, Inc., Pride Refining, Inc., BL&C Company, and Baca Cattle Feeders, as set forth in that certain Deed dated December 27, 1974, recorded February 21, 1975, Sandoval County, New Mexico, in Vol. DR-59, pages 686-695; and

A parcel of land in the southeast corner containing 3,076 acres, more or less, conveyed to the United States of America (Department of Interior, National Park Service) from Dunigan Enterprises, Inc., et al., as set forth in that certain Warranty Deed dated February 8, 1977, executed in four parts, recorded February 21, 1977, Sandoval County, New Mexico, as instruments Nos. 25576, 25577, 25578, and 25579, in Vol. DR 75; and in that certain Correction Deed dated July 6, 1984, recorded July 27, 1984, Sandoval County, New Mexico, in Vol. DR-128, pages 387-402; and

The surface estate to a parcel of land near the south boundary containing 12.158 acres, more or less, conveyed to J. B. Harrell, Jr., from Dunigan

40664

Enterprises, Inc., BL&C Company, Baca Cattle Feeders, and Pride Partnership, as set forth in that certain Warranty Deed dated November 12, 1975, recorded May 15, 1986, Sandoval County, New Mexico, in Vol. DR-141, pages 606-615; and

The surface estate to a parcel of land along the south boundary containing 20.161 acres, more or less, conveyed to J. B. Harrell, Jr., from BL&C Company, BL&C Company No. 2, and Dunigan Enterprises, Inc., as set forth in that certain Warranty Deed dated    September 28, 1984, recorded May 15, 1986, Sandoval County, New Mexico, in Vol. DR-141, pages 616-626; and

The surface estate to a parcel of land in the southeast corner containing 111.983 acres, more or less, conveyed to Larry Knecht and Paula J. Knecht, his wife, from BL&C Company, BL&C Company No. 2, and Dunigan Enterprises, Inc., as set forth in that certain Warranty Deed dated September 28, 1984, recorded January 14, 1987, Sandoval County, New Mexico, in Vol. DR-146, pages 742-752; and

Two parcels of land along the south boundary aggregating 36.68 acres, more or less, donated to the United States of America (Department of Agriculture, Forest Service) by Dunigan Enterprises, Inc., BL&C Company, and BL&C Company No. 2, as set forth in that certain Warranty Deed dated September 4, 1991, recorded December 13, 1991, Sandoval County, New Mexico, in Vol. DR-178, pages 193-196; and

A parcel of land within sec. 16, T. 19 N., R. 3 E., NMPM, containing 1.075 acres, more or less, conveyed to Hofheins, Inc., by Baca Land & Cattle Company and Dunigan Enterprises, Inc., as set forth in that certain Deed dated July 29, 1971, recorded August 16, 1971, Sandoval County, New Mexico, in Vol. DR 37, pages 182-184; and

The rights acquired by the United States Department of Energy in and to a parcel of land

Page 14 of 18

40665

containing 49.77 acres, more or less, and being designated as Tract No. 2013-E, as described in the Condemnation Complaint filed July 12, 1999, in the United States District Court for the District of New Mexico, *United States of America vs. 49.77 Acres Of Land*, Civil No. 99-774 JP/DJS (U.S.D.C., District of New Mexico) for which an Entry of Final Judgment was filed on October 18, 1999; and

1.7111 acres, more or less, along the boundary of Rancho de La Cueva Addition, sec. 16, T. 19 N., R. 3 E., NMPM, as set forth in those certain Quitclaim Deeds from Dunigan Enterprises, Inc., BL&C Company, BL&C Company No. 2, JMD '77 Trust, Andy Dunigan Life Trust, PAD-JPD Life Trust, BAD-JPD Life Trust, FAD-JPD Estate Trust, Patrick A. Dunigan Trust, Brian A. Dunigan Trust, and Brian Dunigan Life Trust, to William S. Buttram and Cathy R. Stanhope; Andrea Collins Eddy; Michael L. Harvey; Tapio Talvitie and Betty Jorgensen; Mark L. Chamberlin; Thomas P. Johnston and Elizabeth Johnston of April 13, 2000, recorded April 24, 2000, Sandoval County, New Mexico, in Vol. 403, pages 20915-20968; and

A parcel of land containing 5045.5298 acres, more or less, situate within Townships 20 and 21 N., R. 5 E., NMPM, Sandoval and Rio Arriba Counties, New Mexico; being more particularly described by metes and bounds survey as follows:

COMMENCING at the POINT OF BEGINNING, said point being the Northeast corner of said grant and the northeast corner of this tract, whence Station "LANGLEY", a bronze tablet cemented in rock stamped "R 1931 ", having New Mexico State Plane Coordinates, Central Zone, NAD 83, of Y = 1,821,962.49 feet and X = 1,600,622.44 feet bears South 84°38'24" East a distance of 4,416.38 feet; Thence South 00°05'19" West, along the east boundary of said grant and the east boundary line of this tract, a distance of 2,646.62 feet to the ½ mile marker; Thence South 00°00'05" West, along said grant and tract boundary line, a distance of

40666

2,633.38 feet to the 1 mile marker; Thence South 00°05'15" West, along said grant and tract boundary line, a distance of 2,471.25 feet to the witness corner for the 1 ½ mile marker; Thence South 00°01'44" West, along said grant and tract boundary line, a distance of 2,818.59 feet to the 2 mile marker; Thence South 00°06'13" West, along said grant and tract boundary line, a distance of 2,654.92 feet to the 2 ½ mile marker; Thence South 00°07'37" West, along said grant and tract boundary line, a distance of 2,648.00 feet to the 3 mile marker; Thence South 00°02'11" East, along said grant and tract boundary line, a distance of 2,643.01 feet to the 3 ½ mile marker; Thence South 00°10'55" West, along said grant and tract boundary line, a distance of 1,789.54 feet to the southeast corner of this tract; Thence North 79°51'49" West, along the southerly boundary line of this tract, a distance of 699.26 feet to an angle point; Thence North 64°36'05" West, along said southerly boundary line, a distance of 1,827.13 feet to an angle point; Thence North 39°50'41" West along the southwesterly boundary line of this tract, a distance of 2,335.39 feet to an angle point; Thence North 71°11'30" West, along said southwesterly boundary line, a distance of 4,207.59 feet to an angle point; Thence North 46°32'27" West, along said southwesterly boundary line, a distance of 2,846.91 feet to an angle point; Thence North 47°16'31" West, along said southwesterly boundary line, a distance of 5,093.49 feet to an angle point; Thence North 12°51'28" West, along the westerly boundary line of this tract, a distance of 1,183.01 feet to an angle point; Thence North 06°54'04" East, along said westerly boundary line, a distance of 629.02 feet to an angle point; Thence North 18°12'08" West, along said westerly boundary line, a distance of 650.70 feet to an angle point; Thence North 26°42'01" West along said westerly boundary line, a distance of 639.94 feet to an angle point; Thence North 28°41'04" East, along said westerly boundary line, a distance of 1,808.48 feet to an angle point; Thence North 65°05'47" East, along said westerly boundary line,

40667

a distance of 2,518.53 feet to an angle point; Thence North 63°28'34" West, along said westerly boundary line, a distance of 2,270.12 feet to an angle point; Thence North 55°07'12" West, along said westerly boundary line, a distance of 1,465.54 feet to an angle point; Thence North 18°11'23" East, along said westerly boundary line, a distance of 3,569.61 feet to the northwest corner of this tract, being a point on the north boundary line said BACA LOCATION NO. 1; Thence South 89°52'40" East, along the north boundary line of this tract and the north grant boundary line, a distance of 1,610.80 feet to the 4 mile marker; Thence South 89°53'54" East, along said north boundary line, a distance of 2,642.15 feet to the 4 ½ mile marker; Thence South 89°48'45" East, along said north boundary line, a distance of 2,636.92 feet to the 5 mile marker; Thence North 89°55'07" East, along said north boundary line, a distance of 2,637.63 feet to the 5 ½ mile marker; Thence South 89°52'25" East, along said north boundary line, a distance of 2,638.80 feet to the 6 mile marker; Thence South 89°47'34" East, along said north boundary line, a distance of 1,129.34 feet to the POINT OF BEGINNING; containing (219,783,278 square feet) 5,045.5298 acres, more or less.   Note: All bearings are grid and all distances are ground.

**Containing, after recognizing the exceptions, 89,716.31 acres, more or less.**

TOGETHER WITH any and all of those certain associated appurtenant water rights, including but not limited to those described in the "Third Amended Offer of Judgment, No. CIV83-1041 C, Subfile No.: BACA; Location No. 1 Grant" filed in the United States District Court for the District of New Mexico; and

TOGETHER WITH any and all improvements and fixtures, and rights, privileges, and appurtenances pertaining thereto, but not limited to any and all associated appurtenant water rights and subsurface rights, fences, claims, and easements, as well as streams, roads, ways and other rights-of-way, strips and gores abutting or adjoining said property; and

TOGETHER WITH all of Grantors interest in and to all minerals, hot water, steam, geothermal and thermal energy in, on, and under (a) the 89,716.31 acres, more or less, described above, (b) the 969.85 acres, more or less,

40668

referenced in the aforementioned deed dated June 29, 1966 to the United States of America (Department of Agriculture, Forest Service) described above, (c) the 185.282 acres, more or less, referenced in the aforementioned deed dated December 27, 1974 to the Los Alamos Ski Club, Inc., (d) the 12.158 acres, more or less, referenced in the aforementioned deed dated November 12, 1975 to J.B. Harrell, Jr., (e) the 20.161 acres, more or less, referenced in the aforementioned deed dated September 28, 1984 to J. B. Harrell, Jr., (f) the 111.983 acres, more or less, referenced in the aforementioned deed dated September 28, 1984 to Larry Knecht and Paula J. Knecht, and (g) the 49.77 acres, more or less, referenced in the aforementioned condemnation action by the United States Department of Energy commenced July 12, 1999, all as are outstanding in Dunigan Enterprises, Inc., Brian Dunigan Life Trust, PAD-JPD Life Trust, BAD-JPD Life Trust, Patrick A. Dunigan Trust, Brian A. Dunigan Trust, Andy Dunigan Life Trust, JMD '77 Trust, and FAD-JPD Trust, as set forth in those mesne instruments of record;

TOGETHER WITH all of the 37 1/2% undivided interest held by JMD '77 Trust, Andy Dunigan Life Trust, PAD-JPD Life Trust, BAD-JPD Life Trust, FAD-JPD Estate Trust, Patrick A. Dunigan Trust, Brian A. Dunigan Trust, Brian Dunigan Life Trust in all minerals, hot water, steam, geothermal and thermal energy in, on, and under the two parcels of land along the south boundary aggregating 36.68 acres, more or less, referenced in the aforementioned deed dated September 4, 1991 to United States of America (Department of Agriculture, Forest Service.

STATE OF NEW MEXICO } SS
COUNTY OF SANDOVAL }
This instrument was filed for record at
_____10 59_____ A.M. P.M. on

JUL 25 2000

Recorded in Vol. 403
of records of said county, folio 40652 - 40669
By:_____ Clk. & Recorder
_____, Deputy

40669