Karl E. Johnson
Randolph H. Barnhouse
Christina S. West
JOHNSON BARNHOUSE & KEEGAN LLP
7424 4th Street NW
Los Ranchos de Albuquerque, New Mexico 87107
(505) 842-6123 (telephone)
(505) 842-6124 (facsimile)
kjohnson@indiancountrylaw.com
dbarnhouse@indiancountrylaw.com.com
cwest@indiancountrylaw.com

Attorneys for Plaintiff,
PUEBLO OF JEMEZ


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


| | |
|---|---|
| PUEBLO OF JEMEZ, a federally recognized Indian tribe, | ) )  Case No. 1:12-cv-800 (RCB)(WPL) |
| | ) |
| Plaintiff, | ) |
| | )  **AMENDED JOINT STATUS** |
| | )  **REPORT AND PROVISIONAL** |
| | )  **DISCOVERY PLAN** |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| NEW MEXICO GAS COMPANY, | ) |
| | ) |
| Defendant-in-Intervention. | ) |
| | ) |
| _____ | ) |

Pursuant to Fed. R. Civ. P. 26(f), the parties held a telephonic meeting on April 5, 2016,

at 1:00 p.m. Eastern Daylight Time attended by Randolph H. Barnhouse and Christina West for

Plaintiff and Kristofor Swanson and Peter Dykema for Defendant United States of America ("Defendant") and, after the order granting the motion to intervene [Doc. 85] held an additional meeting on October 4, 2016, at 2:00 p.m. Mountain Daylight Time attended by Kirk R. Allen and Stephen B. Waller for Defendant-in-Intervention New Mexico Gas Company ("NMGC") Christina West for Plaintiff and Matthew Marinelli and Peter Dykema for Defendant.

## NATURE OF THE CASE

Plaintiff Pueblo of Jemez, a federally recognized Indian tribe, brought this action against the United States under the common law and the Quiet Title Act (QTA), 28 U.S.C. § 2409a, *et seq.*, seeking to quiet its aboriginal title to the lands that the Defendant refers to as the Valles Caldera National Preserve (the "Valles Caldera"), in an area formerly referred to as Baca Location No. 1. Plaintiff alleges that the Jemez people have used and occupied the lands of the Valles Caldera and the surrounding areas in the Jemez Mountains of New Mexico since at least 1200 CE. Plaintiff alleges that the ancestral Jemez, whose descendants comprise the modern members of the Jemez Pueblo, have for more than 800 years been the predominant tribal occupants and land users of the Jemez Mountains, including their exclusive use of all or portions of the Valles Caldera and the greater Rio Jemez watershed. In 2000, the United States purchased the land that is now the Valles Caldera. Plaintiff alleges that this purchase was subject to the Pueblo's aboriginal Indian title. Plaintiff alleges that, shortly after the United States purchased the property, it began taking steps to limit the Jemez members from enforcing the Pueblo's aboriginal title.

Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). The District Court granted the motion, finding that sovereign immunity barred Plaintiff's action based on its conclusion that the claim accrued in 1860 when the United States granted the lands in question to

the heirs of Luis Maria Cabeza, and that the claim therefore fell within the exclusive jurisdiction of the Indian Claims Commission Act. The Tenth Circuit Court of Appeals reversed the District Court, holding, among other matters, that the 1860 Baca grant did not extinguish the Jemez Pueblo's aboriginal title.

NMGC is the owner and operator of a natural-gas pipeline that was built starting in the 1950s, traverses the Valles Caldera, and remains in use today. NMGC moved to intervene in this matter to protect its ownership and easement rights relating to this pipeline, and was granted leave to intervene.

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Depending on Defendant's responses to discovery requests, Plaintiff may seek to amend its complaint.

Defendant believes that there are numerous other entities or individuals holding or claiming property or other interests in the Valles Caldera that make them necessary parties under Fed. R. Civ. P. 19. Should Plaintiff not add these parties to the case as additional defendants, Defendant anticipates that motions practice under Rule 19 will be necessary, with the potential to include arguments that certain entities are necessary and indispensable parties that cannot be joined, thus requiring that the case be dismissed.

NMGC filed its Answer on September 23, 2016, and does not anticipate amending that Answer unless it is necessary for NMGC to answer an Amended Complaint by Plaintiff.

The parties should be allowed until October 30, 2016, to move to amend the pleadings, including adding additional parties. The parties agree that, if necessary, Defendant may make any Rule 19 motion prior to that date.

## STIPULATIONS

All parties stipulate that venue is proper in this district.

All parties further stipulate that Plaintiff and Defendant do not seek to impair any of NMGC's interests in (i) NMGC's pipeline and related facilities located within the Valles Caldera, (ii) NMGC existing easement on 49.77 acres of the Valles Caldera, or (iii) NMGC's rights of access across the Valles Caldera to the 49.77 acres and NMGC's pipeline and related facilities.

NMGC seeks only to protect its interests relating to the above-described natural-gas pipeline.  NMGC takes no position regarding the underlying dispute between Plaintiff and Defendant regarding the fee ownership of the Valles Caldera, therefore the following stipulations are between Plaintiff and Defendant only.

Plaintiff and Defendant are willing to further stipulate to the following facts:

- In or around 1821, the government of Mexico gave Luis Maria Cabeza de Baca a land grant in the vicinity of Las Vegas, New Mexico.

- Following the United States' acquisition of the New Mexico Territory through the Treaty of Guadalupe Hidalgo, the heirs of Luis Maria Cabeza de Baca (the "Baca heirs") submitted a claim to the Surveyor General of New Mexico seeking a determination of the validity of their 1821 Mexican land grant.

- Because of the competing Town of Las Vegas Community Grant, Congress, in 1860, authorized the Baca heirs to select up to five tracts of land in the Territory of New Mexico. These tracts are, collectively, sometimes referred to as the "Baca Float."  The Baca heirs' first selection was Baca Location No. 1, encompassing approximately 99,000 acres within and adjacent to what is now Valles Caldera National Preserve in the Jemez Mountains.

- The Surveyor General's office in Santa Fe approved the selection of the Baca Location No.1 by the Baca heirs on December 11, 1860.

- After interim transfers, Baca Location No. 1 was purchased by James Patrick Dunigan on or around January 11, 1963.

- The United States purchased the Dunigan family's interest in Baca Location No. 1 on July 25, 2000 and established the Valles Caldera National Preserve, as set forth in a Warranty Deed and Assignment of Rights Under Warranty Deed and Reciprocal Conservation and Access Easement, a copy of which is attached to the Complaint.

- Several Indian reservations are located near the Valles Caldera, including those of the Pueblo of Jemez, the Pueblo of Zia, and the Santa Clara Pueblo.

- After the United States purchased Baca Location No. 1, the Valles Caldera land was managed by the congressionally-created Valles Caldera Trust.

- On or around October 1, 2015, management of the Valles Caldera was transferred from the Valles Caldera Trust to the National Park Service.

- The United States has approved requests for use of the Valles Caldera by the Pueblo of Jemez for cultural purposes.  The United States has approved the Pueblo of Jemez's exclusive use of specific areas of the Valles Caldera for certain periods of time.

- Ancestral Jemez use of the Valles Caldera for livestock herding is a long tradition documented in the historic records.  The ancestral Jemez grazed livestock, including horses, cattle and sheep, in the area of the Valles Caldera National Preserve after acquiring livestock from the Spanish during the Spanish colonial period and continuing through the 20th century.

## PLAINTIFF'S CONTENTIONS:

Jemez Pueblo will show that that the Jemez people used and occupied the Valles Caldera for a long period of time.  The use and occupancy essential to the recognition of Indian title does not demand actual possession of land, but may derive through intermittent contacts.  Some evidence of the Jemez Pueblo's use and occupancy includes ancestral Jemez Pueblo villages, sacred areas and ceremonial shrines where the Jemez people have lived since migrating from the mesa and canyon country to the northwest prior to 1200 CE.  Archeologists have found at least sixty ancestral Jemez pueblo villages linked with a network of trails and many thousand farmhouse sites, agricultural fields, grazing areas, ceremonial sites, sacred areas, mineral procurement areas, and camp sites, many of which are still being used today.  The Valles Caldera contains many important sacred areas and religious sites of the Jemez people, who greatly value the spiritual sanctuary.  The ceremonial sites and gathering areas are still actively used by the Jemez Pueblo today and are crucial to the continuing survival of the Jemez Pueblo.  The Jemez people continue to use the ancient religious pilgrimage trails which link the Walatowa (the current village of the Pueblo of Jemez) to sites within the Valles Caldera, including Redondo Peak, sacred springs and other sacred sites.  The Jemez hunting societies regularly have lengthy stays in the Valles Caldera to hunt and conduct religious ceremonies.  The mineral and hot springs within the Valles Caldera are used by the medical or healing societies of the Jemez Pueblo.

The Jemez people continue to rely on the Valles Caldera for numerous and critical resources as they have done for more than 800 years.  They graze livestock; hunt and gather plants for subsistence living; harvest timber for firewood and building materials; gather herbs and roots for medicine; harvest various wood for drums, bows and arrows and ceremonial

objects; collect obsidian and chert for stone tools; minerals for paint and pigments; spring water and evergreens for ceremonial rituals; and feathers for ceremonial uses.  Such uses have continued over the past 800 years, despite various parties' claiming a fee simple interest in the property.  These uses and occupancy establish the Pueblo of Jemez's current aboriginal title and entitles the Pueblo to quiet title of the Valles Caldera.

The Pueblo of Jemez's use of the Valles Caldera was exclusive as to other tribes or, in some instances, falls into one of the three exceptions to the exclusive use requirement.  The primary exception to the exclusive use requirement is that other tribes used the Valles Caldera with the permission of the Pueblo of Jemez.  With regards to what was formerly known as the Pecos Pueblo, the Pecos Pueblo's use falls into the dominated use exception, as the Pecos Pueblo was absorbed into the Pueblo of Jemez.  Discovery may also show use by another tribe was joint and amicable, which is the third exception to exclusive use.  The exclusive requirement applies only to use by other tribes and does not apply to non-tribal parties or entities.

Jemez's aboriginal title does not require an affirmative act of a sovereign for its continued viability and endures in perpetuity until extinguished by Congress or abandoned.  Jemez never abandoned its title.  Grants between other parties of the property were made subject to the Pueblo of Jemez's aboriginal title and did not extinguish Jemez's rights.  To extinguish aboriginal title, Congress would have had to have taken express and unambiguous action to extinguish the aboriginal title, and aboriginal title survives a course of congressional legislation without a clear expression or ambiguous action.  Congress did not expressly extinguish Jemez's title.  The rule of construction for extinguishment is that doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of the tribe.

## DEFENDANT UNITED STATES' CONTENTIONS

The Valles Caldera and its peaks are no doubt of great cultural importance to the Pueblo of Jemez. But the land that is now the Valles Caldera National Preserve has been owned or used by a multitude of entities and individuals since at least the Treaty of Guadalupe Hidalgo. These other users have included other pueblos, administrative agencies of the United States and other public and private entities, and private individuals. These users have, among other things, grazed cattle, clear-cut timber, built cabins, and constructed roads and utility lines. Thus, the United States disputes that the Pueblo of Jemez has maintained unrecognized aboriginal title to the Valles Caldera, if the Pueblo ever had it. At a minimum, the prior uses alleged by the Pueblo certainly do not substantiate declaratory relief granting the Pueblo exclusive use and occupancy to the entirety of what is now a National Preserve. Even if the Pueblo of Jemez had maintained aboriginal title, Congress extinguished it in 2015 (if not earlier) when it transferred management of the Valles Caldera from the Valles Caldera National Trust to the National Park Service.

The prior uses present two other hurdles to the Pueblo's case. First, several individuals and entities continue to hold property interests in the Valles Caldera. These individuals and entities are necessary parties to this action. Notable among them is the Santa Clara Pueblo, which, as sovereign, cannot be joined to the suit without its consent, and without whom this case should not proceed to trial. Second, the visibility of these prior uses presents the question of whether the Pueblo of Jemez has delayed pursuing its claim of exclusive use and occupancy to the prejudice of the United States or third parties.

The United States also maintains and preserves its statute of limitations, res judicata, and extinguishment (via the 2000 statute creating the Preserve) arguments that were the subject of the previous appeal in this case. The United States expects that discovery will uncover facts

supporting a renewal of at least the statute of limitations and res judicata arguments. The United States will continue to develop and consider all of its available defenses as this case proceeds.

### NMGC's CONTENTIONS

NMGC has no pending claims in this matter. NMGC seeks only to protect its interests in the subject natural-gas pipeline and takes no position regarding the underlying dispute between Plaintiff and Defendant.

NMGC contends that it is the owner and operator of the natural-gas pipeline that traverses the Valles Caldera and the holder of an associated easement that encumbers approximately 49.77 acres of the Valles Caldera.

### PROVISIONAL DISCOVERY PLAN

The parties are considering stipulating that NMGC is the owner and operator of the natural-gas pipeline that traverses the Valles Caldera and the holder of an associated easement that encumbers approximately 49.77 acres of the Valles Caldera. In anticipation of that stipulation, all parties stipulate that (a) NMGC shall not be required to make any initial disclosures in this matter and (b) NMGC takes no position regarding the scope or timing of discovery as between Plaintiff and Defendant.

Plaintiff and Defendant do not presently anticipate that discovery will focus on NMGC. The proposed discovery plan set forth below therefore chiefly involves Plaintiff and Defendant only. However, Plaintiff and Defendant reserve the right to seek discovery from NMGC, and NMGC likewise reserves the right to seek discovery from Plaintiff and Defendant or to clarify if NMGC wants copies of any of the documents or electronic documents identified in the initial disclosures by Plaintiff and Defendant.

Plaintiff and Defendant (without opposition by NMGC) jointly propose to the Court the following discovery plan:

Plaintiff and Defendant plan to undertake standard discovery, which will include Interrogatories, Requests for Admission, Requests for Production, and Depositions of the parties' experts and other key witnesses. Plaintiff and Defendant have exchanged draft initial requests for production to facilitate discovery planning, and Plaintiff has, since, formally served its initial requests. Discovery will include electronically stored information, and, to make that portion of discovery more manageable, Plaintiff and Defendant are currently negotiating a proposed discovery order for court approval.

Counsel for Plaintiff and Defendant also agree that information relating to the history of what is now the Valles Caldera National Preserve, which will be relevant to the legal concept of aboriginal title, will in many cases be in the possession of third parties and archival entities, which will impact Plaintiff and Defendant's initial disclosures, the timing of documentary discovery responses, and, at least at this early stage, identification of likely witnesses and exhibits.

First, unrecognized aboriginal title is not always comparable to recorded land title in the Western sense. Rather than relying heavily on deeds and other recorded title documents, this case will turn largely on facts related to use of the Valles Caldera by the Pueblo of Jemez, other Tribes, and, at least in Defendant's view, non-tribal individuals and entities. But the relevant factual period extends from the present back "a long time" – which may include the period before the first European contact with the Jemez Pueblo. Thus, fact discovery in this case will focus heavily on archival research of state, federal, non-profit, and private archives and holdings.

Document collection will be resource-intensive and require review of historic documents, some of which the parties have not yet identified.

Second, the United States has been the owner of the Valles Caldera only since 2000. Prior to that, the land was privately held.  Thus, discovery (whether formal or informal) is also likely to have a heavy focus on third parties.  This could include document and (assuming those with knowledge are still living) deposition requests made of other pueblos, state agencies, and previous landowners.  As with archival information, Plaintiff and Defendant, at this early stage, are unable to identify specific potential witnesses or many potential exhibits.

Third, discovery is also likely to include information about confidential archaeological sites or Pueblo of Jemez cultural and religious practices, including information that the United States and the Pueblo of Jemez would otherwise produce as part of their initial disclosures.  The Pueblo of Jemez asserts that there is significant sacred and religious information that should not be disclosed to the general public and that there are religious prohibitions against disclosure of such information.  Plaintiff and Defendant are negotiating a general protective order to facilitate exchange and protection of any such information.  In addition, a certain subset of confidential archaeological and cultural information relating to other tribes or pueblos located at the National Park Service's office at the Valles Caldera (and potentially elsewhere) may implicate the requirements of Section 304 of the National Historic Preservation Act, 54 U.S.C. § 307103.  The United States is developing a procedure for complying with Section 304, including the completion of any necessary consultation with both the Pueblo of Jemez and other tribes prior to production, including production under any protective order.  *See* § 307103(b).  The United States is currently collecting and digitally

processing information from the subject office so that it can be reviewed for applicability to Section 304's requirements.

## A.      <u>WITNESSES</u>

**<u>Plaintiff's List of Potential Fact Witnesses</u>**

       1.      Governor of Jemez Pueblo
             c/o Dolph Barnhouse
             Johnson Barnhouse & Keegan, LLP
             7424 4th Street NW
             Los Ranchos de Albuquerque, New Mexico  87107
             (505) 842-6123

The Governor of the Jemez is the appointed leader and official who may speak on behalf of the Pueblo.  The current Jemez Governor is David Yepa.  The Governor has knowledge about the Pueblo's governmental and religious structure, the Pueblo's interactions with the United States government and/or its agencies, departments, and congressional representative(s) about the Valles Caldera or the Jemez mountains, and Jemez's communications with other pueblos regarding the Valles Caldera or the Jemez mountains.

       2.      Members of Pueblo of Jemez Tribal Council, including but not limited to
             Paul Tosa
             c/o Johnson Barnhouse & Keegan LLP
             7424 4th Street NW
             Los Ranchos de Albuquerque, NM 87107
             (505) 842-6123

The Council is comprised of appointed tribal members and former Jemez Pueblo Governors.  These officials are appointed every year to carry out all religious duties and responsibilities of the tribal government.  Each Council member also had extensive knowledge of the Pueblo's culture and history, the traditional and religious uses of the Valles Caldera, and has knowledge of the significance of the Valles Caldera to the Jemez people.

       3.      Paul Clarke
             Pueblo of Jemez Natural Resources Director
             c/o Johnson Barnhouse & Keegan LLP
             7424 4th Street NW
             Los Ranchos de Albuquerque, NM 87107
             (505) 842-6123

Mr. Clarke is the Director of the National Resources Department at the Pueblo of Jemez and has extensive knowledge of the Pueblo's culture and history, the traditional and religious uses of the Valles Caldera, the and significance of the Valles Caldera to the Jemez people.

  4.  Chris Toya
     Pueblo of Jemez Cultural Resources Department
     P.O. Box 100
     Jemez Pueblo, NM  87024
     (575) 834-7696

Mr. Toya works in the Pueblo of Jemez Cultural Resources Department and has extensive knowledge of the Pueblo's culture and history, the traditional and religious uses of the Valles Caldera, the and significance of the Valles Caldera to the Jemez people.  He also has communicated with the employees at the Valles Caldera National Preserve about Jemez's current and historical uses of the Valles Caldera.

  5.  Dennis Trujillo
     Former Executive Director of Valles Caldera Trust
     4970 Highway 290
     Ponderosa, NM  87044
     (575) 834-9127

Mr. Trujillo former served as the Valles Caldera Trust's executive director and had communications with Jemez regarding its uses of the Valles Caldera.

  6.  Dr. Anastasia Steffen
     Interdisciplinary Scientist/Communicator
     Valles Caldera National Preserve
     90 Villa Louis Martin
     Jemez Springs, NM  87025
     (505) 829-4100

Dr. Steffen was the cultural resources coordinator at the Valles Caldera Trust's cultural resources program.  Dr. Steffen is believed to have knowledge about Jemez recent and historical uses of the Valles Caldera, including archaeological work.  Dr. Steffen may also know about other pueblos' current and historic use of the Valles Caldera.

  7.  Mr. Chandler Sanchez, Former Chairman or Current Chairperson
     All Indian Pueblo Council
     2401 12th St. NW
     Albuquerque, NM  87104
     (505) 881-1992

Mr. Sanchez was the former chairman of the All Indian Pueblo Council (AIPC).  AIPC passed a resolution, supporting Jemez's use of the Valles Caldera and its aboriginal claim.

8.     Mr. Michael T. Sandoval, Chairman
       Southern Pueblo Governor's Council
       P.O. Box 1270
       Isleta Pueblo, NM  87022
       (505) 889-3111

Southern Pueblo Governor's Council passed a resolution, supporting Jemez's use of the Valles Caldera and its aboriginal claim.

9.     Mr. Brian Cladoosby, Chairman
       National Congress of American Indians
       Embassy of Tribal Nations
       1516 P. Street NW
       Washington, DC 20005
       (202) 466-7767

National Congress of American Indians passed a resolution, supporting Jemez's use of the Valles Caldera and its aboriginal claim.

10.    Fed. R. Civ. P. 30(b)(6) Designated Deponent(s)
       United States
       c/o Peter Dykema
       Senior Trial Attorney
       U.S. Department of Justice
       P.O. Box 7611
       Washington, DC 20044-7611
       (202) 305-0436

The 30(b)(6) designated deponent(s) may testify as to their knowledge of the facts surrounding the circumstances alleged in Plaintiff's Complaint, communications with the parties and non-parties regarding the events at issue, and Defendant's affirmative defenses.

11.    Pueblo of Jemez Elders and/or religious leaders
       TBD

Prior to filing this lawsuit in 2012, Plaintiff interviewed tribal elders about their oral histories surrounding the Valles Caldera and the historic and present uses of the Valles Caldera, including but not limited to ceremonials, sacred sites, hunting and gathering uses and other uses of the Valles Caldera.  In light of the passage of time, Plaintiff is confirming the availability of these witnesses and their capacity to testify, as many were elderly at the time of the initial interviews.  Plaintiff is still interviewing other Jemez members to determine who may testify about the issues in the case, including current and historic uses of the Jemez people.

12.     Witnesses that have, had or are related to others that have or had property interest(s) in the Valles Caldera
        TBD

Individuals with personal knowledge of historic use of the property may be called to testify about that knowledge, including the Baca Family and their assigns' uses of the Valles Caldera and the Pueblo of Jemez's uses of the Valles Caldera.

13.     Jorge Silva-Bañuelos
        Valles Caldera National Preserve
        c/o Peter Dykema
        Senior Trial Attorney
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 305-0436

Mr. Silva-Bañuelos is the current Superintendent of the Valles Caldera National Preserve and the most-recent Executive Director of the Valles Caldera National Trust. Mr. Silva-Bañuelos may testify regarding general information on use of the Valles Caldera and the Jemez's uses of the Valles Caldera.

14.     Any witness listed by the Defendant in this report, or any supplement to this report, or identified by Defendant in responses to discovery requests or court filings.

15.     Anyone deposed in this litigation.

16.     Plaintiff reserves the right to call rebuttal or impeachment witnesses.

**Defendant's List of Potential Witnesses**

1.      Jorge Silva-Bañuelos
        Valles Caldera National Preserve
        c/o Peter Dykema
        Senior Trial Attorney
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 305-0436

Mr. Silva-Bañuelos is currently the Superintendent of the Valles Caldera National Preserve, and was the most-recent Executive Director of the Valles Caldera National Trust. Mr. Silva-Bañuelos may testify regarding general information on use of the Valles Caldera and the government's land use policies.

2.     Anastasia Steffen, Ph. D.
       Valles Caldera National Preserve
       c/o Peter Dykema
       Senior Trial Attorney
       U.S. Department of Justice
       P.O. Box 7611
       Washington, DC 20044-7611
       (202) 305-0436

Dr. Steffen is an Interdisciplinary Scientist and, prior to that, staff archaeologist at the Valles Caldera National Preserve.  Dr. Steffen may testify about the Trust's and Park Service's archaeological surveys, cultural resource reports, and tribal consultations.

3.     Members of Other Neighboring Pueblos
       TBD

Individuals with personal knowledge of historic uses of the Valles Caldera or other histories of historic uses by other neighboring Pueblos.

4.     Fed. R. Civ. P. 36(b)(6) designee(s) for the Pueblo of Jemez
       c/o Dolph Barnhouse
       Johnson Barnhouse & Keegan, LLP
       7424 4th Street NW
       Los Ranchos de Albuquerque, New Mexico  87107
       (505) 842-6123

Plaintiffs' 30(b)(6) designees may testify regarding the Pueblo of Jemez's governing, religious and cultural structure, the Pueblo's averments in the Complaint, current and historical uses and occupancy of the land by the Jemez Pueblo and its people, and any other categories of testimony as set forth in Rule 30(b)(6).

5.     Gary Ziehe
       U.S. Forest Service, Southwestern Regional Office
       c/o Peter Dykema
       Senior Trial Attorney
       U.S. Department of Justice
       P.O. Box 7611
       Washington, DC 20044-7611
       (202) 305-0436

Mr. Ziehe was the first Executive Director of the Valles Caldera National Trust (November 2001–March 2004) and may testify on correspondence with the Pueblo of Jemez and other land users, uses of the Preserve, and the Trust's land use policies.

6.      Dennis Trujillo
        Ponderosa, NM

Mr. Trujillo was a former Executive Director of the Valles Caldera National Trust and may testify on correspondence with the Pueblo of Jemez and other land users, uses of the Preserve, and the Trust's land use policies.

7.      Buck Sanchez
        U.S. Forest Service, Southwestern Regional Office
        c/o Peter Dykema
        Senior Trial Attorney
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 305-0436

Mr. Sanchez was the interim-Executive Director of the Valles Caldera National Trust (from 2000 to sometime in 2001) and may testify on correspondence with the Pueblo of Jemez and other land users, uses of the Preserve, and the Trust's land use policies.

8.      Dr. Bob R. Parmenter
        Valles Caldera National Preserve
        c/o Peter Dykema
        Senior Trial Attorney
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 305-0436

Dr. Parmenter is the Division Chief, Science & Stewardship Program Valles Caldera National Preserve.   He may testify regarding natural resources research, inventory, and monitoring at the Valles Caldera, including but not limited to fencing related to grazing activities.

9.      Chris Chavez
        U.S. Forest Service
        Southwestern Regional Office
        c/o Peter Dykema
        Senior Trial Attorney
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        (202) 305-0436

Mr. Chavez is the Regional Land Surveyor for the United States Forest Service.   He may testify regarding his surveying of the Valles Caldera National Preserve, including the boundary

between the Valles Caldera National Preserve and the Santa Clara Pueblo's reservation and evidence of logging and timber activities.

10. Previous or Current Property Interest Holders
TBD

Individuals, or 30(b)(6) designees of entities, who have held or currently hold property interests in the Valles Caldera may testify regarding land use policies and communications with the Pueblo of Jemez or other land users.

11. Any witness listed by the Plaintiff in this report, or any supplement to this report, or identified by Plaintiff in responses to discovery requests or court filings.

12. Anyone deposed in this litigation.

13. Defendant reserves the right to call rebuttal or impeachment witnesses.

**NMGC'S List of Potential Fact Witnesses**

Consistent with the Parties' potential stipulation that NMGC is the owner and operator of the natural-gas pipeline that traverses the Valles Caldera and that NMGC is the owner of associated easement rights, all parties stipulate that NMGC is not required to identify any potential fact witnesses at this time.

**B.    EXHIBITS**

**Plaintiff's List of Potential Exhibits**

1.    Documents from the National Archives in Washington D.C., including but not limited to documents related to the Indian Claims Commission action entitled *Zia Pueblo et. al. v. United States*, Docket 137.

2.    Plaintiff may also use any documents, including but not limited to maps, obtained through ongoing investigations and research and formal or informal discovery, including but not limited to:

a.    Documents from the US Biological Survey;

b.   Documents from the US Forest Service related to uses of the Valles Caldera;

c.   Documents from the National Park Service related to uses of the Valles Caldera;

d.   Documents from the U.S. Military during the 1800s related to uses of the Valles Caldera;

e.   Spanish land grants and related documents;

f.   Documents, including maps, from the Bureau of Land Management or the General Land Office;

g.   Documents or recording of public hearing related to various proposal for the Valles Caldera to be uses as a state or national park;

h.   Any and all real estate documents pertaining to the ownership or sale of land interests related to the Valles Caldera;

i.   Any documents related to the Baca Geothermal Demonstration Power Plant;

j.   Correspondence between the Pueblo of Jemez and the United States about the Valles Caldera;

k.   Documents from other Pueblos and/or New Mexico tribes related to the Valles Caldera; and

l.   Any surveys of the Valles Caldera.

3.   Maps and pictures demonstrating the present and historical uses of the Valles Caldera by the Pueblo of Jemez.

4.      Correspondence between Pueblo of Jemez and other tribes or tribal organizations regarding Jemez uses or aboriginal title related to the Valles Caldera.

5.      Documents or recordings from public hearings or senate hearings concerning attempts to make the Valles Caldera a national park or forest or preserve.  Any and all documents listed by any other party in this matter.

6.      Copies of depositions of parties or witnesses and any exhibits attached to any deposition in this matter.

7.      Recordings of witnesses that are unavailable or become unavailable to testify at trial for reasons including, but not limited to, death or illness.

8.      Copies of any and all pleadings or other documents filed with the Court.

9.      Any and all exhibits disclosed, offered or identified at any time and in any fashion by any other party

10.     Any and all documents provided to or relied on by any expert retained by any party in this lawsuit.

11.     Any and all reports, including initial, rebuttal and/or supplemental reports, provided by any expert used by either party in this matter, as allowed by the Court.

12.     Any and all correspondence between Plaintiff and Defendant relating to the allegations and defenses of the lawsuit.

**Defendant's List of Potential Exhibits**

1.      2007 Valles Caldera National Preserve Land Use History

2.      Santa Fe National Forest realty files associated with the 2000 purchase of Baca Location No. 1

3. Valles Caldera National Preserve consultation documents, including correspondence with the Pueblo of Jemez

4. Valles Caldera National Preserve cultural resource reports

5. Documents from the National Archives facility in Washington, DC, including documents from the Indian Claims Commission cases brought by the Pueblo of Jemez, Santa Ana Pueblo, Zia Pueblo, Santa Clara Pueblo, Cochiti Pueblo, San Ildelfonso Pueblo, Santo Domingo Pueblo, and the Jicarilla Apache Nation

6. Historic land use maps and aerial photos currently on file at the Valles Caldera National Preserve

7. Land use policies of the Valles Caldera National Trust and National Park Service

8. Valles Caldera National Trust strategic plans and reports to Congress

9. Correspondence between Pueblo of Jemez and the federal government or current and previous landowners of, and property interest holders in, the Valles Caldera

10. Correspondence between other pueblos and the federal government or current and previous landowners of, and property interest holders in, the Valles Caldera

11. Documents from the University of New Mexico libraries, the New Mexico State Records Center and Archives, the New Mexico History Museum, New Mexico State University Library, New Mexico State Library, the New Mexico Supreme Court Law Library

12. Geographic Information System data maintained at the Valles Caldera National Preserve

## NMGC's List of Potential Exhibits

Consistent with the Parties' potential stipulation that NMGC is the owner and operator of the natural-gas pipeline that traverses the Valles Caldera and that NMGC is the owner of

21

associated easement rights, all parties stipulate that NMGC is not required to identify any potential exhibits at this time.

**C.      EXPERT WITNESSES**

**Plaintiff's List of Potential Expert Witnesses**

Plaintiff is still investigating and consulting with various possible expert witnesses.  At this time, Plaintiff may call an historian, an archeologist, and an ethnographer, each of whom may testify about the historic uses of the property by the Pueblo of Jemez and its people. Plaintiff will supplement this disclosure as required by the Federal Rules of Civil Procedure and any order issued in this case.

**Defendant's List of Potential Expert Witnesses**

Defendant is also still investigating and consulting with possible expert witnesses, but anticipates soliciting expert testimony from one or more historians, archeologists, or ethnographers regarding historic uses of the land that is now the Valles Caldera National Preserve.

**NMGC's List of Potential Expert Witnesses**

Consistent with the Parties' potential stipulation that NMGC is the owner and operator of the natural-gas pipeline that traverses the Valles Caldera and that NMGC is the owner of associated easement rights, all parties stipulate that NMGC is not required to identify any potential expert witnesses at this time.

**D.      DISCOVERY**

Discovery will be needed on all factual allegations and claims raised in Plaintiff's Complaint and all defenses.  Discovery will focus largely on the Jemez Pueblo's actual,

exclusive (as to other tribes and, in Defendant's view, other individuals and entities) and continued use and occupancy of the claimed areas.

Plaintiff anticipates conducting discovery, which includes but it not limited to, archival documents from Fort Marcy, the New Mexico Indian Agency and the Abiquiu National Military Archives; information related to the Baca Geothermal Demonstration Project; titling and land documents for the property; Surveyor General of New Mexico documents as they relate to the property; public comments and hearings related to Defendant's purchase of the property for the preserve; information from the US Department of Energy, the Los Alamos National Laboratories and the US Forest Service as they relate to use of property by Plaintiff; documents related to the Pajarito National Park Service; 1964 proposed legislation for purchase of the property; surveys and maps relating to the property; and recordings maintained by the University of New Mexico.

Defendant anticipates conducting discovery into communications between Plaintiff and neighboring pueblos, governmental bodies, and current and previous landowners or interest holders; Plaintiff's use of the Valles Caldera and interactions with other users of the Valles Caldera; details on the locations and uses of Plaintiff's alleged exclusive and continuous use and occupancy; and third-party discovery into historic land uses and land use policies.

Maximum of 70 interrogatories by each party to any other party.  (Responses due 30 days after service).

Maximum of 70 requests for admission by each party to any other party.  (Response due 30 days after service).

The maximum number of depositions delineated in Fed. R. Civ. P. 30(a) will not apply to discovery in this action.  The parties agree, in good faith, to limit their requests for deposition to those necessary.

Each deposition (other than of depositions of experts) is limited to maximum of 7 hours unless extended by agreement of parties.

Plaintiff and Defendant cannot agree about deadlines for fact discovery.  Although Plaintiff and Defendant don't generally disagree about how long the subsequent deadlines should occur once the factual deadline is established, the subsequent deadlines differ because of the dispute over the factual discovery deadline.  Plaintiff proposes that all fact discovery be commenced in time to be completed by April 14, 2017.  Defendant proposes that all fact discovery be commenced in time to be completed by July 14, 2017.   Plaintiff and Defendant agree that all other discovery should be commenced in time for it to be completed 6 months from the fact discovery deadlines: Plaintiff proposes October 16, 2017, and Defendant proposes January 15, 2018.  NMGC takes no position regarding such deadlines.

Plaintiff and Defendant agree that the deadline for Initial Reports from retained experts under Rule 26(a)(2) due from both parties should be 3 months following the factual discovery deadline:  Plaintiff proposes July 14, 2017 and Defendant proposes October 16, 2017.  Plaintiff and Defendant agree that the deadline for any supplemental or rebuttal expert reports from Plaintiff and Defendant are due 2 months from the initial report deadline: Plaintiff proposes September 15, 2017 and Defendant proposes December 15, 2017.  Plaintiff and Defendant agree that expert deposition should be completed approximately 6 weeks from the supplemental or rebuttal report deadlines: Plaintiff proposes October 31, 2017 and Defendant proposes January 31, 2018.   NMGC takes no position regarding such deadlines.

Other Items:  Plaintiff and Defendant agree that dispositive motions shall be filed shortly after the final discovery deadline: Plaintiff proposes October 23, 2017 and Defendant proposes January 22, 2018.  Plaintiff and Defendant agree that motions related to fact discovery matters

should be filed and served at the same time that factual discovery must be completed by: Plaintiff proposes April 14, 2017 and Defendant proposes July 14, 2017.  NMGC takes no position regarding such deadlines.

## PRETRIAL MOTIONS

Plaintiff may file various pretrial motions depending on the course of litigation, such as discovery motions, motions for protective order governing the protection of confidential information including sacred sites and ceremonies, motions for summary judgment, motion to dismiss affirmative defenses, *Daubert* motions and motions in limine.

Defendant anticipates filing a motion under Fed. R. Civ. P. 19 for a failure to join a necessary and indispensable party.  Should Plaintiff be seeking aboriginal title to less than the entire Preserve, and should Plaintiff be unable or unwilling to identify in discovery those portions of the Preserve over which it is asserting aboriginal title, Defendant will likely need to move for a more definite statement of Plaintiff's claims.  Defendant also anticipates a summary judgment motion on at least Congress's 2015 transfer of the Valles Caldera from the Valles Caldera Trust to the National Park Service and its likely extinguishment of any aboriginal title.  Defendant presently does not anticipate filing that motion prior to close of fact discovery, and it may also include arguments on the statute of limitations, res judicata, and laches.

NMGC does not anticipate filing any motions that pertain to the underlying dispute between Plaintiff and Defendant.  However, NMGC anticipates filing one or more motions requesting that measures be taken to protect NMGC's interests in its natural-gas pipeline and associated easement rights irrespective of the outcome of the underlying dispute between Plaintiff and Defendant.

## **ESTIMATED TRIAL TIME**

Plaintiff and Defendant estimate trial will require 2 to 3 weeks.

 _XX_  This is a non-jury case.

_____ This is a jury case.

Plaintiff and Defendant request a pretrial conference in January 2018 (Plaintiff) and March 2018 (Defendant).   NMGC takes no position regarding the scheduling of a pretrial conference.

## **SETTLEMENT**

The possibility of settlement in this case is still being evaluated.  All parties request a settlement conference be scheduled in February 2017 to be attended by representatives of Plaintiff, Defendant, and NMGC.

## **EXCEPTIONS**

Plaintiff and Defendant cannot agree about deadline for fact discovery.   Although Plaintiff and Defendant don't generally disagree about how long the subsequent deadlines should occur once the factual deadline is established, the subsequent deadlines differ because of the dispute over the factual discovery deadline, as described more fully above.  Plaintiff proposes that all fact discovery be commenced in time to be completed by April 14, 2017.  Defendant proposes that all fact discovery be commenced in time to be completed by July 14, 2017. NMGC takes no position regarding the foregoing.

APPROVED WITH EXCEPTIONS

*/s/ Christina S. West*
Randolph H. Barnhouse
Christina S. West
Johnson Barnhouse & Keegan LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
Tel:  (505) 842-6123
Fax:  (505) 842-6124
dbarnhouse@indiancountrylaw.com
cwest@indiancountrylaw.com


JOHN C. CRUDEN
Assistant Attorney General

*/s/ Peter Kryn Dykema, approved by E-mail on*
*October 13, 2016*
Peter Kryn Dykema
Matthew Marinelli
Natural Resources Section
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0436
Fax: (202) 305-0506
peter.dykema@usdoj.gov
matthew.marinelli@usdoj.gov
*Attorneys for the United States*

*/s/ Kirk A. Allen, approved by E-mail on*
*October 12, 2016*
Kirk R. Allen
Stephen B. Waller
Miller Stratvert P.A.
P.O. Box 25687
Albuquerque, New Mexico 87125
Tel: (505) 842-1950
Fax: (505) 243-4408
kallen@mstlaw.com
swaller@mstlaw.com
*Attorneys for New Mexico Gas Company*

27

CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2016 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Peter Dykema
peter.dykema@usdoj.gov

Matthew Marinelli
matthew.marinelli@usdoj.gov

Kirk R. Allen
kallen@mstlaw.com

Stephen B. Waller
swaller@mstlaw.com

*/s/ Christina S. West*
Christina S. West