IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **PUEBLO OF JEMEZ**, <br><br>           Plaintiff, <br><br>     v. <br><br> **UNITED STATES**, <br><br>           Defendant, <br><br> and <br><br> **NEW MEXICO GAS COMPANY,** <br><br>           Defendant-in-Intervention. | Case No. 1:12-cv-800-RB-WPL |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND MOTION TO COMPEL**

Plaintiff Pueblo of Jemez ("Pueblo"), pursuant to Federal Rule of Civil Procedure 26(c), hereby moves the Court to enter a protective order to protect confidential and culturally sensitive information requested by the Defendant United States ("Defendant") or subject to initial disclosure. Specifically, the Pueblo requests the Court enter a protective order, limiting any use of the religious and cultural information to this litigation, barring any other uses, and restricting access of this information to attorneys and experts. The Pueblo also moves the Court to issue an order compelling the United States to disclose allegedly confidential information, issue a protective order similar to the order being requested by the Pueblo to protect confidential

1

information of the Pueblo, and also clarify in the order the time in which the United States must produce claimed confidential information.

In support of its motions, the Pueblo states as follows:

## INTRODUCTION

To prove its land claims in this litigation, the Pueblo must disclose highly confidential and sensitive cultural and religious land uses likely in contravention to Pueblo traditional law. For the Pueblo, such confidential information includes ceremonial descriptions and locations of sacred sites, shrine, locations of pilgrimage trails, eagle watching sites, cultural patrimony, and sacred objects, each of which are significant to the Pueblo's identity, and its religious, traditional and ceremonial practices ("Confidential Information"). Inherently the Pueblo's traditional law is exclusive to the Pueblo. To a certain degree and as a way to protect the Pueblo's traditional law, privacy and secrecy are also followed as a result of the ongoing and historic exploitation of these practices. A protective order must be issued to prevent such harmful exploitation of the Confidential Information, to maintain Jemez traditional law and associated cultural and religious practices, and to adhere to federal public policy which supports restriction.

It should be noted that the Pueblo is not seeking a complete bar to the disclosure of Confidential Information that is relevant to this case. Rather, the Pueblo is seeking to strictly limit access to the Confidential Information. Other courts have found such protective orders appropriate to balance the interests in the case while reducing the potential injury to the party in possession of sensitive information. *See, Duling v. Griestede's Operating Corp.*, 266 F.R.D. 66 (S.D.N.Y 2010) (A protective order limiting the use of sensitive information was warranted to balance the interests of the parties, public access use, and privacy interests.)

To explain the relevant procedural history, Defendant filed its First Set of Requests for Production and Interrogatories on May 17, 2016. On July 11, 2016, the Pueblo filed its Objections and Responses to the Defendant's First Set of Requests for Production and Interrogatories, which are attached as Exhibit 1, reserving confidentiality objections and identifying confidential documents or information. On September 21, 2016, the Pueblo also served its Initial Disclosures upon the defendants, again identifying documents that contained confidential and sensitive information, attached as Exhibit 2. On April 7, 2016, the Pueblo served its First Set of Request for Production on the United States, and the United States then served its Objections and Responses to Plaintiff's First Set of Request for Production on May 17, 2016, which is attached as Exhibit 3.

Throughout this time, both parties began negotiating a Stipulated Protective Order, recognizing the confidential and sensitive nature of the information required to be produced and disclosed in this litigation by both parties. Despite the Pueblo's and Defendant's recognized common interests for a protective order, the form of order could not be agreed upon and Defendant became unresponsive to the Pueblo's attempts to finalize language to the Stipulated Protective Order. As such, the Pueblo files this motion.

Pursuant to Federal Rule of Civil Procedure 26(c), counsel for Jemez Pueblo has provided a copy of this motion to defendants' counsel. Defendant United States opposes the motion and will request an additional two weeks to respond. Defendant New Mexico Gas Company takes no position on the motion.

## ARGUMENT FOR MOTION FOR A PROTECTIVE ORDER

"Federal district courts have broad discretion over discovery." *S2 Automation LLC v.*

3

*Micron Tech., Inc.*, 283 F.R.D. 671 (D.N.M. 2016).  Under Rule 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).

The need to protect the Pueblo's Confidential Information is analogous to the protections offered for a trade secret.  In New Mexico a trade secret is defined as "information . . . method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶ 15, 144 N.M. 601 and Uniform Trade Secrets Act (TSA) NMSA 1978, §§ 57-3A-1 to-7 (1989)).  Like a commercial trade secret, the Confidential Information has an economic value, based in part on it not being easily ascertainable.  Courts have repeatedly issued protective orders to protect the value of trade secrets and prevent injury.  Fed. R. Civ. P. 26(c)(1)(G).  *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297 (N.D. Ill. 1993) (Product design modifications and changes should be subject to discovery order after a showing that defendant had taken efforts to maintain confidentiality of information and could be harmed if competitors obtained the information); and *U.S. v. Davis*, 131 F.R.D. 391 (S.D. N.Y. 1990) (Protective order limiting access to information to attorneys and experts was appropriate upon showing that information constituted a trade secret.)

Courts have also issued protective orders to prevent exploitation.  *Damiano v. Sony*

*Music Entm't., Inc.*, 168 F.R.D. 485 (D.N.J. 1996) (Possibility that songwriter would commercially exploit discovery material warranted order designating discovery materials confidential when private information about musician had been exploited in the past). This reasoning provides an additional legal basis for issuing a protective order in the present case.

     A collective review of these cases demonstrates that it is appropriate to issue a protective order in the present case because: 1) like a trade secret, the Pueblo has taken steps to maintain the confidentiality of the information; 2) Rule 26 supports a protective order when the Pueblo would be harmed if the Confidential Information was publically available; and 3) public policy supports limited, rather than open, access to the Confidential Information. *See, Zurich Am. Ins. Co. v. Rite Aid Corp.*, 345 F. Supp. 2d. 497 (E.D.Pa. 2004) (A party seeking to rebut the common law presumption of public access to judicial proceedings and records, bears the burden of showing that the material in question constitutes the kind of information that courts will protect and that disclosure could result in serious injury to the party.)

**I.**     **The Pueblo has taken numerous steps to protect the Confidential Information as reflected by traditional law.**

     A protective order is appropriate when a party has sensitive information, took significant precautions to protect the information, and the secret could be compromised without an order. *S2 Automation* 283 F.R.D. 671. The Pueblo greatly values this Confidential Information, as it is core to its government and its identity as a sovereign nation. The Pueblo has taken and continues to take great steps to keep Confidential Information undisclosed and protected from commercialization. These practices are typically established orally and through ceremonial practices to prevent and discourage easy duplication.

     For example, the Pueblo prohibits photography and audio and visual recordings of its

5

dances and rituals.  Affidavit of Governor David Yepa attached hereto as Exhibit 4.  A common practice often includes disguising or hiding offerings so that these offerings will not typically be discoverable by outsiders.  *Id*.  The Confidential Information is not even disclosed to all Jemez Pueblo tribal members or even among the different religious societies within the Pueblo. Rather, it is typically shared only among other members of societies or as members take on different responsibilities.  *Id*.  The Confidential Information can only be learned and shared by tribal elders, or tribal leaders, or certain clan members through the Pueblo's oral traditions.  *Id.*  Jemez traditional law strictly prohibits the sale or marketing of Confidential Information.  *Id*.  These are just some of the numerous steps that the Pueblo has taken to limit the access to the Confidential Information.

## II.     Public Access to the Confidential Information will harm the Pueblo of Jemez.

A party seeking protection of sensitive materials during discovery must demonstrate that the information is confidential and that disclosure of such material might damage the producing party, and the harm associated with disclosure outweighs the need of discovery.  *Digital Equip. Corp. v. Micro Technology, Inc*., 142 F.R.D. 488 (D. Colo. 1992).  If the Confidential Information were to be publically known, the sacredness and power of the Confidential Information would be lost or seriously damaged, tearing at the very fabric that defines the Pueblo's identity and binds the community.  There are repeated examples of exploitation of Native ceremonial objects that makes the threat of harm to the Pueblo imminent and real.

Historically, sacred sites in the Valles Caldera have been exploited by non-Jemez members, who have visited the sites and taken offerings and other spiritual objections.  *See* Exhibit 4 and "Seeking Native American Spirituality: Read this First!", http://www.native-

languages.org/religion.htm, last visited December 22, 2016 and attached hereto as <u>Exhibit 5</u>.  In addition, academics have used Confidential Information without the consent of the Pueblo in their work, which often results in publications for individual gain and further dissemination to the public.  *See* Affidavit of Governor David Yepa, attached hereto as <u>Exhibit 4</u>.

Although Congress passed laws to stop this type of exploitation as described below, a black market still exists for this exact type of information.  There are numerous contemporary examples of sacred objects being sold overseas.  See, "Native Americans Protest Planned Auction of Sacred Objects in France," May 25, 2016, npr.org, http://www.npr.org/sections/thetwo-way/2016/05/25/479455188/native-americans-protest-planned-auction-of-sacred-objects-in-france, last visited December 22, 2016, and attached hereto as <u>Exhibit 6</u>; "Buying and Selling Native Artifacts," January, 19, 2004, pbs.org, http://www.pbs.org/wgbh/roadshow/tips/artifacts.html, last visited December 22, 2016, and attached hereto as <u>Exhibit 7</u>.

The Pueblo's cultural practices and associated cultural patrimony derives independent actual and potential economic value to the western world due to its exclusivity.  Coupled by the fact that this Confidential Information is not readily ascertainable by any means, disclosure of such information is often exploited by the sale of such information and items.  An order proactively protecting the Confidential Information would reduce or eliminate the chance of the exploitation for commercial gain as contemplated in Rule 26.

**III.    Rather than promoting open access, federal policies recognize the need for restricting access to the Confidential Information.**

It is important to weigh the public interest in considering a protective order based on confidentiality, and protective orders are more favored when the public has a minimal interest.

7

*Apple, Inc. v. Samsung Elec. Co., Ltd*, 727 F.3d 1214 (Fed. Cir. 2013).  A trial court is duty bound to limit the availability and use of information when there is a strong policy reasons against public disclosure.  *Carr v. Monroe Mfg. Co.*, 431 F.2d 384 (5th Cir. 1970).  Not only is the public interest in accessing this Confidential Information minimal in this case, but federal public policy supports restricting Confidential Information from the public.  Congress has passed various laws that recognize the importance of protecting Native American ceremonial and cultural objects from the commercialization, dissemination and desecration.

One of the many examples of a policy against public disclosure of this type is the Archaeological Resources Protection Act of 1979, 16 U.S.C. §§ 470aa-mm, which establishes requirements to protect archaeological resources and sites on public lands and Indian lands and establishes civil and criminal penalties for the destruction or alteration of cultural resources.  The Congressional findings state that "these resources are increasingly endangered because of their commercial attractiveness" and "existing Federal laws do not provide adequate protection to prevent the loss and destruction of these archaeological resources and sites resulting from uncontrolled excavation and pillage."  16 U.S.C. § 470aa(a)(2) and (3).

Also, the Native American Graves Protection and Repatriation Act of 1990, 25 U.S.C. 3001, is a law designed to protect the treatment, repatriation and disposition of Native American sacred objects and cultural patrimony, among other objects, that are in the possession of museums and federal agencies, and criminalizes the buying or selling of such cultural items.  Similarly, the National Historic Preservation Act, as amended in 1992, was enacted, in part, to allow Indian tribes to take formal responsibility for preserving historic properties on tribal lands.  54 U.S.C. § 300101(6).  Finally, the American Indian Religious Freedom Act of 1978 (AIRFA)

was enacted in order "to protect and preserve for American Indians their inherent right of freedom to believe, express and exercise the traditional religions . . . including but not limited to access to sites, *use and possession of sacred objects*, and the freedom to worship through ceremonials and traditional rites." 42 U.S.C. 1996.  These federal laws establish a public policy to limit or bar the public or outside individuals from accessing the Confidential Information.

Although federal law recognizes a need to protect this cultural patrimony, a protective order is still necessary because many of these federal laws apply only to federal agencies, are policy statements or do not create an independent cause of action or any individual rights by which the Pueblo could enforce the laws.  *See*, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) (Tribes or individual tribal members do not have an independent right of action under the AIRFA).  Also, existing federal laws do not prohibit exporting cultural artifacts internationally, although current legislation is being proposed[1].  As federal policy supports limiting public access the Confidential Information and recognizes the significant harm that could befall the Pueblo, issuance of a protective order is appropriate.

## ARGUMENT IN SUPPORT OF THE MOTION TO COMPEL

The United States objected to Request for Production No. 5, indicating that the United States had responsive documents that likely contain confidential information about cultural practices and locations.  The United States also stated that Section 304 of the National Historic Preservation Act may require "review" before responsive information relating to other tribes

---

[1] *See*, proposed Senate and House of Representative bills on Safeguard Tribal Objects of Patrimony Act of 2016, introduced by Senator Martin Heinrich and Ben Ray Lujan, respectively.  S. 3127 and H.R. 5854 (114th Cong., 2d Sess).  These nearly identical bills propose to prohibit the exportation of cultural artifacts, such as the Confidential Information, and increases penalties under the Native American Graves Protection and Repatriation Act.  42 U.S.C. 1996.

could be produced.  At scheduling hearings, attorneys of the United States have also indicated that tribal notice and consultation may be required before producing this information.  In initial discussions to attempt to resolve these issues, the United States included language in the proposed stipulated protective order that would address the United States' concerns about confidentiality, but the United States later deleted this language.

The Pueblo asserts that the confidentiality concerns relating to uses of the property by other tribes can be protected by a protective order similar to the one being proposed by the Pueblo, and the Pueblo requests that the Court issue such an order.  To the extent that United States is asserting that the National Historic Preservation Act requires an internal review or consultation, the Pueblo request that Court issue an order, clarifying if the Act applies and the amount of time the United States has to complete its review and consultation under the Act.

## CONCLUSION

Jemez Pueblo, therefore, respectfully requests this Court to enter an Order Granting a Motion for Protective Order, prohibiting the release of Confidential Information from public access and restricting discovery to the parties' attorneys and their experts.  Additionally, the Pueblo requests that the Court issue an order compelling the United State to produce confidential information, or issue a protective order to protect the confidential information and clarify if the National Historic Preservation Act applies and the time the United State has to produce such information.

December 22, 2016					Respectfully Submitted,

						JOHNSON BARNHOUSE & KEEGAN LLP

						*/s/ Christina S. West*
						Christina S. West
						7424 4th Street NW
						Los Ranchos de Albuquerque, NM 87107
						(505) 842-6123 (telephone)
						(505) 842-6124 (facsimile)
						cwest@indiancountrylaw.com
						*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 22nd day of December, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Peter Dykema, Peter.dykema@usdoj.gov
    Matthew Marinelli, Matthew.marinelli@usdoj.gov
    Attorneys for Defendant United States

    Kirk R. Allen/Stephen B. Waller
    kallen@mstlaw.com, swaller@mstlaw.com
    Attorneys for Defendant-in-Intervention NMGC

/s/ Christina S. West
Christina S. West