IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF JEMEZ,

    Plaintiff,

v.                                                                                                                     CIV 12-0800 JB/JHR

UNITED STATES OF AMERICA,

    Defendant,

and

NEW MEXICO GAS COMPANY,

    Defendant-in-Intervention,

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant United States' Motion to Compel Production of Supplemental Responses and Production of Documents in Response to the United States' Interrogatories, Requests for Production, and Requests for Admission, (*Doc. 170*), filed December 22, 2017, and fully briefed on January 19, 2017. *See Doc. 183*. The Court, having reviewed Plaintiff Pueblo of Jemez's Response (*Doc. 180*), and the United States' Reply (*Doc. 182*), finds that the Motion is well-taken in part and will be granted in part, for the reasons set forth below.

    **I)**    **BACKGROUND**

Plaintiff Pueblo of Jemez, a federally-recognized Indian Tribe, brought this action against the United States to quiet its aboriginal title to the lands known as the Valles Caldera National Preserve, formerly referred to as Baca Location No. 1. *Doc. 91* (Joint Status Report) at 2. Plaintiff's claim is premised upon the alleged fact that "[t]he ancestral Jemez people were the

1

predominant and primary Native American occupants and land users of the Jemez Mountains, including the lands of the Valles Caldera National Preserve and the greater Rio Jemez watershed[.]" *Doc. 1* (Complaint) at 1-2. As set forth in the Complaint, "[i]n 1860 Congress authorized the heirs of Luis Maria Cabeza de Baca (the 'Baca heirs') to select 496,447 acres, in no more than five square parcels, of so-called 'public domain' lands anywhere in the Territory of New Mexico." *Id.* at 2. One of the parcels selected by the Baca heirs, subsequently known as "Baca Location No. 1" encompassed approximately 99,289 acres including and surrounding the Valles Caldera. *Id.* Plaintiff claims, and the Tenth Circuit agreed,[1] that the Baca heirs received this grant subject to the continuing aboriginal Indian Title of the Pueblo of Jemez, "assuming that Jemez maintained aboriginal possession at the time." *See Doc. 42-1* (Mandate) at 39 (As the Tenth Circuit "pointed out, Supreme Court decisions since 1823 make clear that the Baca grant at issue was subject to the Jemez Pueblo's aboriginal title – assuming the Jemez maintained aboriginal possession at the time."). However, the Tenth Circuit made clear that it expressed "no opinion on whether, on remand, the Jemez Pueblo can factually establish aboriginal possession to the land it claims." *Doc. 42-1* at 39. That was left to this Court. *Id.* at 48 ("At this point in the current proceedings, neither party has had the opportunity to offer evidence about whether anyone has actually interfered with the Jemez Pueblo's traditional occupancy and uses of the land in question here, before or after 1946.").

The Tenth Circuit's rationale in reversing this Court helps frame the current discovery dispute. After reviewing Supreme Court precedent, the Tenth Circuit pointed out that, in the case of the Valles Caldera, "simultaneous occupancy and use of land pursuant to fee title and

---

[1] This case was initially dismissed for want of jurisdiction by the Honorable Robert Brack. *See Doc. 26*. The Tenth Circuit reversed Judge Brack's decision and remanded this case for further proceedings. *See Doc. 42*. The Court presumes that the parties are familiar with the case history, and so does not fully set forth that procedural background.

aboriginal title could occur because the nature of Indian occupancy differed significantly from the occupancy of the settlers." *Doc. 42-1 at 42.* In other words, assuming that Plaintiff continued in its "aboriginal use and occupancy," the fact that the land was granted to the Baca heirs did not extinguish Plaintiff's aboriginal title. *Id.* This is because, as the Court pointed out, "the terms 'aboriginal use and occupancy' have been defined 'to mean use and occupancy in accordance with the way of life, habits, customs and usages of the Indians who are its users and occupiers.'" *Id.* (citation omitted). Whether Plaintiff could demonstrate aboriginal use and occupancy of the land was therefore determined to be a fact question, subject to development on remand. *Doc. 42-1 at 44* (quoted authority omitted). Specifically, Plaintiff was tasked with "show[ing] 'actual, exclusive, and continuous use and occupancy for a long time of the claimed area.'" *Id.* The Court explained that "the 'exclusive' part of the test mean[s] only that in order to establish aboriginal title, a tribe 'must show that it used and occupied the land to the *exclusion of other Indian groups*.'" *Id.* (emphasis in original). "To show 'actual' and 'continuous use,' on the other hand, the Jemez Pueblo must show, as it alleges in its Complaint, that the Jemez people have continued for hundreds of years to use the Valles Caldera for traditional purposes, including hunting, grazing of livestock, gathering of medicine and of food for subsistence, and the like. As the cases make clear, if there was actually substantial interference by others with these traditional uses before 1946, the Jemez Pueblo will not be able to establish aboriginal title." *Doc. 42-1 at 44-45.* Accordingly, the question before this Court on remand is whether Plaintiff can demonstrate actual, exclusive and continuous use of the Valles Caldera/Baca Location No. 1.

On remand, this Court entered a Scheduling Order and the parties have engaged in discovery. *See Doc. 94* (Scheduling Order); *Docs. 115 & 116* (Protective Orders Governing Confidential Information) *Doc. 119* (Order and Stipulation Regarding Discovery Procedure);

3

*Doc. 144* (Stipulated Order Amending Scheduling Orders); *Doc. 187* (Stipulated Order Amending Scheduling Order). The United States served its First Set of Interrogatories and Requests for Production on May 17, 2016, *see Doc. 61* (Certificate of Service), and its First Set of Request for Admission on May 25, 2016. *See Doc. 63* (same). Plaintiff served its Objections and Responses to Defendant's First Set of Requests for Production and Interrogatories on July 11, 2016, *Doc. 71* (Certificate of Service) and its First Supplemental Objections and Answers to Defendant United States' First Set of Interrogatories on June 27, 2017. *Doc. 135*. Plaintiff served its Objections and Responses to Defendant's First Set of Requests for Admission on November 2, 2017. *Doc. 153*. The parties met and conferred about Plaintiff's allegedly deficient responses to Defendant's Interrogatories and Requests for Admission over the course of 2016 and 2017. *See Doc. 170* at 2-3 (Motion). Ultimately, the parties reached an impasse, and the pendent motion was filed.

In bringing the present Motion, Defendant asserts that "Plaintiff has essentially declined to provide information on topics the Tenth Circuit identified as critical elements of Plaintiff's case." *Doc. 170* at 5. The United States so asserts on the grounds that Plaintiff has "provided incomplete and often summarized responses to the United States' Interrogatories and Requests for Admission" and "has withheld thousands of admittedly relevant documents on the basis of privileges that either do not exist or, if they exist, do not shield the documents in question under the circumstances of this case." *Id.* at 5-6. Plaintiff, on the other hand, responds that it appropriately responded to Defendant's Interrogatories and Requests for Admission, and withheld the documents at issue on the basis of the Pueblo of Jemez' legislative privilege. *See Doc. 180*.

## II) **LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Parties may issue interrogatories pursuant to Federal Rule of Civil Procedure 33, which "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). A responding party may object to an interrogatory; however, the grounds for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). A party may move to compel the answer to an interrogatory under Rule 33 if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iii).

Parties may issue requests for admission under Federal Rule of Civil Procedure 36 directed at "any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). "The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer

be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an answer be served[.]" Fed. R. Civ. P. 36(a)(6).

Parties may issue requests for production pursuant to Federal Rule of Civil Procedure 34 "within the scope of Rule 26(b)[.]" Fed. R. Civ. P. 34(a). Each request must be responded to or addressed by specific objection. Fed. R. Civ. P. 34(b)(2). A party may move to compel a response to a request for production if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Parties are under a continuing duty to supplement responses to discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other party during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). The failure to supplement a discovery response may result in sanctions "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

III) **ANALYSIS**

Defendant's Motion is not a model of clarity, insofar as it does not directly identify which discovery requests are at issue until the concluding paragraph. There, Defendant "respectfully requests that this Court compel Plaintiff to supplement its responses to the United States' Interrogatories 1-5, 7-8, 10, and 18, and to respond to Requests for Production 1, 3, 4, and 5[.]" *Doc. 170* at 28. "Finally, the United States respectfully moves the Court to overrule Plaintiff's executive/leg. process privilege objection and to order Plaintiff to produce all documents that have until now been withheld on the basis of that objection." *Id.* However, Defendant also appears to take issue with Plaintiff's responses to its first six Requests for Admission, and asks

the Court to order Plaintiff admit them in its Reply brief. *See Doc. 170* at 5, 10, 12; *Doc. 182* at 13. The Court addresses each request in turn.

### A) Timing of the Motion

Before addressing the merits of Defendant's Motion, however, the Court pauses to consider Plaintiff's position that the Motion is untimely under this Court's local rules. *See Doc. 180* at 20, 27 (citing D.N.M.LR-Civ. 26.6). Under Local Rule 26.6:

> [a] party served with objections to: an interrogatory; request for production or inspection; or request for admission must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection unless the response specifies that documents will be produced or inspection allowed. In this case, the party must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days after production or inspection of the documents.
>
> Failure to proceed within this time period constitutes acceptance of the objection. For good cause, the Court may, *sua sponte* or on motion by a party, change the twenty-one (21) day period.

D.N.M.LR-Civ. 26.6. Local Rule 37.1, in turn, supplements relief sought pursuant to Fed. R. Civ. P. 37(a).

Plaintiff's argument is rejected. Local rules may be waived by a Judge to avoid injustice. D.N.M.LR-Civ. 1.7. And, as Defendant points out, the parties stipulated to a "suspension" of the applicable rules in an Order and Stipulation Regarding Discovery Procedure. *See Doc. 119* at 16. As stated in that Order, "[i]n order to comply with the provisions of this order and to review the likely large amount of discovery, the deadline in which a party must raise a motion to compel or a motion for a protective order as provided for in D.N.M.LR-Civ. 26.6 and 37.1 is hereby suspended." *Id.* As such, while Defendant's Motion might be technically late under this Court's local rules, the Court will proceed to analyze its merits.

**B) Interrogatories**

Defendant's first three interrogatories (1-3) are targeted at whether Plaintiff can demonstrate exclusive aboriginal use of the Valles Caldera/Baca Location No.1. *See Doc. 170* at 6. Each interrogatory seeks information, ranging from 1850 to the present, regarding Plaintiff's denial or attempted denial of permission to a person or entity for use of the Valles Caldera (No. 1), Plaintiff's granting of permission to a person or entity for use of the Caldera (No. 2), and each and every instance in which Plaintiff expelled or attempted to expel or eject a person or entity that had been using the Caldera (No. 3). *See Doc. 170-1* at 3-6. Plaintiff objected to each interrogatory on the basis of overbreadth, undue burden, vagueness and on confidentiality grounds. *Id.* "Subject to and without waiving these objections," Plaintiff responded to Interrogatory No. 1 with one example, arising on July 2, 1851, when it drove Navajo raiders from the Caldera. *Doc. 170-1* at 4. Otherwise, Plaintiff's answer to the interrogatory is devoid of substance, generally suggesting that Plaintiff would not deny permissive use to other tribes during times of peace, but excluded some during times of conflict. *See id.* at 3-5. Plaintiff's supplemental answer to Interrogatory No. 1 further discusses the example provided in response to the first interrogatory, states that "[m]embers of the Jemez Pueblo also engaged in efforts to drive the Spanish from the area," and discusses an instance of trespassing in 2001 by an unidentified individual. *Doc. 180-2* at 5. Plaintiff's response to Interrogatory No. 2 originally merely referenced its response to Interrogatory No. 1. *See Doc. 170* at 6. Its supplemental response provided little of substance; rather, after stating a series of objections, Plaintiff responded by stating that "those Jemez witnesses that retain an oral history as well as personally use Baca Location No. 1 do not recall seeing any other tribal members hunting, camping or being in Baca Location No. 1 during their lifetimes." *Doc. 180-2* at 6-7. Finally, in answering

Interrogatory No. 3, Plaintiff stated a series of objections and then referred Defendant to its response to Interrogatory No. 1. *See Doc. 170-1* at 6.

Defendant argues that these responses are "inadequate." *Doc. 170* at 5. Defendant further argues that Plaintiff failed to answer each interrogatory fully or separately, as required by the rules. *Id.* at 6, 8. As relief, Defendant asks the Court to "order Plaintiff to provide detailed facts sufficient to support its claim that it exclusively used the Valles Caldera." *Id.* at 15. Specifically, Defendant would have the Court order Plaintiff to

> include specific facts not only about how *it* used the Valles Caldera, but also: (1) its knowledge regarding which tribes, groups, or individuals used or attempted to use it; (2) how *other tribes, groups, or individuals* used or attempted to use it; (3) whether and if so how others sought permission from Plaintiff to use the land; and (4) whether and if so when Plaintiff prevented or sought to prevent use of the land by others.

*Id.* (emphasis in original). Plaintiff responds that its answers are not inadequate, but, to the contrary, are "appropriate and reflect the nature of evidence at issue in aboriginal title cases[.]" *Doc. 180* at 3. Plaintiff then discusses why evidence in aboriginal title cases can vary from the norm, *id.* at 8-13, concluding that "[j]ust because Jemez did not use a written language that would make it possible to provide recorded dates of each visit as might be anticipated under a more Western system does not mean that Jemez's answers should somehow be found unresponsive or impermissible." *Id.* at 13.

First, the Court finds that there was nothing technically improper about Plaintiff's decision to reference Interrogatory No. 1 when answering Interrogatories Nos. 2 and 3. While Rule 33(b)(3) states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully[,]" Fed. R. Civ. P. 33(b)(3), it is common practice for a party to answer an interrogatory by referring to others, so long as the reference is "specific rather than general." *See Martinez v. Easter Seals Santa Maria El Mirador, Inc.*, 2014 WL 12597407, at *3

9

(D.N.M. Oct. 7, 2014) (citing *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968)). Here, as Plaintiff argues, Defendant's first three interrogatories were related; as such, "[i]t is logical that Jemez would cross-reference its answers to interrogatories 1 and 3 because these interrogatories seek similar information, and the information overlaps." *Doc. 180* at 15. Moreover, as Plaintiff points out in its Response, it actually did provide a separate answer to Interrogatory No. 2 when it supplemented its answers. *See Doc. 180-2* at 5-7.

Turning to the heart of the parties' dispute, however, the Court is inclined to agree with Defendant that Plaintiff's answers to Interrogatories 1-3 lacked the substance that the questions sought. While the Court is cognizant that it might be difficult for Plaintiff to marshal evidence in support of its exclusive use of the Valles Caldera/Baca Location No. 1, given that much of this evidence comes down to oral histories, that does not excuse Plaintiff from making a good-faith attempt to answer the interrogatories fully. As Defendant argues, "[s]imply put, Jemez cannot refuse to respond to an interrogatory because the responsive information takes the form of oral history." *Doc. 182* at 3. As such, the Court will order Plaintiff to serve amended answers to Interrogatories Nos. 1-3. To the extent that Plaintiff is unable to answer the interrogatories because the responsive information takes the form of oral histories, Plaintiff must endeavor to reduce that oral history to writing.

Interrogatories No. 4 and 8 request Plaintiff to "describe by metes and bounds or by township, range and section," the lands to which it claims aboriginal title. *See Doc. 170-1* at 7, 12. Plaintiff objected to these requests on various grounds, including over-breadth, undue burden, vagueness and ambiguity. *Id.* Plaintiff further objected that the described measurement system is inconsistent with its own and Spanish measurement techniques, which were not used "during a substantial portion of the time period at issue." *Id.* at 7, 12. Without waiving these

10

objections, Plaintiff stated that it anticipated its experts would translate oral histories, Spanish and Mexican land documents and archeological evidence, and would produce "such information that is responsive or partial (sic) responsive to the interrogatory." *Id.* at 8, 12. However, Plaintiff never supplemented these responses. *See Doc. 180-2*. Nor does Plaintiff address them in its Response brief. *See Doc. 180* at 8 (only recognizing that Interrogatories Nos. 1, 2, 3, 10, and 18 are disputed). Defendant, apparently, has grown tired of waiting. *See Doc. 170* at 13 ("The caveat is not unreasonable, but it cannot justify a complete failure to address the substance of the United States' discovery requests."). As such, the Court will order Plaintiff to fully and completely respond to Interrogatories Nos. 4 and 8.

Interrogatories Nos. 5 and 7 ask Plaintiff to "identify the location of all trails, farmhouse sites, agricultural fields, ceremonial sites, sacred areas, mineral procurement areas, hunt traps and blinds, and camp sites reference in Paragraph 26 of the Complaint[,]" (No. 5) and the location of its "uses," as stated in Paragraph 59 of the Complaint (No. 7). *See Doc. 170-1* at 8, 10. Plaintiff objected to these requests on the grounds that they seek "the production of information that contains confidential, religious, and sacred information. The extensive desecration, theft, and damage likely to occur to sacred sites through their revelation in fulfilling th[ese] request[s] [is] not proportional to the needs of the case[.]" *Id.* at 8, 11. Without waiving this objection, Plaintiff indicated that it would answer the requests upon the entry of a confidentiality order "which properly protects Plaintiff's interests and as allowed by Jemez tradition and law[.]" *Id.* at 9, 11. The referenced confidentiality order was entered on March 17, 2017, and Plaintiff supplemented its answers to these interrogatories on June 27, 2017. *See Doc. 135* (Certificate of Service); *Doc. 180-2* at 7-14. Defendant complains that, "despite the existence of a Protective Order, [Plaintiff] evaded providing descriptions of where its uses of the

Valles Caldera occurred under the auspices of Plaintiff's unfamiliarity with methods to measure land boundaries." *Doc. 170* at 17. The Court agrees with Defendant that Plaintiff cannot avoid the discovery requests at issue merely because it is unfamiliar with the measurement devices referenced therein. As such, the Court will order Plaintiff to supplement its answers to Interrogatories Nos. 5 and 7 to the extent it is able.

Interrogatory No. 10 asks Plaintiff to "identify and describe every occasion on which Jemez has prohibited another tribe from accessing or using Redondo Peak[.]" *Doc. 170-8* at 2. By way of background, "Redondo Peak and surrounding areas within the Valles Caldera provide the central and indispensable geographical and spiritual core of Jemez Pueblo religion and culture." *Doc. 1* (Complaint) at 7. Plaintiff responded to this Interrogatory with a series of objections; however, without waiving its objections, Plaintiff "refers and incorporates its previous answers and objections to interrogatory no. 1, including supplemental answers." *Id.* at 3. Plaintiff then went on to explain that in times of peace, there would not be a need to deny permissive use, but that in times of "war or conflict, Jemez may exclude others." *Id.* at 3-5. Finally, Plaintiff provided one example, in 2001, of when it did not permit a use of the peak. *Id.* at 5. As with Plaintiff's responses to Interrogatories Nos. 1-3, the Court finds that its answer to Interrogatory No. 10 is incomplete. It appears likely that an occupant such as Plaintiff can provide more than one example of its exclusive use of Redondo Peak during the period at issue, and, if it cannot, it must so state. As such, the Court will order Plaintiff to supplement its answer to Interrogatory No. 10.

The final interrogatory at issue is No. 18, which asks: "[o]n what date did Plaintiff first become aware that the United States had granted Baca Location No. 1 to the Baca heirs, as alleged in paragraphs 75 through 83 of Plaintiff's complaint[,]" was objected to on various

grounds. *See Doc. 170-8* at 6. However, Plaintiff responded that, "[a]s states (sic) in paragraph 78 of the Complaint, 'Jemez Pueblo received no notice from the United States of the grant to the Baca heirs.' None of the referenced paragraphs assert that Plaintiff became aware of the United States (sic) grant of Baca Location No. 1 to the Baca heirs." *Id.* Plaintiff never supplemented this request. *See Doc. 180-3*. Defendant protests that "[b]y this utterly hollow objection, Plaintiff appears to be denying awareness *of a fact alleged in its Complaint*." *Doc. 170* at 18 (emphasis in original). The Court agrees with Defendant that Plaintiff, as a governmental entity, must respond to this interrogatory by one of its officers or agents "who must furnish the information available to the party." Fed. R. Civ. P 33(b)(1)(B). Surely, Plaintiff became aware of the Baca grant at some point in its history, or it would not have referenced the same in its complaint. Defendant is entitled to know when. As such, the Court will order Plaintiff to provide a supplemental answer to Interrogatory No. 18.

**C) Requests for Admission**

After becoming frustrated with Plaintiff's responses to the above-interrogatories, Defendant served on Plaintiff a set of Requests for Admission, seeking "to pin down, for three specific Tribes, whether Plaintiff has or has not given them permission to use Baca Location No. 1." *Doc. 170* at 10. Each of Defendant's six requests, therefore, asked Plaintiff to admit that it possesses no oral history explicitly granting or denying permission to other tribes to use the Valles Caldera. *See Doc. 170-7*. Plaintiff responded to each request, albeit with qualified responses. *See id.* Defendant complains that Plaintiff cannot have it both ways, either it must admit or deny the requests without qualification. *See Doc. 170* at 8-13. Plaintiff, on the other hand, argues that it properly qualified its responses to Defendant's requests, because "[a]ll of the requests at issue contain half-truths, which forces Jemez to qualify its responses." *Doc. 180* at

13

19-20. Defendant, in Reply, argues that Plaintiff should be forced to admit its requests for admission because "it lacks knowledge of other tribes using the Valles Caldera." *Doc. 182* at 5.

Initially, the Court finds nothing improper about the form of Plaintiff's responses. Rule 36(a)(4) states that

> [i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Fed. R. Civ. P. 36(a)(4). As such, Plaintiff's qualification of its responses was in accord with the rules. Moreover, the Court finds that the substance of Plaintiff's responses adequately conformed with the Rule's requirement. "The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." *S.E.C. v. Goldstone*, 300 F.R.D. 505, 525 (D.N.M. 2014) (citation omitted). Here, Plaintiff has both admitted and denied Defendant's requests for admission. To the extent that these admissions or denials are inconsistent with Plaintiff's interrogatory answers, Defendant will have the opportunity to test the veracity of the same at trial.

**D) Document Production**

Finally, Defendant moves the Court to compel Plaintiff to fully respond to its Requests for Production Nos. 1, 3, 4, and 5 "by producing improperly-withheld materials." *Doc. 170* at 28. These materials, totaling "more than three thousand documents" were withheld on the basis of the executive and legislative process privileges. *Id.* at 19. Defendant asks the Court to overrule the asserted privileges and require the production of these documents. *Id.*

There is a significant problem with the relief requested by Defendant. Under this Court's local rules, "[a] party seeking relief pursuant to FED. R. CIV. P. 26(c) or 37(a) must attach to the motion a copy of: (a) the interrogatory, request for production or inspection, relevant portion of deposition transcript, or request for admission; and (b) the response or objection thereto." D.N.M.LR-Civ. 37.1. However, none of the requests at issue are attached to either the Motion or Reply. While the Court could analyze the privileges asserted in the abstract, it is not authorized to issue advisory opinions. As such, Defendant's Motion is denied without prejudice as to the requests for production at issue. Should Defendant choose to re-litigate this portion of the Motion, it must attach the disputed requests and Plaintiff's response. To the extent that doing so will exceed the page limits set forth in the Court's local rules, Defendant should file a Motion seeking to exceed the same.

### E) Sanctions

Neither party broaches the topic of sanctions under Rule 37. However,

> [i]f the motion is granted … the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if … (ii) the opposing party's nondisclosure, response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the Court may, similarly, assess costs and fees against the movant. Fed. R. Civ. P. 37(a)(5)(B). If the motion is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

In this case, the Court has both granted and denied the relief requested by the United States in its Motion. As such, the Court will award sanctions to neither party. While Plaintiff's

answers to Defendant's interrogatories may have been deficient, the same is not true of its responses to Defendant's requests for admission. Furthermore, the Court is denying without prejudice Defendant's Motion as it relates to its requests for production.

## IV. **CONCLUSION**

In sum, the Court finds Defendant's Motion (*Doc. 170*) is well-taken in part and should be granted in part as to Plaintiff's interrogatory answers. However, the Court will deny the requested relief as to Plaintiff's responses to Defendant's requests for admission, and will deny without prejudice Defendant's Motion insofar as it seeks document production. As such, the Court hereby orders:

1. Within 14 days of the entry of this order, Plaintiff shall supplement its responses to Interrogatories 1-5, 7-8, 10, and 18.
2. Defendant's Motion is denied as to Plaintiff's responses to Defendant's Requests for Admission.
3. Defendant's Motion is denied without prejudice as to Plaintiff's responses to Defendant's Requests for Production.
4. Each party shall bear its own fees associated with litigating Defendant's Motion.

IT IS SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE