IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **PUEBLO OF JEMEZ**, a federally recognized Indian tribe, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:12-cv-800 (JB)(JHR) |
| v. | ) ) ) |
| **UNITED STATES OF AMERICA**, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| **NEW MEXICO GAS COMPANY**, | ) ) |
| Defendant-in Intervention. | ) ) |
| _____ | ) |

**UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO
THE UNITED STATES' RENEWED MOTION TO COMPEL**

JEFFREY WOOD
Acting Assistant Attorney General

 _/s/ Peter Kryn Dykema_
PETER KRYN DYKEMA, DC Bar No. 419349
MATTHEW MARINELLI, IL Bar No. 6277967
JACQUELINE LEONARD, NY Bar No.5020474
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    THE UNITED STATES HAS COMPLIED WITH ALL FILING REQUIREMENTS AND, IF NOT, ANY DEVIATION IS UTTERLY HARMLESS ............................................................................................................ 2

    II.    THE TIMING OF DEFENDANT'S MOTION DOES NOT EXCUSE PLAINTIFF'S OBLIGATION TO COMPLY WITH VALID DISCOVERY REQUESTS ............................................................................................................. 5

    III.    JEMEZ'S INVOCATION OF A "LEGISLATIVE PRIVILEGE" FAILS ............ 8

        A.    Legal Standard. ........................................................................................ 8

        B.    Jemez has failed to carry its burden to establish that a privilege applies. ..................................................................................................... 9

        C.    The legislative privilege is a use privilege, not a shield against discovery. ................................................................................................. 9

        D.    Jemez's invocation of the privilege fails the multi-part balancing test. ......................................................................................................... 10

        E.    Jemez's assertion that the privilege applies to anything remotely governmental is incorrect......................................................................... 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Anaya v. CBS Broad., Inc.*,
  251 F.R.D. 645 (D.N.M. 2007) .................................................................................................. 10

*Baugus v. CSX Transp., Inc.*,
  223 F.R.D. 469 (N.D. Ohio 2004) ................................................................................................ 5

*Benford v. American Broad. Cos., Inc.*,
  98 F.R.D. 42 (D. Md. 1983) ....................................................................................................... 14

*Brock v. Thompson*,
  948 P.2d 279 (Okla. 1997) ......................................................................................................... 14

*Chicago, Wilmington & Franklin Coal Co. v. Jilek*,
  42 F. Supp. 200 (E.D. Ill. 1942) ................................................................................................... 5

*Corp. Insular de Seguros v. Garcia*,
  709 F.Supp. 288 (D. Puerto Rico 1989) .................................................................................... 14

*Gov't of Virgin Islands v. Lee*,
  775 F.2d 514 (3rd Cir. 1985) ..................................................................................................... 14

*In re Grand Jury Investigation*,
  587 F .2d 589 (3rd Cir.1978) ..................................................................................................... 14

*Kaahumanu v. City of Maui*,
  315 F.3d 1215 (9th Cir. 2003) ................................................................................................... 16

*Lindley v. Life Investors Ins. Co. of America*,
  No. 08-CV-379-CVE-PJC, 2009 WL 2245565 (N.D. OK July 24, 2009) ................................ 13

*Lust v. Sealy, Inc.*,
  383 F.3d 580 (7th Cir. 2004) ....................................................................................................... 5

*Motley v. Marathon Oil Co.*,
  71 F.3d 1547 (10th Cir. 1995) ................................................................................................... 12

*Pearson v. Progressive Direct Ins. Co.*,
  No. CV 10-130 JC/LFG, 2010 WL 11623369 (D.N.M. June 28, 2010) ..................................... 8

*Peat, Marwick, Mitchell & Co. v. West*,
  748 F.2d 540 (10th Cir. 1984) ................................................................................................... 12

*Powell v. Ridge*,
  247 F.3d 520 (3rd Cir. 2001) ..................................................................................................... 14

*Tohono O'odham Nation v. Ducey*,
  No. CV-15-01135-PHX-DGC, 2016 WL 3402391 (D. Ariz. June 21, 2016) ........................... 15

*United States v. Brewster*,
  408 U.S. 501 (1972) ................................................................................................................... 15

*United States v. Lopez,*
  777 F.2d 543 (10th Cir.1985) .......................................................................................... 12

**Statutes**

Pub. L. 106-248, 114 Stat. 598 (2000) ..................................................................................... 8

Pub. L. No. 133-291, 128 Stat. 3292 (2015) ............................................................................ 8

**Other Authorities**

26A C. Wright & K. Graham, Jr., *Federal Practice and Procedure* § 5675 (2001) .................... 14

8 C. Wright & A. Miller, *Federal Practice and Procedures* § 2016 (1970) ................................ 13

**INTRODUCTION**

Plaintiff's determined efforts to avoid complying with its discovery obligations should not be rewarded. Plaintiff seeks, improperly, to withhold thousands of documents on the grounds that (a) the United States neglected to comply with the filing requirements of the local rules, which is either untrue altogether or is transparently hypertechnical; (b) the United States has been dilatory in seeking this Court's aid, when, in fact, the timing of the United States' motion is more Plaintiff's doing than Defendant's; and (c) the documents are shielded by a privilege that does not apply and that has in any event been waived. Plaintiff has no excuse for flouting its discovery obligations and should be ordered to produce the documents at once.

We know, moreover, that Plaintiff's governing bodies and officers have engage in highly relevant activities that should not be shielded. To cite but one example, on November 19, 2014, Plaintiff's Second Lt. Gov Romero emailed Tribal Historic Preservation Officer Chris Toya stating that "Governor [Madalena] sent a letter to Mr. Silva yesterday to let him know [yo]u guys were making this pilgrimage [to the Valles Caldera]; that way we have it documented. Anytime a community member is going to the [Valles Caldera], we should b[e] notified for documentation purposes; this is part of the evidence we can use to attest to continued use/visits." Email from Lt. Gov. Romero to THPO C. Toya (Nov. 19, 2014) (ECF 246-32). In other words, it was Plaintiff's policy to create evidence for use in the upcoming trial, a practice that the courts frown upon.[1] Plaintiff's effort to withhold from productions documents in any way reflecting governmental activity – see ECF 256 at 14, claiming privilege for "all communications within and between

---

[1] *See Baugus v. CSX Transp., Inc.*, 223 F.R.D. 469, 470 (N.D. Ohio 2004) (excluding video made "solely to create . . . evidence for later litigation"); *Lust v. Sealy, Inc.*, 383 F.3d 580, 588 (7th Cir. 2004) (excluding memos because "[t]heir only purpose was to create evidence for use in Lust's anticipated lawsuit"); *Chicago, Wilmington & Franklin Coal Co. v. Jilek*, 42 F. Supp. 200, 202 (E.D. Ill. 1942) (rejecting "manufactured" evidence).

branches" -- is improper and affords Plaintiffs an unfair and prejudicial litigation advantage that the Federal Rules are specifically designed to prevent.

## ARGUMENT

I. **THE UNITED STATES HAS COMPLIED WITH ALL FILING REQUIREMENTS AND, IF NOT, ANY DEVIATION IS UTTERLY HARMLESS**

The United States' motion challenges Plaintiff's assertion, in its privilege logs, of a "legislative privilege". With its renewed motion (and at the Court's suggestion -- ECF No 218 at 15) the United States attached the privilege logs that assert the legislative privilege.[2] Plaintiff complains that the United States has failed to comply with Local Rule 37.1, which provides:

> **37.1 Relief Sought in Protective Order and Motion to Compel**. A party seeking relief pursuant to FED. R. CIV. P. 26(c) or 37(a) must attach to the motion a copy of:
> **(a)** the interrogatory, request for production or inspection, relevant portion of deposition transcript, or request for admission; and
> **(b)** the response or objection thereto.

Plaintiff's complaint is poorly taken as it champions form over substance. Also, to whatever extent the United States has technically failed fully to comply with LR 37.1 that failure is demonstrably harmless.

Plaintiff raises two issues. First, Plaintiff claims that because the United States did not attach copies of Plaintiff's combined responses to the United States first set of discovery responses ("combined responses"), the United States has failed to comply with LR 31.1(b). But the substance of plaintiff's "legislative privilege" objection is made NOT in Plaintiff's July 11, 2017 combined response (attached hereto as Exhibit B – *see* ECF 71)), but only in Plaintiff's

---

[2] Plaintiff's opposition memo has clarified that Plaintiff is in fact asserting a legislative privilege. The privilege logs themselves are not so helpful. Several entries assert "Executive Legislative Delibertative Process Privilege" [sic]. *See*, e.g., July 26, 2016 Privilege Log (Exh. A) at 5. The revised privilege logs assert, instead, an "Executive/Leg Process" privilege. See, e.g., Exh J (ECF 234-10) at 2.

privilege logs which the United States DID attach to its renewed motion. The combined responses, in most cases, said nothing about any "Executive Legislative Delibertative Process Privilege" [sic] or any "Executive/Leg Process" privilege. To illustrate, Plaintiff's objections to Request for Production #1[3] stated, in full:

> Plaintiff objects to this request as overly broad, unduly burdensome, vague, and not reasonably specific insofar as it requests "all documents referencing … communications", "regarding" the present lawsuit, and defendant's definition of Neighboring Pueblo that includes tribes in Arizona that are not "neighbors" and "any multi-tribal organization in which one or more of those tribes participates or has participated" which is overly broad and vague. Also, the request includes no scope of time when the alleged facts in this case span a long time. The comprehensive research required to fulfill this request would not be proportional to the needs of the case or to the likely benefit of any responsive documents. Plaintiff objects to the extent that this request extends to documents that reference communications which may be subject to attorney-client privilege or the attorney work product doctrine. Plaintiff objects to the extent that the documents and information requested contain confidential information concerning Plaintiff's or Neighboring Pueblo's confidential religious and sacred information.

*Id.* at 3-4. Neither here, nor in objecting to the United States' requests numbers 2, 3, and 9-19 (of 19 total requests) did Plaintiff mention anything about a legislative privilege. *Id.* at 4-6, 8-18.

In response to request number 5[4] Plaintiff stated, in addition to several other objections: "Plaintiff objects to this request to the extent that it calls for the production of documents subject to legislative privilege." In response to request numbers 6-8[5] Plaintiff stated, in addition to

---

[3] The United States' first request for production stated: "Please produce all documents referencing or constituting communications, including but not limited to letters and emails, between Plaintiff and any Neighboring Pueblo or non-federal governmental body regarding the present lawsuit." ECF 234-1 at 3.

[4] Request number 5 stated: "Please produce all documents referencing or constituting communications, including but not limited to letters and emails, between Plaintiff and the United States Congress relating to Plaintiff's historical or current use of Baca Location No. 1." *Id.* at 7.

[5] Request number 6 stated: "Please produce all documents containing, referencing, or constituting comments, proposals, analyses, or statements of position of Plaintiff with respect to the legislation that resulted in The Valles Caldera Preservation Act of 2000, Pub. L. 106-248, 114 Stat. 598."

several other objections: "Plaintiff objects to the extent this request calls for the production of documents subject to the executive, legislative or deliberative process privilege, attorney-client privilege, or the attorney work product doctrine." *Id.* at 6-8.

These cursory objections to 4 of the United States' 19 requests add absolutely nothing to the resolution of the United States' renewed motion. And where responses to discovery contain only generalized assertions of privilege, it is the privilege log that determines the adequacy of a party's privilege-based objections. *Pearson v. Progressive Direct Ins. Co.*, No. CV 10-130 JC/LFG, 2010 WL 11623369, at *2 (D.N.M. June 28, 2010). Significantly, Plaintiff's opposition memo nowhere suggests that the Court will be aided in any way by reviewing Plaintiff's combined responses.

The second issue Plaintiff raises involves a filing error. Exhibit G to the United States' renewed motion (ECF No, 234-7) was supposed to be Plaintiff's Privilege Log for Sixth Supplemental Production (Part 2) Revised 12/13/17. A clerical error by the undersigned resulted, instead, in Exhibit G being a duplicate of Exhibit J (ECF 234-10 -- the Privilege Log to the Eighth Supplemental Production (also dated 12/21/17). The undersigned certainly regrets the error and apologizes to the Court for any confusion the error may have occasioned.

But Plaintiff could not have been confused. First, Plaintiff presumably knows what privilege logs it has produced. Second, in the renewed motion, the United States carefully listed

---

Request number 7 stated: "Please produce all documents containing, referencing, or constituting comments, proposals, analyses, or statements of position of Plaintiff with respect to the legislation that resulted in Section 3043 of the National Defense Authorization Act of 2015, Pub. L. No. 133-291, 128 Stat. 3292."

Request number 8 stated: "Please produce all documents referencing or constituting communications, including but not limited to letters and emails, between Plaintiff and any federal executive agency, including but not limited to the Department of the Interior and U.S. Forest Service, that reference or discuss Plaintiff's historical or current use of Baca Location No. 1."

the exhibits to the motion, and in so doing plainly identified Exhibit G as Plaintiff's Privilege Log for Sixth Supplemental Production (Part 2). And, as Plaintiff notes, what was supposed to be Exhibit G was actually labeled Exhibit J; in other words, when loading Exhibit G in ECF the wrong exhibit was selected. Plaintiff's lament that "Defendant makes no attempt explain the duplication [of Exhibit J]", ECF No 256 at 7, is theatrics.

Worse is Plaintiff's suggestion that the documents covered by the erroneously omitted Exhibit G are now somehow beyond the scope of the United States' renewed motion. *Id*. Plaintiff knew exactly what privilege log was intended to be Exhibit G, and as the author of Exhibit G, Plaintiff can pretend no surprise at its contents. The United States regrets its filing error, but it cannot possibly have caused Plaintiff any prejudice. For the Court's reference Plaintiff's Privilege Log for Sixth Supplemental Production (Part 2) Revised 12/13/17 is attached hereto as Exhibit C.[6]

II. **THE TIMING OF DEFENDANT'S MOTION DOES NOT EXCUSE PLAINTIFF'S OBLIGATION TO COMPLY WITH VALID DISCOVERY REQUESTS**

On several occasions the United States noted the inadequacy of Plaintiff's privilege logs. See, e.g., ECF 170-2(pointing out in particular "the lack of information about who sent and received the allegedly privileged documents.") Examples from Plaintiff's first privilege log follow. The assertions of "Attorney-Client Privilege" and "Executive Legislative Delibertative Process Privilege" [sic] privileges are incomprehensible as they give no information about the

---

[6] Plaintiff also notes that the United States erroneously attached the United States' Second Set of Requests For Production And Third Set Of Interrogatories To Plaintiff (April 6, 2018), which is not the subject of the United States' renewed motion. ECF 256 at 6 & fn. 1. The United States regrets this error as well but it cannot have caused any prejudice.

authors or recipients.

| Begin Bates | End Bates | Description | Privilege |
|---|---|---|---|
| P00003483 | P00003488 | Jemez inner email re: strategy re: VCT response to Oct-Nov 2014 use request 10/13/2014 | Attorney-Client Privilege, Executive Legislative Deliberative Process |
| P00003494 | P00003495 | Jemez inner email re: strategy for meeting on grazing 07/09/2014 | Executive Legislative Deliberative Process |
| P00003496 | P00003497 | Jemez inner email re: strategy for meeting on grazing 07/10/2014 | Executive Legislative Deliberative Process |

July 26, 2016 Privilege Log (Exh. A) at 5.

Eventually Plaintiff agreed to provide logs that would give the United States at least some chance of evaluating the privileges asserted, as the law requires. *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 648 (D.N.M. 2007) (A privilege log is inadequate where it "did not provide enough information to support [a party's] assertions of privilege and protection"). Indeed, the Court's pretrial order requires as much. ECF 119 at 16 ("The privilege log for an e-mail withheld under a claim of privilege, to the extent any is required, shall identify the author, recipient(s), subject, dates and times based on the metadata from the top-level message . . ."). But as late as November, 2017, Plaintiff was still resisting the United States' efforts to persuade Plaintiff to comply with its discovery obligations and produce an intelligible privilege log. ECF 182-10. The final revised logs (ECF 234-3 through ECF 234-10) were produced *seventeen months* after the original privilege log, on December 21, 2017.

The United States filed its Motion to Compel *the next day* – on December 22, 2017. ECF 170. For Plaintiff to accuse the United States of being dilatory on this issue is ironic.

This Court has already rejected Plaintiff's argument (implicitly renewed here – ECF 256 at 4) that the original motion to compel was untimely. ECF 218 at 7. Plaintiff argues that the renewed motion should be denied because it is now less than two months until trial. It is true that the United States shares responsibility for the timing of the renewed motion, because it was the United States that chose to try to comply with the Court's 50-page exhibit limit rather than

6

attach all relevant discovery requests and responses – a decision that the Court found fatal to the original motion to compel, under Local Rule 37.1.[7]  But the much greater contributor to the timing of the present motion is the fact that, for seventeen months, Plaintiffs chose not to comply with the basic requirements for a privilege log.  And it is the United States, not Plaintiff, who is materially prejudiced by the delay, because the United States will have limited time to review the wrongfully withheld documents and may have limited the opportunity to explore them at deposition.

Plaintiff's recitation of the supposed difficulties it would encounter if compelled to comply with its discovery obligations is transparent.

> Plaintiff would have to review multiple sets of documents to determine which documents were withheld and determine which documents need to continue to be withheld for other privileged reasons such as attorney-client privilege. Plaintiff would have to further review those approximately 3,000 documents to determine what is subject to the confidentiality order entered in this case. Then Plaintiff would have to arrange for documents contained in multiple files be produced electronically.

ECF 256 at 10.  There is little here of substance:

- Why Plaintiff would have to review "multiple sets of documents", is a mystery: the documents are Bates-numbered, are therefore readily identified, and only one copy needs to be produced.  If, after compiling the privilege log, Plaintiff scattered the listed documents into multiple locations so as to make their retrieval difficult that is hardly reason to penalize the United States.  In all events, and as Plaintiff acknowledges, the documents are all loaded into a document management software system (ECF 256 at 15); that system makes identifying and producing the relevant documents easy and fast.

---

[7] It is also true that, following the technical denial of the United States' original motion to compel, two months elapsed before filing the renewed motion.  This was due to several factors, including the facts that counsel were in the middle of expert discovery, taking and defending depositions (across the country), and preparing summary judgment and other motions. Also, the undersigned was in Louisiana for a trial before the Court of Claims in July.

7

- The idea that Plaintiff would need to "determine which documents were withheld" is bizarre. The withheld documents are listed, with description and bastes number, on the logs.
- That Plaintiff would need to "determine which documents need to continue to be withheld for other privileged reasons such as attorney-client privilege" is simply false. Plaintiff has reviewed these documents for attorney-client (and other) privileges, and has asserted those privileges hundreds times. The United States is not seeking production of documents as to which the attorney-client or work product privilege has been asserted.
- The assertion that Plaintiff "would have to further review those approximately 3,000 documents to determine what is subject to the confidentiality order entered in this case" is also false. Under the Court's protective order, Plaintiff can designate *all* documents as confidential and it is up to the United States to initiate a process for modifying that designation. ECF 115 ¶¶ 3, 14.
- That Plaintiff "would have to arrange for documents contained in multiple files be produced" is also false. The documents are electronically stored and organized. And, again, if Plaintiff has deliberately made retrieval of the documents difficult, that is no reason to prejudice the United States.

As noted, the real prejudice here is suffered by the United States from the fact that it took Plaintiff so long (seventeen months) to produce privilege logs that even approximated the legal requirements. That alone justifies over-ruling Plaintiff's privilege assertions. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert the privilege must make a clear showing that it applies" and failure to do so in a timely manner waives the privilege.)

## III.  JEMEZ'S INVOCATION OF A "LEGISLATIVE PRIVILEGE" FAILS

### A. Legal Standard.

"The party seeking to assert a privilege has the burden of establishing its applicability." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995), citing *United States v. Lopez,* 777 F.2d 543, 552 (10th Cir.1985). *See* C. Wright & A. Miller,

8

*Federal Practice and Procedures* § 2016 (1970) at p. 126 ("It is for the party objecting to discovery to raise the objection in the first instance and he has the burden of establishing the existence of the privilege") (footnotes omitted).

### B. Jemez Has Failed To Carry Its Burden To Establish That a Privilege Applies.

As shown in our moving papers, Jemez's privilege logs are wholly inadequate to carry Jemez's burden of demonstrating that *any* privilege applies. *See Lindley v. Life Investors Ins. Co. of America*, No. 08-CV-379-CVE-PJC 2009 WL 2245565 at *11 (N.D. OK July 24, 2009) ("Pursuant to Rule 45(d)(2)(A) of the Federal Rules of Civil Procedure, Senator Coffee not only is required to support his claim of legislative privilege 'expressly,' but he must 'describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.' . . . . However, he has presented no descriptions of the nature of the documents or a privilege log from which Lindley or the Court can determine the applicability of legislative privilege.") Jemez's generalized assertions that the entirety of its "communications within and between" its branches of government are traditionally legislative in nature, ECF 256 at 14, outright ignore the factors relevant to determining whether privilege applies and fail to make the case that the privilege is appropriate.

### C. **The legislative privilege is a use privilege, not a shield against discovery.**

Jemez's invocation of a "legislative privilege" is also unavailing because the better-reasoned decisions hold that the legislative privilege is a use privilege that does not give litigants secrecy rights. The "legislative privilege" is based on Art. I, § 6 of the United States Constitution that provides "... for any Speech or Debate in either House, they [members of Congress] shall not be questioned in any other place." 26A C. Wright & K. Graham, Jr., Fed. Practice and Procedure § 5675 (2001). Courts have construed this clause to be at its core, a "use

9

privilege." *See e.g.*, *Brock v. Thompson*, 1997 OK 127, 948 P.2d 279 (Okla. 1997)); *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 523 (3rd Cir. 1985) ("[u]nlike privileges such as attorney-client, physician-patient, or priest-penitent, the purpose of which is to prevent disclosures which would tend to inhibit the development of socially desirable confidential relationships, the Speech or Debate privilege is at its core a use privilege."). That the privilege is only a "use privilege" against compulsory testimony, "means that documents created by legislative activity can, if not protected by any other privilege, be disclosed and used in a legal dispute that does not directly involve those who wrote the document." *Corp. Insular de v. Garcia*, 709 F.Supp. 288, 297 (D. Puerto Rico 1989) *Seguros*. This limitation recognizes that the privilege was not designed to keep legislators' documents confidential. *See Powell v. Ridge*, 247 F.3d 520, 524 (3rd Cir. 2001) (legislative immunity not "bottomed on confidentiality"). Accordingly, legislative privilege may not be used to preclude document discovery in a civil action.

The legislative privilege "is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has a limited toleration for secrecy. The privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *In re Grand Jury Investigation*, 587 F .2d 589, 597 (3rd Cir.1978). Because the privilege was not designed to keep records confidential and "[s]ince the speech or debate privilege is one of evidentiary non-use, it would not seem to bar discovery of legislative acts." 26A C. Wright & K. Graham, Jr., Fed. Practice and Procedure, § 5675 (2001) (citing *Benford v. American Broad. Cos., Inc*., 98 F.R.D. 42, 46 (D. Md. 1983).

### D. Jemez's invocation of the privilege fails the multi-part balancing test.

Even if the legislative privilege can be invoked as a shield against discovery (presuming, arguendo, that it is applicable to Jemez), and overlooking the inadequacy of Jemez s privilege logs, Jemez cannot pass the three (or four) part balancing test sometimes applied in this context.

10

Jemez does little to respond to our arguments, ECF 170 at 25-27, on this issue. Jemez asserts that the documents at issue are irrelevant, but that is not the basis on which they were withheld and the inadequacy of Jemez s descriptions of the documents make the relevance claim difficult to assess. Jemez also chides the United States for not accepting an offer to review a dozen supposedly representative documents to be selected by Jemez – twelve *of the three thousand documents withheld*. Finally, we note that Jemez does not respond to the point that by bringing suit against the United States, it has waived privilege.

### E. Jemez's assertion that the privilege applies to anything remotely governmental is incorrect.

Finally, Jemez's conception of the privilege ("[t]he Pueblo of Jemez's notes, meeting minutes, resolutions, and all communications within and between branches" – ECF 256 at 14) is wildly overbroad. *See United States v. Brewster*, 408 U.S. 501, 512-13 (1972). "A communication is not protected by the legislative privilege simply because a legislator made or received it. The privilege applies only if the communication pertains to legislation, as opposed to executive or administrative action." *Tohono O'odham Nation v. Ducey*, No. CV-15-01135-PHX-DGC, 2016 WL 3402391 *10-11 (D. Ariz. June 21, 2016). A point Jemez avoids is whether communications to a governor qualifies as "legislative" action. The legislative process privilege does not automatically attach to any action taken by any component of a governing body. Jemez claims that, because all communications, meeting notes, and resolutions belonging to each of its three branches of government are always for its members at large and are traditionally legislative in nature (even the judiciary and executive branches), they satisfy *Ducey's* legislative process test. Jemez's attempts to argue that because it is a sovereign with a multi-branch government, all of its communications are enshrined in the legislative process privilege, fail.

11

None of the privilege test factors warrant a finding that the privilege applies here. Rather, Jemez's privilege logs indicate communications pertaining to the types of *ad hoc* decisions the court in *Ducey* determined "'did not effectuate policy or create a binding rule of conduct.'" *Id.* at *12 (citing *Kaahumanu v. City of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003)). Any tribal decisionmaking pertaining to Jemez's potential purchase or acquisition of some portion of the Valles Caldera, for example, is the type of real estate decision rejected by *Ducey*, not the formulation of policy. *Id.* at *13-14. Similarly, while Jemez's government may have been acting in a way to benefit Jemez's members at large, any legislative documents related to the Valles Caldera sought to direct the conduct of single entities, such as the owner of the Valles Caldera or, in the case of tribal resolutions, a neighboring Pueblo. Just as the court in *Ducey* found that all but one of the meeting notes, agendas, and closed session report documents did not qualify as "legislative" under the legislative process privilege, this Court should find the same.

## CONCLUSION

Better-reasoned authorities hold that the legislative privilege Plaintiff invokes does not exist, and no court anywhere has accepted Plaintiff's idea that anything in any way related to government functions is privileged. But even if there is a legislative privilege (other than a use privilege) Plaintiff has made no effort whatsoever to carry its burden of establishing that the privilege applies to the documents Plaintiff has withheld and, moreover, Plaintiff has no answer to our showing that any privilege that might attach has been waived. The United States respectfully requests that Plaintiff be ordered to produce all documents on its privilege logs (ECF 234-3 through ECF 234-10, and Exhibit C hereto) as to which objection was made on the basis of governmental privilege(s).

Respectfully submitted this 12th day of September, 2018.

                JEFFREY WOOD
                Acting Assistant Attorney General

                <u>*/s/ Peter Kryn Dykema*</u>
                PETER KRYN DYKEMA, DC Bar No. 419349
                MATTHEW MARINELLI, IL Bar No. 6277967
                JACQUELINE LEONARD, NY Bar No.5020474
                United States Department of Justice
                Environment & Natural Resources Division
                Natural Resources Section
                P.O. Box 7611
                Washington, DC 20044-7611
                Tel: (202) 305-0436
                Tel: (202) 305-0293
                Tel: (202) 305-0493
                Fax: (202) 305-0506
                Peter.dykema@usdoj.gov
                Matthew.marinelli@usdoj.gov
                Jacqueline.leonard@usdoj.gov

                *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

   I hereby certify that on September 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all counsel of record.

                /s/ <u>*Peter Kryn Dykema*</u>
                Peter Kryn Dykema