IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF JEMEZ,

    Plaintiff,

v.                                                                                              CIV 12-0800 JB/JHR

UNITED STATES OF AMERICA,

    Defendant,

and

NEW MEXICO GAS COMPANY,

    Defendant-in-Intervention,

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant United States' Renewed Motion to Compel Production of Documents, [Doc. 234], filed August 17, 2018, and fully briefed on September 12, 2018. [*See* Doc. 260]. The Court, having reviewed Plaintiff Pueblo of Jemez's Response [Doc. 256], and the United States' Reply [Doc. 259], finds that the Motion is well-taken and will be granted for the reasons set forth below.

**I)**     **BACKGROUND**

Plaintiff, a federally-recognized Indian Tribe, brought this action against the United States to quiet its aboriginal title to the lands known as the Valles Caldera National Preserve, formerly referred to as Baca Location No. 1. [Doc. 91 (Joint Status Report) at 2]. Plaintiff's claim is premised upon the alleged fact that "[t]he ancestral Jemez people were the predominant and primary Native American occupants and land users of the Jemez Mountains, including the lands of the Valles Caldera National Preserve and the greater Rio Jemez watershed[.]" [Doc. 1

(Complaint) at 1-2]. As set forth in the Complaint, "[i]n 1860 Congress authorized the heirs of Luis Maria Cabeza de Baca (the 'Baca heirs') to select 496,447 acres, in no more than five square parcels, of so-called 'public domain' lands anywhere in the Territory of New Mexico." [*Id.* at 2]. One of the parcels selected by the Baca heirs, subsequently known as "Baca Location No. 1" encompassed approximately 99,289 acres including and surrounding the Valles Caldera. [*Id*]. Plaintiff claims, and the Tenth Circuit agreed,[1] that the Baca heirs received this grant subject to the continuing aboriginal Indian Title of the Pueblo of Jemez, "assuming that Jemez maintained aboriginal possession at the time." [*See* Doc. 42-1 (Mandate) at 39 (As the Tenth Circuit "pointed out, Supreme Court decisions since 1823 make clear that the Baca grant at issue was subject to the Jemez Pueblo's aboriginal title – assuming the Jemez maintained aboriginal possession at the time.")]. However, the Tenth Circuit made clear that it expressed "no opinion on whether, on remand, the Jemez Pueblo can factually establish aboriginal possession to the land it claims." [Doc. 42-1 at 39]. That was left to this Court. [*Id.* at 48 ("At this point in the current proceedings, neither party has had the opportunity to offer evidence about whether anyone has actually interfered with the Jemez Pueblo's traditional occupancy and uses of the land in question here, before or after 1946.")].

On remand, this Court entered a Scheduling Order and the parties have engaged in discovery. [*See* Doc. 94 (Scheduling Order); Docs. 115 & 116 (Protective Orders Governing Confidential Information); Doc. 119 (Order and Stipulation Regarding Discovery Procedure); Doc. 144 (Stipulated Order Amending Scheduling Orders); Doc. 187 (Stipulated Order Amending Scheduling Order)]. Trial is set for October 29, 2018. [Doc. 223].

---

[1] This case was initially dismissed for want of jurisdiction by the Honorable Robert Brack. *See Doc. 26*. The Tenth Circuit reversed Judge Brack's decision and remanded this case for further proceedings. *See Doc. 42*. The Court presumes that the parties are familiar with the case history, and so does not fully set forth that procedural background.

Defendant served its First Set of Interrogatories and Requests for Production on May 17, 2016, [*see* Doc. 61 (Certificate of Service)]. Plaintiff served its Objections and Responses to Defendant's First Set of Requests for Production and Interrogatories on July 11, 2016, [Doc. 71 (Certificate of Service)]. Ultimately, Defendant filed a Motion to Compel Plaintiff's responses to certain requests for production, among other things. [See Doc. 170]. While this Court granted Defendant most of the relief requested in its Motion, it did not rule on Defendant's requests for production, denying the relief requested without prejudice. [*See* Doc. 218]. This was because Defendant's Motion did not comply with this Court's Local Rules which required it to attach the requests at issue and Plaintiff's responses to them. [*Id.*, p. 15]. Defendant has now renewed its Motion as to its requests for production. [*See* Doc. 234].

Most basically, Defendant asks the Court to overrule Plaintiff's assertion of privilege as to approximately three thousand (3,000) documents that it has withheld. [*See* Doc. 234]. Defendant argues that Plaintiff's asserted "Legislative Process Privilege" either does not exist or does not apply to the facts of this case. [*See id.*, p. 13].[2] Plaintiff's Response, on the other hand, argues that Defendant has still failed to comply with this Court's local rules in renewing its motion and that the Motion should be denied as untimely. [*See* Doc. 256, pp. 5-10]. Alternatively, Plaintiff argues that it "appropriately asserted the legislative process privilege" in response to Defendant's document requests. [*Id.*, p. 10]. In Reply, Defendant argues that any failure to comply with the Court's local rules was inadvertent and harmless, and that its Motion was not untimely. [*See* Doc. 259, pp. 2-8]. Moreover, Defendant argues that Plaintiff has failed to demonstrate that its asserted privilege applies to shield it from discovery in this case. [*See id.*, p. 13].

---

[2] Defendant, like the Court initially struggled with which privilege Plaintiff appears to assert. [*See* Doc. 234, pp. 13-18]. Plaintiff clarifies in its Response that it is asserting "the Legislative Privilege." [Doc. 256, p. 13].

## II)    ISSUES PRESENTED

**1.** Is Defendant foreclosed from a decision on the merits of its Motion?

**2.** If not, does Plaintiff's invocation of the "legislative process privilege" preclude production of the documents at issue?

## III)    LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Parties may issue requests for production pursuant to Federal Rule of Civil Procedure 34 "within the scope of Rule 26(b)[.]" Fed. R. Civ. P. 34(a). Each request must be responded to or addressed by specific objection. Fed. R. Civ. P. 34(b)(2). A party may move to compel a response to a request for production if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs privilege logs. Rule 26(b)(5)(A) states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

There are a certain "basic principles" that this Court operates under when faced with an assertion of privilege. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995). The first is that "[t]he party seeking to assert a privilege has the burden of establishing its applicability." *Id.* (citation omitted). The second is that, even where a valid privilege applies, "[t]he law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007) (citation omitted).

## IV) <u>ANALYSIS</u>

### A) Violations of Procedure and Timing of the Motion

Plaintiff argues that Defendant's Motion should be denied as a matter of procedure because, despite this Court's prior ruling, it failed to comply with this Court's Local Rules when renewing its Motion to Compel. [*See* Doc. 256, pp. 1-3]. Specifically, Plaintiff argues that, despite filing hundreds of pages of its privilege logs, Defendant failed to attach Plaintiff's responses to the discovery requests at issue. [*Id.*, p. 2]. Plaintiff's argument is rejected. Local rules may be waived by a Judge to avoid injustice. D.N.M.LR-Civ. 1.7. Here, Defendant corrected its filing error by attaching the subject responses to its Reply brief. As such, the Court will not deny Defendant's Motion as a matter of procedure.

Plaintiff also points to a filing error by Defendant as grounds to deny its Motion. [*See* Doc. 256, pp. 5-7]. This argument, too, is rejected. As with Defendant's failure to attach the pertinent discovery responses to its Motion, this error was corrected with the filing of Defendant's Reply brief.

Finally, Plaintiff argues that "the motion should be denied because it was brought eight months after the discovery deadline, during the summary judgment phase, and weeks before

trial." [Doc. 256, p. 7]. In support, Plaintiff argues that it has been more than two years since it first asserted the privilege at issue in response to Defendant's requests. [*Id.*, p. 8]. Plaintiff adds that it will suffer unfair prejudice if it is forced to produce the documents at issue weeks before trial. [*Id.*, p. 9]. In its Reply, Defendant argues that Plaintiff will not suffer the requisite prejudice to support denial of the Motion. [*See* Doc. 259, pp. 11-12].

The Court is cognizant that there will be some burden on Plaintiff if Defendant's Motion is granted. However, for reasons stated in its last Memorandum Opinion and Order, the Court will not find the Motion to be untimely. [*See* Doc. 218, p. 7]. Moreover, the Court does not find that the burden on Plaintiff is sufficient to justify denial of Defendant's Motion, even with trial looming. As Defendant argues, the subject documents should be readily available to Plaintiff, they should already be bates-numbered, and they are presumptively entitled to protection under the Court's confidentiality order. [*See* Doc. 259, p. 12]. As such, the Court will not deny Defendant's Motion on timeliness grounds.

**B) Document Production**

Turning to the heart of the matter, the Court will grant Defendant's Motion in full, for two reasons. First, the Court finds that the "legislative process privilege" does not apply to shield the requested discovery in this case. Second, even if the privilege applied, the Court finds that Plaintiff has waived it through the production of an inadequate privilege log.

In reaching these conclusions, the Court first finds that the identified documents are relevant under Federal Rule of Civil Procedure 26(b)(1). Defendant argues that the documents are "presumptively relevant" because "[t]he documents identified as responsive to the United States' requests for production were located through computer searches using search terms the parties agreed upon." [Doc. 234, p. 12]. Plaintiff responds that "[m]ost of the documents

6

withheld have no bearing on this case[,]" and were only identified through Defendant's document management software, which casts a broad net. [Doc. 256, p. 15]. The Court agrees with Defendant that, in this case, the presence of stipulated search terms bolsters the conclusion that the documents identified are presumptively relevant to the claims and defenses at issue. Moreover, information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). To the extent that Plaintiff believes that certain documents identified are irrelevant to this case, it may preserve its position with an objection at trial.

Turning to the privilege at issue, Plaintiff relies heavily on *Tohono O'odham Nation v. Ducey*, CV 15-1135, 2016 WL 3402391 (D. Ariz. June 21, 2016). In that case, the court examined the speech or debate clause of the United States Constitution, and concluded that like state legislators, tribal legislators "enjoy protection from criminal, civil, or evidentiary process that interferes with their 'legitimate legislative activity.'" *Id.* at *3 (citation omitted). The court explained, "the legislative privilege is a corollary to legislative immunity, and courts have recognized that tribal legislators are protected by such immunity." *Id.* (citation omitted). However, the application of the privilege in *Tohono* shows why it is not applicable here. As was explained by the court, "[t]he legislative privilege protects a legislator's communications that 'bear on potential legislation' – communications undertaken 'in connection with or in aid of legislative acts." *Id.* at *4 (citation omitted). Thus, a communication is not privileged simply because a legislator made or received it, it must pertain to legislation. *Id.* In determining whether a communication is legislative, the Court considers: "(1) whether the act involves ad hoc decision-making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Id.* (quoted authority omitted).

7

After reviewing these factors, and in support of application of the privilege, Plaintiff argues that its "notes, meeting minutes, resolutions, and all communications within and between branches involve the formulation of policy for the members of the Pueblo of Jemez, the community at large. These communications are legislative." [Doc. 256, p. 14]. Defendant argues that this formulation of the privilege is "wildly overbroad," [Doc. 259, p. 15], and the Court is incline to agree. While remaining cognizant that Plaintiff's system of government may differ from that employed by the federal government and the states, the Court will not extend a privilege that is intended to protect pre-decisional legislative communications to those that are arguably executive as well. As such, the Court rejects the notion that communications between the respective branches of Plaintiff's government qualify for protection. As the *Tohono* court explained, "a communication is not protected by the legislative privilege simply because a legislator made or received it. The privilege applies only if the communication pertains to legislation, as opposed to executive or administrative action." *Tohono*, 2016 WL 3402391 at *4 (citation omitted). It is Plaintiff's burden to support the privilege that it relies on, and Plaintiff has failed to do so with regard to communications between its branches of government.

Notably, Plaintiff appears to argue that even communications by its executive branch may qualify under the legislative privilege. [*See* Doc. 256, p. 14 ("As a fully functioning sovereign tribal government, the Pueblo of Jemez's communications between the Governor(s) (including their direct staff) and Tribal Council Members (executive and legislative), and among Tribal Council Members (legislators), themselves are protected by the privilege.")]. Plaintiff's blanket categorization is foreclosed by the rationale of *Tohono*. Moreover, even if the Court were to determine that an executive branch privilege is asserted by Plaintiff, it would not apply on these facts. *See, e.g.*, *Casad v. U.S. Dept. of Health and Human Services*, 301 F.3d 1247, 1251

8

(10th Cir. 2002) (discussing the executive deliberative process privilege). As Defendant points out, the executive deliberative process privilege applies only to agency communications that are *predecisional* and that are deliberative in nature. [Doc. 234, p. 14]; *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1149, 1153 (D.N.M. 2004). Neither Plaintiff's briefing nor, more importantly, its privilege log supplies the essential bases for the executive privilege.

Turning to Plaintiff's "notes, meeting minutes, [and] resolutions," the Court is not convinced that such matters are protected by the legislative privilege. For example, adopted resolutions are not predecisional and thus not protected. *Compare Casad*, 301 F.3d at 1251 (Executive privilege does not protect final agency decisions.). This much Plaintiff admits. [*See* Doc. 256, p. 18]. While "notes and meeting minutes" may include privileged material, Plaintiff has failed to provide sufficient information to show how the *Tohono* factors apply in this case, as is its burden. For example, Plaintiff points to drafts of a leasing code as an example of a document that should be protected under the *Tohono* analysis. [*See* Doc. 256, p. 14]. However, based on Plaintiff's privilege log, the Court is unable to determine whether that code was adopted, either in whole or in part. [*See id.*]. Without such information, the Court cannot conclude that such documents are protected by the deliberative process privilege.

Finally, as noted above, Defendant attached hundreds of pages of privilege logs to its Motion. The Court has reviewed the logs, and finds that they are so inadequate as to waive whichever privilege Plaintiff is asserting. Many of the assertions of privilege by Plaintiff are simply too sparse to adequately put the Court, or Defendant, on notice as to the content of the withheld documents and the resulting basis of the privilege asserted. As an example, one of the documents withheld under the "Executive/Leg Process" privilege is described as "Email from

NRD to Governors regarding religious ceremonial purposes." [*See* Doc. 234-9, p. 158]. That description supports no privilege available to Plaintiff here. Another example is a document labeled "Redacted 06/05/2017 email to POJ Governors from Exec Admin re: draft plan." [*See* Doc. 234-9, p. 126]. Such a document might or might not be privileged, but the description gets this Court no closer to a determination. After full review, the Court concludes that Plaintiff has waived whatever privilege it intended to assert by producing an inadequate privilege log.

## IV. **CONCLUSION**

The Court finds Defendant's Motion [Doc. 234] is well-taken and should be granted. The Court hereby orders that Plaintiff shall deliver to Defendant all documents it has withheld on the basis of the legislative process privilege within ten (10) days of the entry of this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE