# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF JEMEZ, a federally recognized
Indian Tribe,

      Plaintiff,

vs.                                                                      No. CIV 12-0800 JB\JHR

UNITED STATES OF AMERICA,

      Defendant,

and

NEW MEXICO GAS COMPANY,

      Defendant-in-Intervention.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant the United States of America's oral objection to hearsay contained in America Indian oral tradition evidence testimony of Jemez Pueblo member Paul Tosa, and (ii) the Plaintiff Pueblo of Jemez's Memorandum of Law: Native American Oral Traditional Evidence at 1, filed October 29, 2018 (Doc. 320)("Oral Evidence Memo."). The Court held a hearing on October 29, 2018. See Trial Transcript -- Day 1 at 1:4-6 (Court)("Trial Tr.").[1] The primary issue is whether the Court should admit hearsay statements contained in oral tradition evidence pursuant to the Federal Rules of Evidence, or, in the alternative, pursuant to four hearsay exceptions: (i) rule 803(19), Reputation Concerning Personal or Family History; (ii) rule 803(20), Reputation Concerning Boundaries or General History; (iii) rule 803(21), Reputation Concerning Character; and (iv) rule 807, the Residual

---

[1]The Court's citations to the trial transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Exception. Oral Evidence Memo. at 1-8. The Court concludes that the Federal Rules of Evidence do not permit admission of out-of-court statements contained in American Indian oral tradition evidence when offered for the truth of the matter asserted, because the rule against hearsay prohibits such statements. See Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."). The Court may adopt oral tradition evidence for non-hearsay purposes, if Jemez Pueblo can establish a non-hearsay purpose, such as background, for why Jemez people believe things, do things, draw or paint things. The Court also will admit hearsay statements in oral tradition evidence for the truth of the matter asserted pursuant to the hearsay exceptions enumerated in rule 803, provided such statements conform to the limited scope of each enumerated exception, as the Federal Rules of Evidence define the exception. See Fed. R. Evid. 803. The Court will not admit hearsay, however, in oral tradition evidence pursuant to rule 807, the residual exception to the rule against hearsay, because the Court concludes that oral tradition evidence is not sufficiently exceptional to warrant admission pursuant to this rule. See Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 392 (Fed. Cir. 1996)(concluding that the residual hearsay exception is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b)'" (quoting S. Rep. No. 94-199, at 20 (1975))).

**FACTUAL BACKGROUND**

In 2012, Jemez Pueblo filed suit under the federal common law and the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"), seeking a judgment that Jemez Pueblo "has the exclusive right to use, occupy, and possess the lands of the Valles Caldera National Preserve pursuant to its continuing aboriginal title to such lands." Complaint to Quiet Title to Aboriginal Indian Land, Prayer for

Relief ¶ 1, at 14-15, filed July 20, 2012 (Doc. 1)("Complaint"). Specifically, Jemez Pueblo alleges aboriginal title to "that certain parcel of land commonly known as Baca Location No. 1 located in Sandoval and Rio Arriba Counties, New Mexico . . . containing 99,289.39 acres, more or less." Complaint at 27.

## PROCEDURAL BACKGROUND

Jemez Pueblo's Valles Caldera claim proceeded to trial beginning on October 29, 2018. See Trial Tr. at 1:4-6 (Court). During the first trial day, Jemez Pueblo elicited oral tradition evidence testimony from Jemez Pueblo Tribal Council member Paul Tosa. See Trial Tr. at 136:25 (Solimon). Tosa provided extensive testimony regarding historical Jemez Pueblo activity in and around the Valles Caldera; for example, Tosa stated that "in the fall it was time to collect [medicinal herbs,] that's what grandpa told us[,] that the obsidian valley[,] the campsite at the entrance to the gate[,] that's where that big area was . . . ." Trial Tr. at 165:23-166:5 (Tosa). In response to such testimony, the United States raised a hearsay objection, arguing that "the case law is fairly clear [that] oral histories are hearsay[.] [I]t's plain hearsay and doesn't come in if under any exception." Trial Tr. at 166:10-16 (Dykema)(citing Bonnichsen v. United States, 367 F.3d 864, 881-82 (9th Cir. 2004); Sokaogon Chippewa Cmty. v. Exxon Corp., 2 F.3d 219, 222 (7th Cir. 1993)(Posner, J.)). Specifically, according to the United States, what Tosa learned "at his grandfather's knee" is inadmissible hearsay. Trial Tr. at 167:5-7 (Dykema). Jemez Pueblo responded that oral traditional evidence "has been held admissible in . . . federal Indian law cases including cases within the Tenth [Circuit Court of Appeals]." Trial Tr. at 167:9-12 (Solimon). Moreover, Jemez Pueblo asserts that it is aware of no "case right now that would . . . exclude this type of testimony where we are dealing with a dispute involving things like migration, land use, traditions involving land use." Trial Tr. at 167:13-16 (Solimon). Jemez Pueblo argued that, "in

- 3 -

cases that have considered oral tradition regarding [ancient] migration, sacred landmarks, shrines which have continuing importance in Tribal lifestyles, courts have [consistently] . . . accepted it." Trial Tr. at 168:2-6 (Solimon)(citing Zuni Tribe of N.M. v. United States, 12 Cl. Ct. 607, 608 (Ct. Cl. 1987)). Jemez Pueblo adds that

> the way courts typically accept this evidence is it's to be read in context with other issues that are presented, including objective evidence such as expert witness testimony. In terms of it being hearsay . . . there is a hearsay exception specifically concerning customs affecting lands in a community. That's 803[(20)]. That exception reads reputation in a community arising before the controversy as to boundaries of or customs affecting lands in the community and reputations show events of general history important to the community or state or nation in which it is located.

Trial Tr. at 168:10-21 (Solimon).

The Court acknowledged that it is "not an expert in [rule] 803[20]," but expressed skepticism that rule 803(20) would "cover all the history that . . . Mr. Tosa is going to want to testify about. He's not going to testify just about the boundaries, but he's going to talk about something much more extensive." Trial Tr. at 169:6-9 (Court). The Court then inquired whether the cases that Jemez Pueblo cites address an objection or merely rely on unopposed oral history. Trial Tr. at 169:9-14 (Court). In response, Jemez Pueblo directed the Court to Pueblo De Zia v. United States, 165 Ct. Cl. 501 (1964), in which, according to Jemez Pueblo,

> the [Indian Claims Commission] Court was reversed because it did not consider oral history, oral evidence that was not corroborated by written documents. And that was in itself hearsay[.] [W]e haven't found a case indicating that a hearsay objection to oral evidence or oral testimony, [or] Tribal traditions that are passed down orally ha[s] been accepted and sustained to prevent a witness from testifying. I think what courts have done is they've given the appropriate . . . amount of weight based on the other objective evidence in the case.

Trial Tr. at 169:15-170:2 (Solimon)(citing Pueblo De Zia v. United States, 165 Ct. Cl. at 501. The Court reiterated its skepticism that "oral history can pass a hearsay objection" and proposed that the Court will take such evidence subject to making a formal ruling. Trial Tr. at 170:3-11 (Court).

The United States assented to the Court's proposal and stated its understanding that the Court of Claims in Pueblo De Zia v. United States held that oral traditional evidence was not necessarily worthless when corroborating evidence supports the oral testimony. See Trial Tr. at 170:12-171:3 (Dykema).

The Court inquired about the quantity of oral traditional evidence that Jemez Pueblo intends to introduce during trial. See Trial Tr. at 171:7-9 (Court). Jemez Pueblo responded that the Court "will be hearing information about societies that use the Valles Caldera. And part of their testimony will involve oral traditions within those societies." Trial Tr. at 171:10-13 (Solimon). Moreover, Jemez Pueblo expressed that such oral traditional evidence "provides . . . context to understand . . . the testimony that both sides will be presenting about [how] it is that Jemez people came to this area and why they settled in this area." Trial Tr. at 171:20-24 (Solimon).

The Court inquired whether the United States saw any use for oral traditional evidence "other than it being offered for the truth of the matter asserted." Trial Tr. at 172:23-25 (Court). The United States responded that it is "happy to hear" Jemez Pueblo's migration story, despite relevance concerns, but objects to testimony regarding Jemez Pueblo's Valles Caldera use as learned from Tosa's grandfather, which the United States argues is relevant only for its truth. Trial Tr. at 173:1-13 (Dykema). The Court instructed the United States to object to what the United States considers offensive testimony, and the Court stated that it will likely conclude that it will not consider such testimony for the truth of the matter asserted. See Trial Tr. at 173:14-18 (Court).

Jemez Pueblo asserted that, because "it's going to . . . cover many witnesses on this exact same issue," it had prepared a bench memorandum further delineating its position on the oral traditional evidence issue. Trial Tr. at 173:21-25 (Barnhouse). The Court accepted the bench memorandum and instructed Jemez Pueblo to file its bench memorandum on the docket. See Trial

Tr. at 174:2-3 (Court). The United States responded that it would also file a bench memorandum on this issue. See Trial Tr. at 174:4-6 (Dykema). The United States, however, ultimately decided not to file a bench memorandum, see Trial Tr. at 275:6-8 (Dykema), and instead directed the Court to four cases that, according to the United States, discuss the relevancy and admissibility of oral traditional evidence: Pueblo De Zia v. United States; Bonnichsen v. United States, 367 F.3d 864, 881-82 (9th Cir. 2004); Sokaogon Chippewa Community v. Exxon Corp.; and Coos Bay, Lower Umpqua & Siuslaw Indian Tribes v. United States, 87 Ct. Cl. 143 (1938), see Trial Tr. at 275:6-25 (Dykema).

Jemez Pueblo argues, in its bench memorandum, that oral tradition evidence from lay witnesses is admissible. See Oral Evidence Memo. at 2. Jemez Pueblo asserts that courts have admitted such evidence "with and without considering corroborating evidence" to support factual findings, thereby "essentially ignor[ing] any application of the hearsay rule in their factfinding." Oral Evidence Memo. at 3. For example, according to Jemez Pueblo, the United States District Court for the Western District of Oklahoma in Comanche Nation v. United States, No. CIV-08-849-D, 2008 WL 4426621 (W.D. Okla. Sept. 23, 2008)(DeGiusti, J.), relied on lay witness testimony, "at times without the specific need for corroborating evidence," to establish that a geographic site was sacred to the Comanche Nation. Oral Evidence Memo. at 3 (citing Comanche Nation v. United States, 2008 WL 4426621, at *7 ("Testimony from several members of the Comanche Nation established that the [Medicine] Bluffs remain a sacred site for the Comanche people.")).

Jemez Pueblo adds that courts have admitted oral traditional evidence from tribal members who themselves received such evidence from tribal elders. See Oral Evidence Memo. at 3 (citing United States v. Michigan, 471 F. Supp. 192, 219 (W.D. Mich. 1979)(Fox, C.J.)("The oral

testimony of the tribal witnesses educated in the history and customs of their people by tribal elders [was] found to be reasonable and credible factual data regarding certain relevant aspects of Indian life at and after treaty times."); United States v. Washington, 384 F. Supp. 312, 379 (W.D. Wash. 1974)(Boldt, J.), aff'd, 520 F.2d 676 (9th Cir. 1975)).

Jemez Pueblo argues that courts also consider lay witness oral traditional evidence "in the context of all other evidence." Oral Evidence Memo. at 4. According to Jemez Pueblo, the United States Claims Court in Zuni Tribe of New Mexico v. United States stated that it "considered all the evidence including testimony by several expert witnesses, source material relied upon by witnesses and accompanying their written reports, and the documentary evidence, and considered the lay testimony in that context." Oral Evidence Memo. at 3 (quoting Zuni Tribe of N.M. v. United States, 12 Cl. Ct. at 608). Moreover, according to Jemez Pueblo, the Honorable Edward J. Lodge, United States District Judge for the District of Idaho, held that the Coeur d'Alene Indian Tribe owned the lands in question after considering "oral traditional evidence in conjunction with expert testimony, documentary evidence and scientific studies . . . ." Oral Evidence Memo. at 4 (citing United States v. Idaho, 95 F. Supp. 2d 1094, 1101 (D. Idaho 1998)(Lodge, J.)). Similarly, according to Jemez Pueblo, the Honorable Warren K. Urbom, Chief United States District Judge for the District of Nebraska, relied on "the testimony of '[m]any traditional Indians'" to assist in his interpretation of an 1868 treaty between the United States and the Sioux people. Oral Evidence Memo. at 4 (citing United States v. Consol. Wounded Knee Cases, 389 F. Supp. 235, 242 (D. Neb. 1975)(Urbom, C.J.)).

In the alternative, Jemez Pueblo asserts that oral traditional evidence falls within rule 803(20) of the Federal Rule of Evidence, Reputation Concerning Boundaries or General History. See Oral Evidence Memo. at 6. Jemez Pueblo concedes that rule 803(20)'s application "has been

limited," but nevertheless cites two unpublished cases wherein, according to Jemez Pueblo, federal courts admitted reputation evidence to establish real property boundaries. Oral Evidence Memo. at 4 (citing United States v. Booth, No. 90-5748, 1991 WL 119530, at *5 (6th Cir. July 3, 1991); Ariel Land Owners, Inc. v. Dring, No. 3:CV-01-0294, 2008 WL 189644, at *8 (M.D. Pa. Jan. 18, 2008)(Caputo, J.)). Jemez Pueblo further argues that state courts have applied analogous state hearsay rule exceptions to admit boundary and general history evidence. See Oral Evidence Memo. at 6-7 (citing Sacrison v. Evjene, 398 P.3d 273, 279 (Mont. 2017)(justifying the general reputation exception, because "[i]t is unlikely that a falsehood could become generally accepted in a community as the truth" (quoting Goodover v. Lindey's, Inc., 757 P.2d 1290, 1294 (Mont. 1988)))). Jemez Pueblo also cites to Egli v. Troy, 602 N.W.2d 329 (Iowa 1999), wherein the Supreme Court of Iowa stated that, when reputation evidence regarding "controversies concerning boundaries or customary usage" is "the only evidence available," such evidence "is better than no evidence at all" despite being "multiple hearsay." Oral Evidence Memo. at 7 (quoting Egli v. Troy, 602 N.W.2d at 334).

Jemez Pueblo further asserts that rule 803(19), Reputation Concerning Personal or Family History, and rule 803(21), Reputation Concerning Character, "also depend on reputations and community knowledge, and apply to oral traditional evidence." Oral Evidence Memo. at 7-8 (citing Fed. R. Evid. 803(19); Fed. R. Evid. 803(21)). Moreover, according to Jemez Pueblo, rule 807's residual exception to hearsay applies to oral traditional evidence, pursuant to Tenth Circuit caselaw, if the Court "is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice." Oral Evidence Memo. at 8-9 (citing United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993)).

# LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. See United States v. Edwards, No. CR 16-3068 JB, 2017 WL 4857441, at *16 (D.N.M. Oct. 25, 2017)(Browning, J.).

1.    **Rule 803(3).**

One of the hearsay exceptions -- rule 803(3) -- excepts from the general bar on hearsay "[a] statement of the declarant's then existing state of mind [or] emotion." Fed. R. Evid. 803(3). Rule 803(3) permits the introduction of "hearsay . . . , even though the declarant is available as a witness," for a statement of the declarant's "[t]hen existing mental, emotional, or physical condition":

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3).

For the statement to qualify under the exception, it "must relate to the declarant's state of mind during" the incident in question. United States v. Netschi, 511 F. App'x 58, 61 (2d Cir. 2013)("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier as in this case would significantly erode the intended breadth of this hearsay exception." (quoting United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991)(internal quotation marks omitted). This requirement is not to say that the statement must be said at the very moment of the incident, but for intent to be proved, it must be "contemporaneous" to the act. Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295 (1892). To be contemporaneous and therefore admissible under the present state-of-mind exception, a statement must be "part of a continuous mental process." United States v. Cardascia, 951 F.2d at 488. In addition to the requirements that the statement be contemporaneous to the incident at hand and relevant to the case's issues, it must also be established that there was no opportunity for the declarant to "fabricate or to misrepresent his thoughts." United States v. Jackson, 780 F.2d 1305, 1315 (7th Cir. 1986)). The intent statements must reveal information or details about the future, which has been contrasted with memory statements or looking back to the past. See Shepard v. United States, 290 U.S. 96, 104 (1933). When statements entail issues of looking into the past combined with other concerns, it can often be too confusing for a jury to extract, upsetting the balance of advantage, and ultimately making the evidence inadmissible. See Shepard v. United States, 290 U.S. at 104. "The most obvious risk of prejudice is that the jury will consider the hearsay statement not as proof of state of mind and

the subsequent conduct of the declarant, but rather for the truth of the facts that are related in the statement."  Stephen A. Saltzburg et al., <u>Fed. Rules of Evidence Manual</u> § 803.02, at 4-803 (11th ed. 2017).

**2.      Rule 803(19).**

Hearsay statements are also permissible pursuant to rule 803(19), if the statement concerns "[a] reputation among a person's family by blood, adoption, or marriage -- or among a person's associates or in the community -- concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or similar facts of personal or family history."  Fed. R. Evid. 803(19).  As the Advisory Committee Note highlights, rule 803(19)

> is concerned with matters of personal and family history.  Marriage is universally conceded to be a proper subject of proof by evidence of reputation in the community.  5 Wigmore § 1602. As to such items as legitimacy, relationship, adoption, birth, and death, the decisions are divided.  *Id.* § 1605.  All seem to be susceptible to being the subject of well founded repute. The "world" in which the reputation may exist may be family, associates, or community.  This world has proved capable of expanding with changing times from the single uncomplicated neighborhood, in which all activities take place, to the multiple and unrelated worlds of work, religious affiliation, and social activity, in each of which a reputation may be generated.  *People v. Reeves,* 360 Ill. 55, 195 N.E. 443 (1935); *State v. Axilrod,* 248 Minn. 204, 79 N.W.2d 677 (1956); Mass. Stat. 1947, c. 410, M.G.L.A. c. 233 § 21A; 5 Wigmore § 1616.  The family has often served as the point of beginning for allowing community reputation.  5 Wigmore § 1488.

Fed. R. Evid. 803 advisory committee's note.  <u>Weinstein's Federal Evidence</u> further articulates the need for this exception:

> Other evidence of family matters is frequently unavailable, and it is likely that these matters have been sufficiently inquired about and discussed with persons who have personal knowledge so that a trustworthy consensus has been reached.  No requirement of unavailability is imposed, because of the likelihood that on questions of this kind -- such as birth, adoption, and legitimacy -- other available witnesses would also be testifying from reputation, rather than personal knowledge. . . .

> The rule does not require that reputation in question have been formulated before the controversy arose, since a false reputation as to birth, death, or marriage

is not likely to arise at any time. However, there is a greater possibility of inaccuracy concerning other aspects of family history, such as an ancestor's travels.

5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 803.21[2] at 803-140 (Mark S. Brodin ed., 2d ed. 2018).

Rule 803(19) provides that reputation evidence is admissible to prove personal or family history, and that family members or close associates can establish the reputation. See Fed. R. Evid. 803(19); Saltzburg, supra, at 803-93. Reputation in the community often serves to provide evidence of marriage. See 5 Wigmore on Evidence § 1602, at 569 (Chadbourn rev. 1974)("[I]t has been universally conceded that reputation in the community is always admissible to evidence the fact of marriage; there does not seem to have been any time when this was disputed."). The Advisory Committee on Evidence Rules notes that that this exception contemplates, as proper subjects of proof, marriage, legitimacy, relationship, adoption, birth, and death. See Fed. R. Evid. 803(19) advisory committee's notes. See United States v. Jean-Baptiste, 166 F.3d 102, 110 (2d Cir. 1999)("[Rule 803(19)] plainly contemplates that members of a family may testify with regard to the common understanding as to the birth of another family member."). No matter the purpose, reputation testimony requires a reliable foundation. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 100-01 (3d Cir. 1999)(concluding that, to admit reputation evidence among a work community, the proponent must establish that reputation testimony "arises from sufficient inquiry and discussion among persons with personal knowledge of the matter" to constitute trustworthy reputation; rumors and speculation are insufficient). The exception's rationale "is that 'the natural effusions of those who talk over family affairs . . . are trustworthy.'" Saltzburg, supra, at 803-93 (quoting Johnson v. State, 737 S.W.2d 901, 905 (Tex. App. 1987), aff'd in part and vacated on other grounds in part, 784 S.W.2d 47 (Tex. Crim. App. 1990)(en banc)(construing the state counterpart to Federal Rule 803(19))).

### 3. **Rule 803(20).**

Under the rule 803(20) hearsay exception, an out-of-court statement is admissible if the statement concerns "reputation in a community -- arising before the controversy -- concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state, or nation." Fed. R. Evid. 803(20). The Advisory Committee Note to rule 803(20) states that,

> [t]he first portion of Exception [paragraph] (20) is based upon the general admissibility of evidence of reputation as to land boundaries and land customs, expanded in this country to include private as well as public boundaries. McCormick § 299, p. 625.[2] The reputation is required to antedate the controversy, though not to be ancient. The second portion is likewise supported by authority, *id.,* and is designed to facilitate proof of events when judicial notice is not available. The historical character of the subject matter dispenses with any need that the reputation antedate the controversy with respect to which it is offered.

Fed. R. Evid. 803 advisory committee's note. The <u>Federal Rules of Evidence Manual</u> states that,

> [t]o qualify for admission under Rule 803(20), the testimony must report a general consensus in the community, an assertion of the group as opposed to one or a few of its constituents. The fact that the information has been considered by and was subject to the general scrutiny of the community is an essential guarantee of reliability for the exception. Consequently, if the statement is a personal assertion of a single declarant, it will not be admitted under Rule 803(20).

---

[2]According to <u>McCormick on Evidence</u>,

> [i]n England the use of the evidence is limited to public boundaries or other public rights. Nicholls v. Parker, (1805) 104 Eng. Rep. 629 (K.B.). But in this country, except in a few states, it extends also to private boundaries. Hail v. Haynes, 312 Ky. 357, 227 S.W.2d 918 (1950); Hemphill v. Hemphill, 138 N.C. 504, 51 S.E. 42 (1905). *See* 5 Wigmore, Evidence § 1587. The exception has been expanded on occasion beyond evidence of reputation and admitted hearsay statements of specific individuals. Kay Corp. v. Anderson, 72 Wash. 2d 879, 436 P.2d 459 (1967) (statement of out-of-court declarant as to location of boundary admitted under exception).

<u>McCormick on Evidence</u> § 322, at 553 (Kenneth S. Broun ed., 7th ed. 2013).

Saltzburg, supra, at 803-94.  The Advisory Committee Note to rule 803 discusses the rationale behind reputation-based exceptions to the rule against hearsay:

> Trustworthiness in reputation evidence is found "when the topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been discussed in the community; and thus the community's conclusions if any has been found, is likely to be a trustworthy one." 5 Wigmore § 1580. . . . On this common foundation, reputation as to land boundaries, customs, general history, character, and marriage have come to be regarded as admissible.  The breadth of the underlying principle suggests the formulation of an equally broad exception, but tradition has in fact been much narrower and more particularized, and this is the pattern of these exceptions in the rule.

Fed. R. Evid. 803 advisory committee's note.

To have significant probative value to qualify for admission under rule 803(20), the matter in question "must be one of general interest, so that it can accurately be said that there is a high probability that the matter underwent general scrutiny as the community reputation was formed." McCormick on Evidence § 322, at 554 (Kenneth S. Broun ed., 7th ed. 2013)(quoted by the Honorable Bruce S. Jenkins, United States District Judge for the District of Utah, in Ute Indian Tribe v. State of Utah, 521 F. Supp. 1072, 1049 (D. Utah 1981)(Jenkins, J.), rev'd in part on other grounds, 716 F.2d 1298 (10th Cir. 1983)).  See Mont. Power Co. v. Fed. Power Comm'n, 185 F.2d 491 (D.C. Cir. 1950)(admitting newspaper accounts and histories describing river's navigable nature during the nineteenth century to prove river's reputation for navigability during the nineteenth century).  Wigmore states this "general interest" component even more emphatically:

> [T]he facts for which such an opinion or reputation can be taken as trustworthy must . . . be such facts as have been of interest to all members of the community as such, and therefore have been so likely to receive general and intelligent discussion and examination by competent persons, so that the community's received opinion on the subject cannot be supposed to have reached the condition of definite decision until the matter had gone, in public belief, beyond the stage of controversy and had become settled with fair finality.

5 Wigmore on Evidence, supra, § 1598, at 564-65.

Regarding the "general historical events important to [the] community" clause, Fed. R. Evid. 803(20), the Honorable Marvin E. Frankel, United States District Judge for the Southern District of New York, stated: "It is generally recognized that reputation is acceptable as proof of historical events of general interest in the community, despite the fact that such evidence is hearsay." Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co., 368 F. Supp. 1098, 1104 n.5 (S.D.N.Y. 1973)(Frankel, J.). Hence, the rationale for this clause is: (i) a need for the evidence, because of the likelihood that other evidence cannot be obtained; and (ii) reliability, because the testimony represents the consensus of the community.[3] See Advisory Committee's Note to Original Rule, reprinted at § 803 App. 01[2] ("[Rule 803(20)] is designed to facilitate proof of events when judicial notice is not available."). See Pan Am. World Airways, Inc. v. Aetna Cas. &

---

[3]There is scant authority on the admissibility of reputation concerning general history. Legal writers attribute this scarcity to the fact that courts frequently admit historical writings under the ancient documents exception, see Fed. R. Evid. 803(16), or the business records exception, see Fed. R. Evid. 803(11), or because facts about history often qualify for judicial notice or are admitted under the exception for learned treatises, see Fed. R. Evid. 803(18). See 5 Weinstein's Federal Evidence § 803.22, at 803-143 (2018); Taylor S. Fielding, Evidence Issues in Indian Law Cases, 2 Am. Ind. L. J. 285, 303 (2017). Taylor Fielding, Tribal Prosecutor for the Kootenai Tribe of Idaho, argues that these exceptions reflect a bias against oral tradition evidence, generally based on the assumption that written records are a more accurate reflection of an event than oral history. See Fielding, supra, at 303. Further examples of such bias, according to Mr. Fielding, are seen in rule 803's exceptions for religious organization records, see Fed. R. Evid. 803(11), marriage and baptism certificates, see Fed. R. Evid. 803(12), and personal family histories contained in family Bibles, Fed. R. Evid. 803(13). Fielding, supra, at 303. Anastasia Winslow, Professor of Law at Seton Hall University School of Law, notes that such exceptions are not surprising, because "[t]he law implicitly embodies the religious premises of the dominant culture." Anastasia P. Winslow, Sacred Standards: Honoring the Establishment Clause in Protecting Native American Sacred Sites, 38 Ariz. L. Rev. 1291, 1301 (1996). Therefore, Professor Winslow suggests, because the nature of many Indian traditions, practices, and religious activities are foreign to the courts, litigants should expect evidence rules to favor Western record-keeping practices, which have a preferred position in society. See Winslow, supra, at 1301. Dr. Peter Whiteley, Professor of Anthropology at the American Museum of Natural History's Richard Gilder Graduate School, asserts that "the Bible's very textuality enables it to be conceptualized as including history more easily than is the case with oral mythology, owing to the engrained -- though largely unexamined -- ideas about the supposed instability and unreliability of oral narratives in the Western cult of the written word." Peter M. Whiteley, Archaeology and Oral Tradition: The Scientific Importance of Dialogue, 67 Am. Antiquity 405, 407 (2002).

Sur. Co., 368 F. Supp. at 1104 ("We have made pragmatic judgments in ruling from time to time that dubious or suspect evidence should be taken from all sides, however skeptically, when the practical alternative was to have no evidence of any kind.").

Courts are inclined to permit testimony pursuant to rule 803(20), although indicia of bias limits its probative value. See United States v. Belfast, 611 F.3d 783, 794 (11th Cir. 2010); Ute Indian Tribe v. State of Utah, 521 F. Supp. at 1075. In Ute Indian Tribe v. State of Utah, which involved a dispute about reservation boundaries, Judge Jenkins concluded that "reputation in a non-Indian community as to Indian boundaries, rights, etc., is indeed a treacherous ground for decision," because reputation evidence admitted pursuant to rule 803(20) is reliable only when it is of general interest, and the American Indian boundaries in that case were not of general interest before the dispute arose. 521 F. Supp. at 1149 ("While, as counsel for the counties points out, [boundary] reputation evidence is generally admissible in federal court under Rule 803(20), its reliability in these specific circumstances is suspect."). In United States v. Belfast, the United States Court of Appeals for the Eleventh Circuit affirmed a conviction for torture offenses committed in Liberia while the defendant's father was Liberia's President. See 611 F.3d at 783. The United States Court of Appeals for the Eleventh Circuit held that the district court did not abuse its discretion in admitting testimony by a Liberia Desk Officer at the United States Department of State when the testimony was limited to Liberian political party descriptions. See 611 F.3d at 821. The "testimony concerned nothing more than historical background about Liberia and its political structure, as necessary to educate the jury," and thus satisfied rule 803(20). 611 F.3d at 821.

### 4. __Rule 803(21).__

Hearsay statements are admissible under 803(21) when such statements concern "reputation among a person's associates or in the community concerning the person's character."[4]

Fed. R. Evid. 803(21). According to the Advisory Committee's Note, rule 803(19)

> recognizes the traditional acceptance of reputation evidence as a means of proving human character. McCormick §§ 44, 158. The exception deals only with the hearsay aspect of this kind of evidence. Limitations upon admissibility based on other grounds will be found in Rules 404, relevancy of character evidence generally, and 608, character of witness. The exception is in effect a reiteration, in the context of hearsay, of Rule 405(a).

Fed. R. Evid. 803 advisory committee's note.

For a statement to qualify under the rule 803(20) hearsay exception, the offering witness must demonstrate that he or she "knows the person and is truly familiar with the 'community' in which the reputation has been formed, and that the basis of the reputation is one that is likely reliable." Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 101 (3d Cir. 1999). The character evidence hearsay exception for reputation as to character ensures that a hearsay objection will not bar reception of otherwise inadmissible, but sometimes desirable, evidence. See United States v. Penson, 896 F.2d 1087, 1092-93 (7th Cir. 1990)(concluding that a co-conspirator's testimony that "he knew of a man named Keith who in turn had a customer named Gene 'who had a truck driver [defendant] that had provided him with this exact service'" was admissible to show defendant's reputation within the drug-trafficking community). Cf. United States v. Arroyo, 406 F.3d 881, 887-88 (7th Cir. 2005)(holding that informant's statement that defendant was believed to have

---

[4]Reputation evidence comes within the rule against hearsay, because it consists of a summary of views expressed outside the courtroom that is offered to prove the truth of the matter asserted. See Michelson v. United States, 335 U.S. 469, 477 (1948)(concluding that, when the defendant elects to initiate a character inquiry, not only is the defendant permitted to call witnesses to testify from hearsay, but such witnesses are not allowed to base their testimony on anything but hearsay).

"ripped" two kilos of cocaine during a drug sale was not admissible under rule 803(21), because statement was not related to "reputation of [defendant's] character among associates or in the community," but to a rumor about a specific prior act and others' intentions to harm informant); Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1266 (10th Cir. 2005)(holding that hearsay testimony, that defendant's office was known as "the lesbian factory," was not admissible under rule 803(21), because testimony concerned neither a person nor her character).

   5. **Rule 807.**

   Rule 807, the Residual Exception to the rule against hearsay, provides that,

> [u]nder the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807. Furthermore, this rule requires that "the statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b).[5] The United States Court of Appeals for the First Circuit has summarized the policies that the residual hearsay exception serves:

   1. To provide sufficient flexibility to permit the courts to deal with new and unanticipated situations.

   2. To preserve the integrity of the specifically enumerated exceptions.

   3. To facilitate the basic purpose of the Federal Rules of Evidence: truth ascertainment and fair adjudication of controversies.

---

[5]Rule 807 was added to the Federal Rules of Evidence in 1997, and represents a combination of the virtually identical former rules 803(24) and 804(b)(5). Weinstein's Federal Evidence, supra, § 807.02 at 807-4 (citing Advisory Committee Note to Rule 807).

United States v. Sposito, 106 F.3d 1042, 1048 (1st Cir. 1997)(citing 11 Moore's Federal Practice § 803(24)[7] (2d ed. 1994 & Supp.1996-97)).  These purposes are consistent with the suggestions of many of the leading evidence scholars over the past century and further rule 807's objective to make relevant evidence admissible.  See United States v. Moore, 824 F.3d 620, 624 (7th Cir. 2016)("The purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence.").

Given that rule 807 authorizes hearsay admission not within the precise confines of a recognized exception, the courts interpret the residual exception to admit hearsay evidence of high probative value in individual situations, but not to create new exceptions.  See United States v. Doe, 860 F.2d 488, 491 (1st Cir. 1988)(concluding that the residual exception criteria "involve considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve 'the interests of justice'")(quoting Fed. R. Evid. 803(24))).  But cf. Garner v. United States, 439 U.S. 936, 940 n.3, (1978)(Stewart, J., dissenting)("It seems to me open to serious doubt whether [the residual exception] was intended to provide case-by-case hearsay exceptions, or rather only to permit expansion of the hearsay exceptions by categories.").  The residual hearsay exception is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b).'" Conoco Inc., v. Dep't of Energy, 99 F.3d at 392 (quoting S. Rep. No. 94-199, at 20 (1975)).  See United States v. Trujillo, 136 F.3d 1388, 1395-96 (10th Cir. 1998)(stating that, because residual hearsay exceptions are intended for "exceptional circumstances," offerors of such evidence bear a "heavy burden" of presenting the trial court with sufficient indicia of trustworthiness).  Hence,

evidence admitted pursuant to rule 807 must have "circumstantial guarantees of trustworthiness" comparable to those of the enumerated rule 803 exceptions.[6] United States v. Harrison, 296 F.3d 994, 1004-07 (10th Cir. 2002)(holding that child sexual abuse victim's statement to Federal Bureau of Investigation ("FBI") agent had circumstantial guarantees of trustworthiness, even though victim recanted her statement, because the statement was consistent with her earlier statements and was specific, and victim was old enough to have the ability to remember the events). See United States v. Trujillo, 136 F.3d at 1395-96; United States v. Tome, 61 F.3d 1446, 1453 (10th

---

[6]Categories of information addressed in the rule 803's specific hearsay exceptions "have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information" despite its hearsay character. United States v. Fernandez, 892 F.2d 976, 981 (11th Cir. 1989). Moreover, several federal Courts of Appeals have concluded that guarantees of trustworthiness must be equivalent to statements made subject to cross-examination, statements made under a belief of impending death, statements against interest, and statements of personal or family history. See United States v. Banks, 514 F.3d 769, 777-78 (8th Cir. 2008)(observing that one way to approach rule 807 analysis is to compare circumstances of statement at issue to "the closest hearsay exception"); United States v. Fernandez, 892 F.2d at 981 (considering "those statements that are similar though not identical to hearsay clearly falling under one of the four codified exceptions, if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions"). The trial judge's discretion in this regard is broad. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993)(concluding that the residual exception applies only in rare cases and that a trial court's decision not to apply it can be reversed only for abuse of discretion); United States v. Mokol, 939 F.2d 436, 438 (7th Cir. 1991)(concluding that the judge has significant discretion in ruling upon admissibility); SEC v. First City Fin. Corp., 890 F.2d 1215, 1225 (D.C. Cir. 1989)(stating that particular deference should be given to trial court's determination, because the exception depends so heavily on judgment of reliability). Notably, the United States Court of Appeals for the Second Circuit considers the trustworthiness of hearsay offered under the residual hearsay exception in terms of the extent to which the statement is prone to the four classic hearsay risks of (i) insincerity, (ii) faulty perception, (iii) faulty memory, and (iv) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered. See Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 232-33 (2d Cir. 1999)(identifying additional class of risk of methodological error for survey evidence); Headley v. Tilghman, 53 F.3d 472, 477 (2d Cir. 1995)(referring to classic hearsay "risks of insincerity, distorted perception, imperfect memory, and ambiguity of utterance").

Cir. 1995)(concluding that child's statement to caseworker identifying abuser, made a year after attack, lacked guarantees of trustworthiness); United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993). In United States v. Farley, for example, the Tenth Circuit admitted, pursuant to rule 807, a child sexual abuse victim's assault account, as given to victim's mother, even though some statements were made the morning after the assault, because the victim was still suffering pain and distress from the assault, the victim employed childish terminology, and the victim's youth reduced the likelihood that the statements were fabricated. See 992 F.2d at 1126.

In determining the trustworthiness of hearsay offered under the residual exception, the Tenth Circuit considers factors such as: (i) the statement's character; (ii) whether the statement is written or oral; (iii) the parties' relationship; (iv) the declarant's probable motivation in making the statement; and (v) the circumstances under which the statement is made. See United States v. Lawrence, 405 F.3d 888, 902 (10th Cir. 2005)(concluding that statements made to FBI agents by physician at defendant's clinic, including that he did not believe he was legally required to be at the clinic to supervise medical work, were not admissible under rule 807, in defendant's Medicare fraud trial, because statements had no circumstantial guarantees of trustworthiness, statements were taken shortly after FBI executed search warrant on clinic, and physician was the subject of the same investigation that eventually led to charges against defendant); Fed. Trade Comm'n v. Kuykendall, 312 F.3d 1329, 1343 (10th Cir. 2002)(concluding that consumer declarations and complaints had sufficient circumstantial guarantees of trustworthiness to warrant admission under rule 807 in a civil contempt proceeding arising from the defendants' violation of a permanent injunction, because they were made under oath and subject to penalty of perjury). For admissibility under rule 807, a statement must be "more probative on the point for which it is offered than any

other evidence that the proponent can obtain through reasonable efforts."[7] Fed. Trade Comm'n v. Kuykendall, 312 F.3d at 1343 (concluding that consumer declarations and complaints were trustworthy and most probative evidence available, and therefore admissible under rule 807, provided defendants had adequate notice); United States v. Zamora, 784 F.2d 1025, 1031 (10th Cir. 1986)(concluding that hearsay statements were properly excluded in absence of showing of statement's probative value or any effort to obtain information from other sources). The Tenth Circuit considers a statement "more probative" if the district court determines that the hearsay is relevant and reliable, and that no other evidence, or little other evidence, is available on the same point. See Marsee v. U.S. Tobacco Co., 866 F.2d 319, 324-25 (10th Cir. 1989)(concluding that reports were not admissible, because much of their contents were already admitted through expert testimony).

Rule 807 requires the district court to consider the availability of other admissible evidence through reasonable efforts, which depend on matters such as the importance of the evidence and the proponent's ability to provide it. See Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 391-92 (5th Cir. 1989)(concluding that answers to interrogatories were admissible pursuant to rule 807, because relevant records were lost or destroyed, trial was held several years after violations took place, and witnesses were illiterate); United States v. Shaw, 824 F.2d 601, 610 (8th Cir. 1987)(stating that exceptional circumstances generally exist when child relates abuse details to adult). Courts must consider the need for the evidence in light of the basic assumption underlying the rule against hearsay -- that statements made directly in the courtroom are more

---

[7]The "more probative" requirement, however, is not interpreted "with cast-iron rigidity." United States v. Harrison, 296 F.3d at 1006-07 (concluding that district court could properly rule that child sexual abuse victim's statement to FBI agent was most probative available evidence with respect to details not disclosed in other statements)(quoting Weinstein's Federal Evidence, supra, § 807.3[3][a], at 807-21)).

reliable than hearsay; in other words, courts must balance need against trustworthiness. See United States v. Harrison, 296 F.3d at 1004-07. Admission of evidence under the residual exception must accord with "the purposes of these rules and the interests of justice." See New England Mut. Life Ins. Co. v. Anderson, 888 F.2d 646, 650-51 (10th Cir. 1989)(concluding that district court properly excluded statements reported in newspaper article, because district court found no guarantees of trustworthiness and plaintiff failed to show that admission of the article without opportunity to cross-examine witness would serve interests of justice); Marsee v. U.S. Tobacco Co., 866 F.2d 319, 325 (10th Cir. 1989)(interests of justice did not require admission of reports at issue).

## LAW REGARDING AMERICAN INDIAN ORAL TRADITION EVIDENCE

American Indian oral tradition evidence "consist[s] of oral accounts handed down from father to son in continuity -- from generation to generation from time immemorial. Traditionally, this has been the principal tribal record of the history of all Indian tribes." Pueblo de Zia v. United States, 165 Ct. Cl. at 504. Because oral tradition evidence purports to prove historical events based on out-of-court statements offered for their truth, such evidence implicates reliability concerns attendant to hearsay and thus may be inadmissible in courts of law. See Sokaogon Chippewa Community v. Exxon Corp., 2 F.3d at 222 ("The oral tradition of a promised reservation is not *evidence,* that is, evidence admissible in a court of law." (emphasis in original)). Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(c), and is generally inadmissible as evidence "because it is considered unreliable," United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)(citing Williamson v. United States, 512 U.S. 594, 598 (1994)). See Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement."). Although the rule against hearsay is subject to numerous exceptions, see Fed. R.

Evid. 801-807, neither the Tenth Circuit nor any other Court of Appeals has permitted American Indian oral tradition evidence pursuant to any codified exception to the rule against hearsay.

American Indian oral tradition evidence is seen primarily in (i) land claims and (ii) funerary repatriation claims.[8] Land claims require Tribal claimants to show that they have occupied the land in question for a significant period, which claimants can often accomplish only through oral tradition evidence. See Sokaogon Chippewa Cmty. v. Exxon Corp., 2 F.3d at 222; Zuni Tribe of N.M. v. United States, 12 Cl. Ct. at 616; Confederated Tribes of the Warm Springs Reservation of Or. v. United States, 177 Ct. Cl. at 204; Pueblo de Zia v. United States, 165 Ct. Cl. at 505; Coos Bay Indian Tribe v. United States, 87 Ct. Cl. at 152-53; Assiniboine Indian Tribe v. United States, 77 Ct. Cl. 347, 368 (1933). Furthermore, Tribal claimants may use oral tradition evidence to repatriate sacred funerary objects or human remains pursuant to the Native Graves Protection and Repatriation Act of 1990, 25 U.S.C. §§ 3001-3005, ("NAGPRA"). Bonnichsen v. United States, 367 F.3d at 875. NAGPRA places oral tradition evidence on the same plane as documentary evidence by requiring the return of funerary objects upon a showing of cultural affiliation, by a preponderance of the evidence, based on "geographical, kinship, biological, archaeological, anthropological, linguistic, folkloric, oral traditional, historical, or other relevant information or

---

[8]Admission of oral tradition evidence is further seen in at least one case wherein Tribal claimants attempt to use such evidence to prove their status as an Indian Tribe before proceeding with a substantive claim. See Mashpee Tribe v. New Seabury Corp., 427 F. Supp. 899, 902-03 (D. Mass. 1977)(Skinner, J.)(discussing whether the Mashpee people were a "tribe" under the Indian Nonintercourse Act, 25 U.S.C. § 177). Moreover, the Honorable George H. Boldt, United States District Judge for the Western District of Washington, admitted and relied on undisputed oral traditional evidence regarding Tribal activities such as hunting and fishing, as well as the locations where those activities took place, to support his decision to uphold Tribal fishing rights under several treaties. See United States v. Washington, 384 F. Supp. 352, 379 (W.D. Wash. 1974)(Boldt, J.)("[O]ral testimony of Yakima tribal members educated in Yakima history and customs by tribal elders, was not controverted in the evidence and is found by the court to be reasonable and credible factual data regarding relevant aspects of Yakima Indian life at and prior to treaty time.").

expert opinion." 25 U.S.C. § 3005(a)(4). The statute makes oral tradition evidence part of the adjudicative process and expressly treats hearsay evidence as admissible by requiring that the decision maker must consider "oral tradition" in evaluating the strength of a claim of cultural affiliation. 25 U.S.C. § 3005(a)(4). See Deborah L. Threedy, Claiming the Shields: Law, Anthropology, and the Role of Storytelling in a NAGPRA Repatriation Case Study, 29. J. Land, Resources & Envt'l. L. 91, 109 (2009).

## 1. Admitted, Discredited Oral Tradition Evidence.

The American courts that have admitted or considered uncontroverted oral tradition evidence have historically discredited this evidence. See Bonnichsen v. United States, 367 F.3d at 881-82; Sokaogon Chippewa Cmty. v. Exxon Corp., 2 F.3d at 222; Coos Bay Indian Tribe v. United States, 87 Ct. Cl. at 152-53; Assiniboine Indian Tribe v. United States, 77 Ct. Cl. at 368. Several United States Court of Claims and United States Court of Appeals decisions address oral tradition evidence although such discussion is limited to passing mention in dicta. See Bonnichsen v. United States, 367 F.3d at 881-82; Sokaogon Chippewa Cmty. v. Exxon Corp., 2 F.3d at 222; Coos Bay Indian Tribe v. United States, 8 Ct. Cl. at 152-53; Assiniboine Indian Tribe v. United States, 77 Ct. Cl. at 368. What these cases share is the decision to give no weight to oral tradition evidence.

### a. United States Court of Claims Cases.

In Assiniboine Indian Tribe v. United States, Tribal claimants sought the right of occupancy to two tracts of land, one of which fell under the Fort Laramie Treaty of 1851. See 77 Ct. Cl. at 362-63.[9] The claimant American Indian Tribe was required to prove by a preponderance

_____

[9]The Fort Laramie Treaty of 1851 afforded protections and land to "the Sioux or Dahcotahs, Cheyennes, Arrapahoes, Crows, Assiniboines, Gros-Ventre Mandans, and Arrickaras." Treaty of Fort Laramie, Sept. 17, 1851, 11 Stat. 749.

of the evidence that it had occupied the land in question by "immemorial possession." 77 Ct. Cl. at 358. Although the Court of Claims was not explicit in the particulars of the evidence that the Tribe submitted, to include whether such evidence was controverted by formal objection, it stated that the "[p]laintiff . . . introduced the greater number of witnesses giving oral testimony." 77 Ct. Cl. at 366. The Court of Claims, however, refused to credit this evidence, stating that "much of the evidence . . . is from a source that lessens its weight[,]" 77 Ct. Cl. at 366, and emphasizing that the witnesses "were either . . . children at the time of the signing of the treaty or very old men at the time when they gave their testimony, and on account of age having at best a very incomplete recollection of matters that occurred fifty years prior thereto," 77 Ct. Cl. at 369. The Court of Claims concluded that "[t]he circumstances of the case make this testimony so unsatisfactory as to be unworthy of any credit." 77 Ct. Cl. at 369. In place of the oral tradition evidence, the Court of Claims favored the testimony of "Government agents," 77 Ct. Cl. at 369, asserting that the agents were less biased and had lived with the Tribe for a considerable period of time, thereby adding to their credibility, see 77 Ct. Cl. at 367. The agents alleged that the Tribe had migrated often during their history and that they had never excluded other Tribes from the land in question. See 77 Ct. Cl. at 360. The Court of Claims concluded that the Tribe did not occupy the land for the requisite period of time and thus denied its occupancy claim. See 77 Ct. Cl. at 368.

In Coos Bay Indian Tribe v. United States, the Coos Bay Indian Tribe resided on a reservation over which they did not have treaty rights. See 87 Ct. Cl. at 148. In 1855, the Superintendent of Indian Affairs in Oregon, authorized by an act of Congress, negotiated a treaty with the Tribe for the possession of the Tribe's land. See 87 Ct. Cl. at 150. The treaty was never ratified, and the Tribe therefore sought to prove its occupation of the land through oral tradition

evidence.  See 87 Ct. Cl. at 152.[10]  Similar to its decision in Assiniboine Indian Tribe v. United States, the Court of Claims in Coos Bay Indian Tribe v. United States did not describe the oral tradition evidence in its opinion, to include whether the evidence was controverted or introduced absent objection.  See 87 Ct. Cl. at 150-53.  Instead, the Court of Claims stated that "[i]f this testimony is to prevail in every way over documentary and historical evidence it is sufficient to observe that it does prove by hearsay that plaintiffs did occupy the lands claimed from time immemorial[,]" thereby suggesting that the Court of Claims may not have applied the rule against hearsay to oral tradition evidence as it did to most oral evidence.  87 Ct. Cl. at 152.  Nevertheless, the Court of Claims concluded that the oral testimony was insufficient on its own to carry the Tribal claimants' burden of proof.  See 87 Ct. Cl. at 152-53.  The Court of Claims emphasized that "at least seventeen of the twenty-one witnesses produced ha[d] a direct interest in the outcome of the case"; thus, according to the Court of Claims, the oral tradition evidence could not overcome the written evidence that the United States presented.  87 Ct. Cl. at 152.

### b. United States Court of Appeals Cases.

In Sokaogon Chippewa Community v. Exxon Corp., the United States Court of Appeals for the Seventh Circuit refused to admit oral tradition evidence because of concerns over oral tradition reliability.  2 F.3d at 222.  In Sokaogon Chippewa Community v. Exxon Corp, the Sokaogon Indians sought a declaration that the Tribe had the right to occupy a particular tract of land rich in mineral deposits.  See 2 F.3d at 220.  The issue before the Seventh Circuit was whether the Sokaogon had ceded its aboriginal right after negotiating a treaty during the 1800s.  See 2 F.3d at 221.  The Tribe primarily used oral tradition evidence to detail the United States' promise to

_____

[10]Notably, the Court of Claims did not specify the length of time required to prove occupation.  See 87 Ct. Cl. at 153.

include the land in question in a reservation for a discrete of Chippewa Indian band, the Post Lake band.  See 2 F.3d at 222.  The Honorable Richard A. Posner, Circuit Judge for the United States Court of Appeals for the Seventh Circuit, stated that "there is no documentation of this tradition, which is at best embroidered (too many ransoms, shipwrecks, lost and stolen maps, and deathbed revelations to be plausible) and at worst fictitious."  2 F.3d at 222.  Moreover, Judge Posner continues, "[n]o government document so much as hints at any such promise . . . and several government documents state that the Post Lake bands are not entitled to their own reservation."  2 F.3d at 222.  Judge Posner thus held that the Sokaogon had failed to state a claim sufficient to survive summary judgment.  See 2 F.3d at 224.  Judge Posner concluded that the oral tradition evidence was not admissible, because "no effort was made by the Sokaogon's counsel to cast it into a form in which it would be admissible in a court of law." 2 F.3d at 224-25.

In Bonnichsen v. United States, the United States Court of Appeals for the Ninth Circuit examined the use of oral tradition evidence within NAGPRA's context.  See 367 F.3d at 881-82.  The claim in Bonnichsen v. United States involved approximately 9,000-year-old human remains that were found in the State of Washington.  See 367 F.3d at 868.  Because of the remains' extreme age, archaeologists and other scientists desired to study the body.  See 367 F.3d at 868.  A coalition of Indian Tribes, however, sought to have the remains, known popularly as the "Kennewick Man," repatriated under NAGPRA.  367 F.3d at 869-70.  A Department of the Interior final decision awarded the remains to the American Indians, and, in Bonnichsen v. United States, a group of scientists sought judicial review of that decision.  See 367 F.3d at 875. In ruling for the scientists on appeal, the Ninth Circuit stated that,

> because the value of [oral tradition] accounts is limited by concerns of authenticity, reliability, and accuracy, and because the record as a whole does not show where historical fact ends and mythic tale begins, we do not think that the oral traditions . . . were adequate to show the required significant relationship of the

Kennewick Man's remains to the Tribal Claimants. . . . 8340 to 9200 years between the life of Kennewick Man and the present is too long a time to bridge merely with evidence of oral traditions.

367 F.3d at 875.[11]  Hence, Bonnichsen v. United States indicates that, although NAGPRA allows

courts to admit oral tradition evidence, it remains unclear whether courts will give weight to oral

tradition evidence without corroboration by other evidence.

---

[11]Legal academics and practitioners have criticized the Ninth Circuit's decision in Bonnichsen v. United States for its alleged bias against American Indian oral tradition evidence testimony.  One commentator, for example, called the Ninth Circuit's decision in the case "the most lethal attack on Native American identity in recent American jurisprudence."  Ashley Young, Continuing an American Legacy of Racial and Cultural Injustice: A Critical Look at Bonnichsen v. United States, 17 DePaul J. Art, Tech. & Intell. Prop. L. 1, 31 (2006).  Criticism alleges that the Ninth Circuit elevated western scientific methods over American Indian cultural traditions.  See Allison M. Dussias, Kennewick Man, Kinship and the "Dying Race": The Ninth Circuit's Assimilationist Assault on the Native American Graves Protection and Repatriation Act, 84 Neb. L. Rev. 55, 1160 (2005); S. Alan Ray, Native American Identity and the Challenge of Kennewick Man, 79 Temp. L. Rev. 89, 110 (2006); Young, supra, at 35 ("[T]he court's analysis clearly reinforced the long-standing norm of the dominant society that science trumps culture.").  The Ninth Circuit in Bonnichsen v. United States rejected the Secretary of Interior's reliance on oral tradition evidence, and noted that gaps in the empirical record precluded the Secretary's cultural affiliation finding between Kennewick Man and modern Tribes.  See Bonnichsen v. United States, 367 F.3d at 880-82.  Critics argue that the Ninth Circuit made this ruling even though the regulations implementing the NAGPRA specifically note that a finding of cultural affiliation is based on an "evaluation of the totality of the circumstances."  Taylor S. Fielding, supra, 2 Am. Ind. L. J. at 305 (citing 43 C.F.R. § 10.14(3)(d)).  According to Taylor Fielding, Tribal Prosecutor for the sovereign Kootenai Tribe of Idaho, those regulations dictate that a cultural affiliation finding "should not be precluded solely because of some gaps in the record" and that, thus, the Secretary validly relied on oral traditional evidence.  Fielding, supra, at 305.

Allison Dussias, Professor of Law at New England Law Boston, noted that, in Bonnichsen v. United States, American Indian "understandings of kinship, ancestry, and history were treated as uncivilized and unscientific, and therefore not entitled to respect from the dominant society and its judicial system."  Dussias, supra, at 110.  Congress anticipated that courts may be more inclined to accept scientific evidence over other forms of evidence, Professor Dussias argues, because, in prescribing a preponderance of the evidence standard, the NAGPRA's implementing regulations state that "[c]laimants do not have to establish cultural affiliation with scientific certainty."  Dussias, supra, at 110 (citing 43 C.F.R. § 10.14(3)(f)).  Mr. Fielding argues that the Ninth Circuit's rejection of American Indian oral tradition evidence in favor of scientific evidence thus conflicts with Congress' express directives to permit such evidence.  See Fielding, supra, at 306.

Dr. Alan Ray, President of Fisher College, writes that the problem with the Ninth Circuit's opinion in Bonnichsen v. United States is the Ninth Circuit's lack of a "conceptual scheme . . . to understand and take seriously the testimony of present-day members of tribal claimants."  Ray, supra, at 141.  Hence, Ray argues, the Ninth Circuit dismissed oral traditional evidence as

## 2. **Admitted, Credited Oral Tradition Evidence.**

In at least three cases brought before the Indian Claims Commission ("ICC"),[12] and a fourth arising by special jurisdictional act of Congress, the Court of Claims, and its successor court, the United States Claims Court, explicitly recognized and assigned evidentiary weight to oral tradition evidence. See Wally v. United States, 148 Ct. Cl. at 373-74; Confederated Tribes of the Warm Springs Reservation of Or. v. United States, 177 Ct. Cl. at 184; Pueblo de Zia v. United States, 165 Ct. Cl. at 505; Zuni Tribe of N.M. v. United States, 12 Cl. Ct. at 616 n.12.

---

unpersuasive, because this evidence failed to provide facts similar to modern historical studies. See Ray, supra, at 138-39. Professor Dussias asserts that the Ninth Circuit disregarded Congress' intent for NAGPRA and that, rather than discounting oral tradition evidence testimony, Congress viewed oral tradition as one of the "relevant types of evidence to be considered without indicating that it was to be given lesser weight than other forms of evidence." Dussias, supra, at 146 (citing 43 C.F.R. § 10.14(e)). See Young, supra, at 11 (suggesting that Congress' failure to prioritize evidence considered under NAGPRA indicates that courts must weigh oral tradition evidence equal to evidence admitted pursuant to conventional standards).

Moreover, the Ninth Circuit's decision in Bonnichsen v. United States is seen as contrary to prior federal court decisions to accept oral traditional evidence, to include Ninth Circuit decisions. See Fielding, supra, 306 (citing Brief for Haudenosaunee Standing Committee on Burial Rules and Regulations as Amicus Curiae Supporting Appellant-Intervenors, Bonnichsen v. United States, 367 F.3d 864 (9th Cir. 2003)(Nos. 02-35994 and 02-35996), 2003 WL 22593879 (noting testimony by tribal elders has been sanctioned for over 20 years). See also Cree v. Flores, 157 F.3d 762, 773-74 (9th Cir. 1998)(holding that the oral tradition evidence testimony of Tribal members educated in Tribal history and customs is reasonable and credible factual data regarding relevant aspects of Indian life). Congress made oral tradition evidence admissible for a narrow purpose -- American Indian human remains repatriation. Congress did not, however, dictate the weight to be given to that oral tradition. Congress also did not dictate a result. The Court is not in a position to criticize the Ninth Circuit's understanding of the evidence without taking on a review of the entire record before the Ninth Circuit, a task beyond this opinion's scope. What remains clear to the Court, however, is that, for NAGPRA claims, the courts must admit oral tradition evidence, and also that courts should not disregard the Congressional mandate to consider such evidence pursuant to NAGPRA. As with any other testimony, the Court cannot prejudge the ultimate result.

[12]The ICC, established pursuant to the Indian Claims Commission Act of 1946, 60 Stat. 1049, waived the United States' sovereign immunity and handled pre-1964 claims by Indian Tribes for uncompensated ceded lands, unfulfilled treaty rights and obligations, and other claims.

In Pueblo de Zia, the Tribal claimants appealed from an ICC decision which held that oral tradition evidence from various Tribal council members was insufficient to prove aboriginal title to land that the United States had taken.  See Pueblo de Zia, 165 Ct. Cl. at 503-04.  The testimony consisted of "oral accounts handed down from father to son . . . from time immemorial."  165 Ct. Cl. at 504.   The United States' brief stated that the evidence was "literally worthless."  165 Ct. Cl. at 505.  The Court of Claims, in contrast, emphasized that, because the United States did not proffer any evidence of its own, and because the oral tradition evidence was corroborated, the oral tradition evidence was therefore "entitled to *some* weight; it cannot be ignored or discarded." 165 Ct. Cl. at 505 (emphasis in original).  As support for this conclusion, the Court of Claims cited Rapid Transit Co. v. United States, 295 F. 2d 465, 466-67 (10th Cir. 1961), wherein the Tenth Circuit adopted the rule that the Supreme Court of Kansas enunciated in Gibbs v. Central Surety and Insurance Corporation, 181 P.2d 498, 499 (Kan. 1947), as follows:

> [W]here plaintiff produces two witnesses who testify on every material element of plaintiff's cause of action, and such testimony is not inherently improbable or uncandid, and the cross-examination does not develop any conflict, and the defendant produces no testimony in opposition, the trier of fact is not justified in arbitrary or capriciously disregarding such testimony.

Gibbs v. Central Surety and Ins. Corp., 181 P.2d at 499 (quoted by the Tenth Circuit in Rapid Transit Co. v. United States, 295 F.2d at 466-67).  Nevertheless, the Court of Claims qualified the use of the oral traditional evidence by suggesting that "corroboration of historical and archaeological evidence and testimony" may be necessary.  165 Ct. Cl. at 504.

In Confederated Tribes of the Warm Springs Reservation of Oregon v. United States, the Tribal claimants sought to prove aboriginal title to land ceded to the United States under the Treaty of June 25, 1855, 12 Stat. 963.  See Confederated Tribes of the Warm Springs Reservation of Or. v. United States, 177 Ct. Cl. at 184.  Although the Court of Claims followed the reasoning in Pueblo de Zia v. United States, by stating that oral tradition evidence "is entitled to some weight,

and is not to be deemed worthless, particularly when it is corroborated by documents and the testimony of others," the Court of Claims added that "[t]he importance of corroboration and cross-checking cannot be undervalued since informants can mislead researchers by describing some period (usually the reservation one) besides the aboriginal, pre-treaty period." Confederated Tribes of the Warm Springs Reservation of Or. v. United States, 177 Ct. Cl. at 204. Thus, although Pueblo de Zia v. United States and Confederated Tribes of the Warm Springs Reservation of Or. v. United States established that Tribal claimants could use oral traditional evidence in the Court of Claims, the requirement of corroboration by outside sources severely limits such use.

In Wally v. United States, the Court of Claims allowed testimony as to reputation about facts that Tribal witnesses did not know personally to show the extent of American Indian land boundaries:

> Community reputation about facts which are no longer available to individuals or susceptible of other proof has long been admissible to show the location of ancient boundaries. . . . The reason for this rule is not only caused by the perishable nature of boundary markers, but also because general reputation about facts of community interests are generally trustworthy. It is unlikely that a falsehood could become generally accepted in a community as the truth. The prolonged and constant exposure of these facts to observation and discussion by the community sifts out the possible errors and gives to the residual facts which are generally accepted by the locality a trustworthiness which allows these facts to be presented as evidence in a court of law.

148 Ct. Cl. at 373-74. The ICC thus permitted uncontroverted oral tradition evidence as testimony to prove the reputation of facts about past events that are known by the community as a whole, but are no longer available to individuals. See 148 Ct. Cl. at 373-74.

In Zuni Tribe of New Mexico v. United States, Tribal claimants sought compensation for the United States' alleged taking of tribal lands. See 12 Cl. Ct. at 607. The Claims Court admitted

large amounts of oral tradition evidence,[13] and the Tribal claimants ultimately succeeded in proving their claim to the lands in question. See 12 Cl. Ct. at 641. Notably, the Claims Court accepted the oral tradition evidence against the United States protestations:

> Defendant conjectures, but offers no evidence to contradict or impeach the Zuni recounting of their history. And, given the import attached to the oral transmission of history and religious observation by the Zuni, there is no reason to suspect gross or deliberate distortion. Accordingly, the court is persuaded that, notwithstanding some insufficiency, this recounted history is of evidentiary probity.

---

[13]Dr. Andrew Wiget, Professor of English at New Mexico State University and the anthropologist who worked with the Zuni during this case, suggests that the Claims Court was inclined to accept significant oral tradition evidence, in part, because of the elaborate process he used to gather and organize the Zuni's oral histories. See Andrew Wiget, Recovering the Remembered Past: Folklore and Oral History in the Zuni Trust Lands Damages Case, in Zuni and the Court: A Struggle for Sovereign Land Rights 173, 173-74 (E. Richard Hart ed., 1995). Professor Wiget presented the oral histories to the Claims Court through 1,300 deposition pages. Wiget, supra, at 173-74. This strategy likely had a greater impact than simply allowing witnesses to give unstructured monologues from the stand, because Professor Wiget presented the evidence in a format with which United States courts are familiar. See Glen Stohr, Comment, The Repercussions of Orality in Federal Indian Law, 31 Ariz. St. L. J. 679, 693-94 (1999).

Furthermore, Professor Wiget created a method to demonstrate to courts the "integrity" of oral tradition evidence. Wiget, supra, at 177. He used three criteria: validity, reliability, and consistency. See Wiget, supra, at 177. According to Professor Widget, "[v]alidity" depends on the relationship between the oral tradition and other documents and evidence; "reliability" depends on the ability of one individual to "tell the same story about the same events on different occasions"; and "consistency" depends on "the degree to which the form or content of one testimony conforms with other testimonies." Wiget, supra, at 177-79.

After acquiring the oral history depositions, Professor Wiget studied both the Zuni's repeated answers to his questions regarding land conditions relevant to the claim and the answers that disagreed with the majority of deponents. See Wiget, supra, at 176-81. Through this process, Wiget determined what most likely occurred based on what the depositions provided. Wiget, supra, at 176-81. Only after recording the depositions did Professor Wiget examine other evidence that supported the conclusions he derived from his informants' statements. Wiget, supra, at 185. Hence, the Claims Court ultimately found Professor Wiget's representations credible, because the oral histories supported and added detail to the available archaeological evidence. See Wiget, supra, at 185.

12 Cl. Ct. at 616 n.12. Nevertheless, the Claims Court did not describe the oral tradition evidence, provide any binding authority for other courts to follow, or explain why it was persuaded that the histories were "of evidentiary probity." 12 Cl. Ct. at 616 n.12.

## ANALYSIS

The Court will not admit out-of-court statements contained in American Indian oral tradition evidence when such statements are offered for the truth of the matter asserted, because the rule against hearsay prohibits such statements. See Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."). The Court may adopt oral tradition evidence for non-hearsay purposes, if Jemez Pueblo can establish a non-hearsay purpose, such as background, why Jemez people believe things, do things, draw or paint things. The Court also will admit hearsay statements in oral tradition evidence for the truth of the matter asserted pursuant to the hearsay exceptions enumerated in rule 803, provided such statements conform to the limited scope of each enumerated exception, as the Federal Rules of Evidence define the exception. See Fed. R. Evid. 803. The Court will not admit hearsay, however, in oral tradition evidence pursuant to rule 807, the residual exception to the rule against hearsay, because the Court concludes that oral tradition evidence is not sufficiently exceptional to warrant admission pursuant to this rule. See Conoco Inc. v. Dep't of Energy, 99 F.3d at 392 (concluding that the residual hearsay exception is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b)'" (quoting S. Rep. No. 94-199, at 20 (1975))).

# I. THE COURT WILL NOT ADMIT GENERAL, LAY WITNESS ORAL TRADITION EVIDENCE OFFERED TO PROVE THE TRUTH OF THE MATTER ASSERTED, BECAUSE SUCH EVIDENCE IS HEARSAY.

The Court will not admit general, out-of-court statements in American Indian oral traditional evidence when such statements are offered for the truth of the matter asserted, because such statements are hearsay. See Fed. R. Evid. 801 ("'Hearsay' means a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement."). Oral tradition evidence is thus inadmissible pursuant to the rule against hearsay. See Fed. R. Evid. 802.

Jemez Pueblo asserts that oral tradition lay witness testimony is admissible, that courts "have essentially ignored any application of the hearsay rule in their fact-finding," Oral Evidence Memo. at 2-4, and that, by implication, the Court should ignore the hearsay rule's application to oral tradition evidence in this case, see Oral Evidence Memo. at 1. The Court, however, is not persuaded to disregard the rule against hearsay based on the cases that Jemez Pueblo references, because in those cases the oral tradition evidence either was uncontroverted or was admitted pursuant to a federal statute. Jemez Pueblo argues, for example, that, "[i]n a recent case from the Tenth Circuit, *Comanche Nation v. United States*, the United States District Court for Western Oklahoma relied upon lay witness testimony, at times without the specific need for corroborating evidence, to establish Medicine Bluffs as a sacred site for the Comanche Nation."[14] The Court concludes, however, that, by admitting and considering oral tradition evidence in Comanche Nation v. United States, the Honorable Timothy D. DeGiusti, United States District Judge for the

_____

[14]The Court notes that, although Comanche Nation v. United States was decided within the Tenth Circuit, the Court is not bound by the Honorable Timothy D. DeGiusti, United States District Judge for the Western District of Oklahoma. The Court, however, will consider out-of-district cases for their persuasive value.

Western District of Oklahoma, was acting in accordance with the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb, ("RFRA") and National Historic Preservation Act of 1966, 16 U.S.C. § 470, ("NHPA") both of which, the Court concludes, compelled Judge DeGiusti to consider such evidence. See Comanche Nation v. United States, 2008 WL 4426621, at *1 ("Plaintiffs assert two claims for relief: 1) a violation of the Religious Freedom and Restoration Act ('RFRA') . . . and 2) a violation of the National Historic Preservation Act of 1966 ('NHPA')."). Judge DeGiusti notes that, pursuant to RFRA, "the government 'shall not substantially burden a person's exercise of religion.' Comanche Nation v. United States, 2008 WL 4426621, at *2 (quoting 42 U.S.C. § 2000bb-1(a)). Judge DeGiusti adds that "[t]he exercise of Native American traditional religious practices has been recognized as constituting an 'exercise of religion' for purposes of RFRA." Comanche Nation v. United States, 2008 WL 4426621, at *3 (citing United States v. Friday, 525 F.3d 938, 946-47 (10th Cir. 2008)). Thus, pursuant to RFRA, Judge DeGiusti admitted oral tradition evidence that detailed the historic and present-day religious use of the land in question. See Comanche Nation v. United States, 2008 WL 4426621, at *7 ("[T]he testimony during the hearing made clear that the area of the Medicine Bluffs Historic Feature . . . is considered sacred by the Comanche people and continues to be used for traditional religious purposes."). Regarding the Tribes NHPA claim, Judge DeGiusti notes that

> [s]ection 106 of the NHPA requires a government agency to "take into account the effect of [any] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." 16 U.S.C. § 470f. This requirement is governed by numerous federal regulations which establish a procedure generally referred to as the Section 106 process. See 36 C.F.R. § 800 et seq. "The process is designed to foster communication and consultation between agency officials . . . and other interested parties such as Indian tribes . . . . The agency is required to make a "reasonable and good faith effort to identify historic properties that may be affected by the undertaking." 36 C.F.R. § 800.4(b).

<u>Comanche Nation v. United States</u>, 2008 WL 4426621, at *4.  Judge DeGuisti further describes the "reasonable and good faith effort" requirement:

> The agency's obligation to make a reasonable and good faith effort may include "background research, consultation, <u>oral history interviews</u>, sample field investigation, and field survey." § 800.4(b)(1). The agency must "take into account" "the nature and extent of potential effects on historic properties, and the likely nature and location of historic properties within the area of potential effects." <u>Id.</u>

<u>Comanche Nation v. United States</u>, 2008 WL 4426621, at *4-5 (emphasis added).  Hence, Judge DeGuisti, to understand the religion suffering discrimination and the religious significance of the site, had to have some understanding of the religion.  He did not have to take the religious beliefs as truth, but simply that they existed.  He thus took them, largely, for non-hearsay purposes. Pursuant to NHPA, it may be necessary to admit and weigh oral tradition evidence, to understand the religion -- not to decide whether the religious beliefs are true.  <u>See</u> <u>Comanche Nation v. United States</u>, 2008 WL 4426621, at *5.  It remains unclear whether Judge DeGiusti would have admitted oral tradition evidence in the absence of RFRA and NHPA.  No such statute, however, requires that the Court admit and consider such evidence in this case.  The Court thus declines to disregard the rule against hearsay, but will permit Jemez Pueblo to fit its hearsay into a hearsay exception or offer the oral tradition testimony for a non-hearsay purpose.  <u>See</u> Fed. R. Evid. 802.

Jemez Pueblo cites to Chief Judge Fox's opinion in <u>United States v. Michigan</u> and Judge Boldt's opinion in <u>United States v. Washington</u> as support for its assertion that "[c]ourts have also admitted and relied upon oral traditional evidence from tribal members who gained their knowledge from being tribal elders."  Oral Evidence Memo. at 3-4.  Although the Court generally agrees with this statement, the Court notes that the courts in both cases admitted uncontroverted oral tradition evidence to assist in the courts' interpretation of treaty rights, pursuant to the canons

of construction attendant to treaty interpretation.[15]  United States v. Michigan concerned a United

States' action on behalf of several Indian Tribes to protect aboriginal fishing rights in the Great

Lakes.  See United States v. Michigan, 471 F. Supp. at 203.  The State of Michigan never asserted

that the Tribe lacked aboriginal title to the waters but rather that the Tribe had ceded their

aboriginal fishing rights in two nineteenth century treaties with the United States, and that Tribal

members were thus subject to State of Michigan fishing laws and regulations.  See 471 F. Supp. at

203.  Although Chief Judge Fox stated that, "[t]he oral testimony of the tribal witnesses educated

---

[15]The Supreme Court has developed canons of construction to assist lower courts in interpreting American Indian treaties; for example, in Choctaw Nation of Indians v. United States, 318 U.S. 423 (1943), the Supreme Court stated:

> Of course, treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties. Especially is this true in interpreting treaties and agreements with the Indians; they are to be construed, so far as possible, in the sense in which the Indians understood them, and in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people.

Choctaw Nation of Indians v. United States, 318 U.S. at 431-32 (internal quotation marks and citations omitted).  See Cty. of Oneida v. Oneida Indian Nation, 470 U.S. at 247 ("The canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians.  Thus, it is well established that treaties should be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." (internal quotations and citations omitted)).  The Supreme Court affirmed these canons in Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172 (1999), wherein the Supreme Court held that, when construing Indian treaties, a court should

> look beyond the written words to the larger context that frames the Treaty, including the history of the treaty, the negotiations, and the practical construction adopted by the parties. In this case, an examination of the historical record provides insight into how the parties to the Treaty understood the terms of the agreement. This insight is especially helpful to the extent that it sheds light on how the [Tribal] signatories to the Treaty understood the agreement because we interpret Indian treaties to give effect to the terms as the Indians themselves would have understood them.

526 U.S. at 196 (internal quotation marks and citations omitted).

in the history and customs of their people by tribal elders is found to be reasonable and credible factual data regarding certain relevant aspects of Indian life at and after treaty times," nothing in Chief Judge Fox's eighty-four-page opinion indicates that the State of Michigan objected to the court hearing such evidence.  See 471 F. Supp. at 219.  Given Chief Judge Fox's thorough and exhaustive treatment of the claims at issue in United States v. Michigan, the Court thinks it unlikely that Chief Judge Fox would neglect to mention such an objection.  Moreover, the above reference to oral tradition evidence is the single reference to oral tradition evidence in Chief Judge Fox's eighty-four-page opinion.  It is thus unclear to what extent, if any, Chief Judge Fox relied on such evidence.  Chief Judge Fox makes several dozen references, however, to expert testimony and documentary evidence to support his finding that the Tribes had used the waters in question for hundreds of years.  See 471 F. Supp. at 256 ("In order to reach a conclusion that the Indians were not dependent upon this valuable fishery resource, the court would have to ignore hundreds of years of recorded testimony.").

Furthermore, United States v. Michigan involves treaty interpretation, and Chief Judge Fox' factual findings and legal conclusions rely extensively on the canons of construction applicable to treaties with American Indian nations, namely that "treaties with Indians must be interpreted as the Indians would have understood them."  471 F. Supp. at 253 (citing Worcester v. Georgia, 31 U.S. 515, 581 (1832)(McLean, J., concurring)).  With this canon in mind, Chief Judge Fox states:

> Because of the documented evidence demonstrating that the Indians were absolutely dependent upon fishing for subsistence and their livelihood, and reading the treaty as the Indians must have understood it, they would not have relinquished their right to fish in the ceded waters of the Great Lakes.  Since the treaty does not contain language granting away the prior right to fish, that right remains with the Indians and was confirmed by the 1836 treaty.

United States v. Michigan, 471 F. Supp. at 253. Chief Judge Fox adds that "the courts have prescribed that treaties should be construed liberally in favor of the Indians." 471 F. Supp. at 251 (citing Choctaw Nation of Indians v. United States, 318 U.S. at 431-32). No such treaty is at issue in this case, and thus no canon of treaty construction could compel the Court to consider oral tradition evidence otherwise offensive to the rule against hearsay.

Further statements indicate that Chief Judge Fox was inclined to rule in favor of the Tribes absent oral tradition evidence. Chief Judge Fox expressed, for example, significant animus towards one of the treaties at issue: "[T]his court, would, on the record before it, identify this as an invalid treaty because it was the product of fraud, duress, conflicts of interest, coercion, and was very likely produced by the alcohol of liquor peddlers who sought to keep the Indians from knowing what they were doing." 471 F. Supp. at 258. Such animus indicates that Chief Judge Fox was inclined to rule in the American Indians' favor based on documentary evidence and not on oral tradition evidence alone. Chief Judge Fox ultimately concluded that neither of the two nineteenth-century treaties at issue ceded the Tribes' water rights, and, moreover, that United States' approval of the Tribal constitutions and subsequent Tribal fishing regulations preempt state authority to regulate the Tribal members' fishing activity. See United States v. Michigan, 471 F. Supp. at 272 ("The [fishing] right is presently exercised by the plaintiff tribes under extensive tribal regulation which preempts state regulation."). In the "Epilogue" to his opinion, Chief Judge Fox writes:

> No man can profess to adhere to the greatest of all commandments -- Love thy neighbor -- if he should visit violence upon fellow men who would exercise centuries-old fishing rights which have been recently confirmed, little more than 150 years ago, and again 130 years ago, by most solemn promise of our nation.

United States v. Michigan, 471 F. Supp. at 277. The Court cannot disregard that, in this case, there is no such "solemn promise" that could compel the Court to consider hearsay in oral tradition

evidence.  Hence, because the opinion in <u>United States v. Michigan</u> indicates that the oral tradition evidence was uncontroverted, because Chief Judge Fox does not discuss whether he relied on such evidence, and because the matter before Chief Judge Fox involved two treaties with the United States and attendant canons of treaty construction, the Court is not persuaded that <u>United States v. Michigan</u> stands for the proposition that hearsay within oral tradition evidence is generally admissible.

The Court is equally unpersuaded that <u>United States v. Washington</u>, which also involved uncontroverted oral tradition evidence, mandates that the Court should admit hearsay in oral tradition evidence for the truth of the matters asserted.  <u>See</u> 384 F. Supp. at 379 ("[O]ral testimony of Yakima tribal members educated in Yakima history and customs by tribal elders, was not controverted in the evidence.").  The uncontroverted oral tradition testimony involved both historic and present-day fishing practices as well as descriptions of the fisheries themselves, both of which documentary evidence heavily supplemented.  <u>See</u> 384 F. Supp. at 353.  Ultimately, however, and similar to Chief Judge Fox in <u>United States v. Michigan</u>, Judge Boldt relied on the treaty itself in ruling in the American Indians' favor:

> An exclusive right of fishing was reserved by the tribes within the area and boundary waters of their reservations, wherein tribal members might make their homes if they chose to do so.  The tribes also reserved the right to off reservation fishing "at all usual and accustomed grounds and stations" and agreed that "all citizens of the territory" might fish at the same places "in common with" tribal members.

<u>United States v. Washington</u>, 384 F. Supp. at 332 (quoting Treaty of Medicine Creek, Dec. 26, 1854, 10 Stat. 1132).  Moreover, in making this statement, Judge Boldt notes that "[t]his proposition is not denied or challenged by any party in this case." 384 F. Supp. at 332 n.12.  Hence, for reasons similar to the Court's analysis of <u>United States v. Michigan</u>, <u>United States v. Washington</u> further fails to provide the Court with a workable reference model for oral tradition

evidence admission with respect to the rule against hearsay. The Court thus concludes that neither United States v. Michigan nor United States v. Washington offer persuasive value helpful to the Court's consideration whether to admit hearsay in oral tradition evidence.

Jemez Pueblo also cites to several Court of Claims and Claims Court[16] opinions to support its proposition that, "[m]ost frequently, courts admit oral traditional evidence by lay witnesses and consider that testimony in the context of all other evidence." Oral Evidence Memo. at 4. For example, Jemez Pueblo asserts that "[a] helpful example of a court's admitting oral traditional evidence is found in *Zuni Tribe of New Mexico v. United States*." Oral Evidence Memo. at 4. The Court agrees with Jemez Pueblo that the Claims Court in Zuni Tribe of New Mexico v. United States admitted oral tradition evidence that contradicted the United States' arguments. See Oral Evidence Memo. at 5 (quoting Zuni Tribe of N.M. v. United States, 12 Cl. Ct. at 616 n.12). Indeed, the Claims Court states that the "Defendant conjectures, but offers no evidence to contradict or impeach the Zuni recounting of their history." 12 Cl. Ct. at 616 n.12. The record does not indicate, however, that the United States formally objected to the oral tradition evidence. See Oral Evidence Memo. at 5 ("[O]bjections to oral traditional evidence do no make the evidence inadmissible." (citing Zuni Tribe of N.M. v. United States, 12 Cl. Ct. at 616 n.12)). Hence, it remains unclear whether the Claims Court would have admitted oral tradition evidence if the United States had

_____

[16]"[I]n the Federal Courts Improvement Act of 1982, Congress established the United States Claims Court to replace the old Court of Claims, pursuant to its Article I powers. . . . Claims Court judges, unlike the life-tenured Article III judges who sit in district courts, serve for limited terms of 15 years." Bowen v. Massachusetts, 487 U.S. 879, 908 n.46 (1988)(citing 28 U.S.C. §§ 171-72). In 1992, the United States Claims Court name was changed to the United States Court of Federal Claims. See U.S. Court of Federal Claims: The People's Court, The Federal Lawyer, Oct. 2007, at 29. Court of Federal Claims appeals "are taken to the United States Court of Appeals for the Federal Circuit and a judgement there is conclusive unless reviewed by the Supreme Court on writ of certiorari. Decisions of the Court of Claims are binding precedent on both its appellate and trial court successors." U.S. Court of Federal Claims: The People's Court, supra, at 29.

raised an objection.[17]   Nevertheless, the Claims Court's failure to describe the oral tradition

evidence, to provide any binding authority for other courts to follow, or to explain why it was

persuaded that the histories were "of evidentiary probity," 12 Cl. Ct. at 616 n.12, leads the Court

to conclude that Zuni Tribe of New Mexico v. United States provides no guidance sufficient to

persuade the Court to admit oral tradition evidence otherwise subject to the rule against hearsay.

Jemez Pueblo cites to Pueblo de Zia v. United States, a case that originated in the ICC, as

further support for its assertion that the Court should ignore the hearsay rule's application to oral

tradition evidence in the Court's fact-finding.  See Oral Evidence Memo. at 5.  Although the Court

agrees with Jemez Pueblo that the Court of Claims in Pueblo de Zia v. United States admitted

uncontroverted oral tradition evidence "verified by documentary evidence" and gave such

evidence "some weight," 165 Ct. Cl. at 504-05, the Court is disinclined to give any weight to the

rationale underlying the Court of Claims cases that originated in the ICC, because of the unique

factual circumstances surrounding those cases,[18] and, particular to Pueblo de Zia v. United States,

---

[17]Moreover, although the Claims Court in Zuni Tribe of New Mexico v. United States accepted over 1,000 pages of depositions of anecdotal oral tradition evidence, the record fails to indicate whether the Claims Court accepted such evidence based on Dr. Wiget's three-pronged test and subsequent supplementation with corroborating evidence, discussed supra note 13, or whether the content standing alone was sufficiently credible.

[18]In its Memorandum Opinion and Order, No. CIV 12-0800, 2018 WL 5298746, filed October 25, 2018 (Doc. 317)("MOO") , the Court agreed with Jemez Pueblo's assertion that the ICC and Court of Claims cases where both parties stipulated to the United States' taking of aboriginal title should not provide sufficient precedential value to control the Court in this case, but that the Tenth Circuit had -- on some discrete legal issues, indicated that it agreed with the Court of Claims analysis.  See MOO at 119 n.39, 2018 WL 5298746 at *49 n.39 (citing Plaintiff's Motion in Limine to Exclude Certain Evidence, filed August 17, 2018 (Doc. 236)("MIL 1")). The Court maintains its skepticism of these cases, not only because the Court of Claims' opinions do not bind the Tenth Circuit and, without the Tenth Circuit's directive, this Court, but also because, at most, they are merely persuasive authority and, on a clean slate, they are not very persuasive; the issue whether a taking occurred was neither contested nor adjudicated.  The Court further agrees with Jemez Pueblo that the attorneys before the ICC had no incentive to litigate whether a taking occurred, and a stipulation to that effect "suit[ed] their mutual objectives -- resolution of the claim for the lawyers for the United States, and payment of fees to counsel for the plaintiff

the Court of Claims' failure to describe further the admitted, uncontroverted oral tradition evidence.

Earlier Court of Claims opinions that discuss oral tradition evidence suffer from the same defects as the cases described above, namely a failure of the Court of Claims to discuss whether the evidence is admissible over a hearsay objection and controverted, and to describe the nature of the oral tradition evidence in any meaningful detail. For example, although the Court of Claims in Assiniboine Indian Tribe v. United States evidently considered oral tradition evidence, the Court of Claims was hesitant to credit this evidence, stating that "much of the evidence . . . is from a source that lessens its weight[,]" 77 Ct. Cl. at 366, and emphasizing that the witnesses "were either . . . children at the time of the signing of the treaty or very old men at the time when they gave their testimony, and on account of age having at best a very incomplete recollection of matters that occurred fifty years prior thereto," 77 Ct. Cl. at 369. The Court of Claims concluded that "[t]he circumstances of the case make this testimony so unsatisfactory as to be unworthy of any credit." 77 Ct. Cl. at 369. Such skepticism indicates that the evidence was freely introduced in the ordinary course of the proceedings, i.e., that the United States did not object to or controvert the evidence, and thus the admission issue never litigated. In place of oral tradition evidence, the Court of Claims favored the testimony of "Government agents," 77 Ct. Cl. at 369, asserting that the agents were less biased and had lived with the Tribe for a considerable time, thereby adding to the agents' credibility, see 77 Ct. Cl. at 367.

---

tribe." MIL 1 at 12. Adopting similar rationale, the Court concludes that the attorneys also lacked incentive to litigate admission of oral tradition evidence. While the Court must rely on the Court of Claims' cases that the Tenth Circuit found persuasive, the Tenth Circuit did not discuss or comment on the Court of Claims admission of evidence, and the Court concludes that the Tenth Circuit's approval of these Court of Claims cases does not include approval of everything that the Court of Claims did and the Tenth Circuit did not approve.

Similar to its decision in <u>Assiniboine Indian Tribe v. United States</u>, the Court of Claims in <u>Coos Bay Indian Tribe v. United States</u>, to which the United States directed the Court in this case, <u>see</u> Trial Tr. at 275:6-25 (Dykema), did not describe the oral tradition evidence in its opinion, <u>see</u> <u>Coos Bay Indian Tribe v. United States</u>, 87 Ct. Cl. at 150-53. Instead, the Court of Claims stated that, "[i]f this testimony is to prevail in every way over documentary and historical evidence[,] it is sufficient to observe that it does prove by hearsay that plaintiffs did occupy the lands claimed from time immemorial." 87 Ct. Cl. at 152. Although this conditional statement suggests that the Court of Claims may have thought that the rule against hearsay may not apply to oral tradition evidence as it does to most oral evidence, the Court of Claims nevertheless concluded that the oral tradition testimony was insufficient on its own to carry the Tribal claimants' burden of proof. <u>See</u> 87 Ct. Cl. at 152-53. The Court of Claims emphasized that "at least seventeen of the twenty-one witnesses produced ha[d] a direct interest in the outcome of the case"; thus, according to the Court of Claims, the oral tradition evidence could not overcome the United States' written evidence. 87 Ct. Cl. at 152. The Court shares the United States' concerns that oral testimony as to facts and traditions, by witnesses many of whom have a direct interest in the outcome of the case, is insufficient, per se, to establish aboriginal title to the Valles Caldera, because such testimony does not afford "a degree of proof sufficient to overcome contemporaneous documentary and historical evidence to the contrary." <u>Coos Bay Indian Tribe v. United States</u>, 87 Ct. Cl. at 153. <u>See</u> <u>Confederated Tribe of the Warm Springs Reservation v. United States</u>, 8 Ind. Cl. Comm. 557, 598 (1960)("[T]he most dependable accounts by Indians of their pre-reservation land-using entities and subsistence areas are those taken from Indians living as near the date in question as possible . . . the possibility of error increases in ratio to the number of intervening generations."). The Court thus concludes that the canon of Court of Claims and Claims Court cases that discuss

oral tradition evidence are of no persuasive value regarding whether the Court should admit such evidence in this case.

Without providing argument, Jemez Pueblo also cites to Bonnichsen v. United States as support that courts consider lay witness testimony in concert with other admitted evidence. See Oral Evidence Memo. at 6. The United States also directed the Court to Bonnichsen v. United States as a relevant authority for its position that the Court should not admit such evidence. See Trial Tr. at 275:6-25 (Dykema). The Court agrees with the United States that Bonnichsen v. United States is authority inapposite to Jemez Pueblos' assertions. The Ninth Circuit in Bonnichsen v. United States was compelled to consider oral tradition evidence pursuant to NAGPRA, see Bonnichsen v. United States, 367 F.3d at 875, a federal statute that places oral tradition evidence parallel to documentary evidence by requiring the return of funerary objects upon a showing of cultural affiliation based on "geographical, kinship, biological, archaeological, anthropological, linguistic, folkloric, oral traditional, historical, or other relevant information or expert opinion," see 25 U.S.C. § 3005(a)(4) (emphasis added). Congress thus expressly exempts from the rule against hearsay the oral tradition evidence that the Ninth Circuit considered. See Fed. R. Evid. 802.

Moreover, although the Ninth Circuit in Bonnichsen v. United States adhered to the Congressional mandate to consider oral tradition evidence when offered pursuant to NAGPRA, the Ninth Circuit noted that "oral histories change relatively quickly, that oral histories may be based on later observation of geological features and deduction (rather than on the first teller's witnessing ancient events)," i.e., that over generations oral tradition becomes increasingly inaccurate. 367 F.3d at 881. The Ninth Circuit ultimately discredited the Tribal claimants' oral tradition evidence, because

oral accounts have been inevitably changed in context of transmission, because the traditions include myths that cannot be considered as if factual histories, because the value of such accounts is limited by concerns of authenticity, reliability, and accuracy, and because the record as a whole does not show where historical fact ends and mythic tale begins.

367 F.3d at 882. The Court acknowledges that the oral tradition evidence in <u>Bonnichsen v. United States</u> attempted to bridge a time period from the present to approximately 9,000 years in the past; nevertheless, the Court shares the Ninth Circuit's general concerns regarding the reliability of such evidence when transmitted among multiple generations. <u>See</u> 367 F.3d at 882.

Such concern is evident in <u>Sokaogon Chippewa Community v. Exxon Corp.</u>, wherein the Seventh Circuit discredited the Sokaogon Indian Tribe's oral tradition evidence and thereafter held that the Tribe had failed to state a claim sufficient to survive summary judgment. <u>See</u> 2 F.3d at 224-225. The Tribe primarily used oral tradition evidence to detail the United States' promise to include the land at issue in a reservation for a discrete band of Chippewa Indian, the Post Lake band. <u>See</u> 2 F.3d at 222. Judge Posner, writing for a unanimous Seventh Circuit panel, stated that "the oral tradition of a promised reservation is not *evidence,* that is, evidence admissible in a court of law." 2 F.3d at 224 (emphasis in original). Judge Posner further noted that "there is no documentation of this tradition, which is at best embroidered (too many ransoms, shipwrecks, lost and stolen maps, and deathbed revelations to be plausible) and at worst fictitious." 2 F.3d at 222. Moreover, Judge Posner continues, "[n]o government document so much as hints at any such promise . . . and several government documents state that the Post Lake bands are not entitled to their own reservation." 2 F.3d at 222. Judge Posner considered such documents pursuant to the "ancient documents" hearsay exception, 2 F.3d at 225 (citing Fed. R. Evid. 803(16)), but concluded that the oral tradition evidence was inadmissible, because "no effort was made by the Sokaogon's counsel to cast it into a form in which it would be admissible in a court of law," 2 F.3d at 224-25.

Although Judge Posner declined to provide further rationale for the Seventh Circuit's decision to disallow the trier of fact's consideration of the oral tradition evidence in <u>Sokaogon Chippewa Community v. Exxon Corporation</u>, no further description is necessary, as the concerns attendant to the rule against hearsay are self-evident. The Court notes, however, that Judge Posner's comment regarding form indicates that oral tradition evidence is admissible under certain circumstances. The Court concludes that circumstances warranting admissibility exist only when oral tradition evidence is cast in accordance with one of the enumerated exceptions to the rule against hearsay.

## II. THE COURT WILL ADMIT HEARSAY IN ORAL TRADITION EVIDENCE PURSUANT ONLY TO APPLICABLE RULE 803 HEARSAY EXCEPTIONS.

The Court will admit hearsay statements in oral tradition evidence pursuant only to the hearsay exceptions that rule 803 enumerates, provided such statements conform to each enumerated exception's limited scope, as the Federal Rules of Evidence define the exception. <u>See</u> Fed. R. Evid. 803. Jemez Pueblo asserts, without providing further argument, that the Court should admit such evidence pursuant to rule 803(19), 803(20), and 803(21). Rule 803(19) provides that reputation evidence within hearsay is admissible to prove personal or family history. <u>See</u> Fed. R. Evid. 803(19). The Advisory Committee on Evidence Rules notes that this exception contemplates, as proper subjects of proof, marriage, legitimacy, relationship, adoption, birth, and death. <u>See</u> Fed. R. Evid. 803(19) advisory committee's note; <u>United States v. Jean-Baptiste</u>, 166 F.3d 102, 110 (2d Cir. 1999)("[Rule 803(19)] plainly contemplates that members of a family may testify with regard to the common understanding as to the birth of another family member."). The Advisory Committee further notes that "the 'world' in which the reputation may exist may be family, associates, or community." Fed. R. Evid. 803(19) advisory committee's note. The Court will thus admit hearsay in oral tradition evidence when such evidence concerns personal and

family history as the Advisory Committee contemplates. The Court has just not seen this reputation evidence in this case. This case does not involve reputation about birth. While the Court will keep an open mind, it is doubtful that rule 803(19) is available to get much, if any, oral tradition into the case.

Rule 803(20) codifies two related hearsay exceptions based on reputation within a community: first, property boundary locations; and, second, general history matters. See Fed. R. Evid. 803(20). As to the first, both United States and English courts historically have admitted hearsay evidence to prove ancient boundaries. See Boardman v. Reed & Ford's Lessees, 31 U.S. 328, 340 (1832)("That boundaries may be proved by hearsay testimony, is a rule well settled."); Nicholls v. Parker, 104 Eng. Rep. 629 (K.B. 1805). The Court will adhere to precedent and admit hearsay that speaks to historic property boundary locations, as evidenced by community reputation. To qualify for admission under the second prong, reputation concerning "general historical events," the offeree must show that the matter is one of general concern within the community, as such concern indicates that the evidence has passed through the crucible of community debate and emerged as generally accepted truth. See Fed. R. Evid. 803(20) advisory committee's note. The Advisory Committee further notes that this prong "is designed to facilitate proof of events when judicial notice is not available."[19] Fed. R. Evid. 803(20) advisory committee's note. The Court will thus admit oral tradition evidence when the Court is persuaded

---

[19]Federal Rule of Evidence 201(b) states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Moreover, rule 201(d) makes the rule mandatory when it applies: "A court shall take judicial notice if requested by a party and supplied with the necessary information." The Tenth Circuit reviews a district court's decision not to take judicial notice for abuse of discretion. See O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224 (10th Cir. 2007)(quoting Lozano v. Ashcroft, 258 F.3d 1160, 1164 (10th Cir. 2001)).

that such evidence consists of historical-event testimony that the Court concludes is of sufficient interest to the community. See Ute Indian Tribe v. Utah, 521 F. Supp. at 1149 (concluding that reputation in a non-Indian community as to American Indian boundaries is inadmissible under 803(20), because the subject matter was not one of general concern sufficient to warrant consideration within the community). Rule 803(20) is not a gate through which all American Indian oral tradition evidence may enter. First, the evidence must be about boundaries. American Indians do not always, if ever, talk about boundaries, so the fuzzy evidence about "perimeters" may not cut in. Second, the community in this case is probably no more than the Jemez Pueblo. While Jemez Pueblo is laboring hard to get in this hearsay, it is not worth much. It is little more than one Jemez Pueblo member after another stating the Jemez Pueblo's position. It would be more probative if it was the Zia Pueblo's, Santa Clara Pueblo's, or the Anglo community's reputation regarding Jemez Pueblo's boundaries, but just Jemez Pueblo stating what the reputation in Jemez Pueblo is regarding its boundaries, while admissible, is not worth much given Jemez Pueblo's interest in the outcome of this case.

While "general historical events" may get in some hearsay, it cannot get in much. It has to be a historical event, not legend or myth. If it involves gods or spirits, that is probably not a historical event. If it involves how Jemez Pueblo dealt with the Spanish, that probably qualifies. The Spanish wrote things down; the American Indians did not. The Court will allow Jemez Pueblo's reputation evidence on that event. But it also must be an "event." If it is just stories, legends, or myth, the Court will not admit it for the truth of the matter asserted.

Rule 803(21) excepts from the hearsay rule reputation concerning character similar to the evidence that rule 405(a) contemplates, see Fed. R. Evid. 803(19) advisory committee's note, which states that reputation testimony may prove a person's character or character trait when

character evidence is otherwise admissible, see Fed. R. Evid. 405(a). Notably, this exception does not contemplate instances of specific conduct, which 405(b) addresses and is relevant only when "character is, in the strict sense, in issue and hence deserving of a searching inquiry." Fed. R. Evid. 405 advisory committee's note. The Advisory Committee's Note to rule 405 describes character evidence "primarily in moral overtones of good and bad: chaste, peaceable, truthful, honest," as well as nonmoral considerations, such as "the case of the incompetent driver." Fed. R. Evid. 405 advisory committee's note. In summary, character as rule 405 contemplates, and, by extension, rule 803(21), "is defined as the kind of person one is." Fed. R. Evid. 405 advisory committee's note. Hence, the Court will admit oral tradition evidence containing reputation and opinion evidence that speaks to a given individual's general character, such as good or bad, or specific character trait, such as incompetence, provided that such evidence is not offered to prove that a person acted in accordance with that particular character or trait. See Fed. R. Evid. 404(a). Although character evidence is admissible when character is in issue in a civil case, [e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). Hence, in a case such as this, rule 803(21) is not available to Jemez Pueblo except on the issue of truthfulness, which is not an issue here. No one is really ripping witnesses in this case on credibility; much of this case involves honorable people and highly-qualified experts testifying the best they can. It is doubtful that rule 803(21) is going to be a conduit for any hearsay in this case.

III. **THE COURT WILL NOT ADMIT ORAL TRADITION EVIDENCE PURSUANT TO RULE 807, BECAUSE THE COURT IS NOT CONVINCED THAT THE CIRCUMSTANCES ARE SUFFICIENTLY EXTRAORDINARY.**

The Court will not admit hearsay contained in oral tradition evidence pursuant to rule 807, because the Court concludes that oral tradition evidence is not sufficiently extraordinary to warrant admission pursuant to this rule. See Conoco Inc., v. Dep't of Energy, 99 F.3d at 392 (concluding

that the residual hearsay exception is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b)'" (quoting S. Rep. No. 94-199, at 20 (1975))). Without providing argument, Jemez Pueblo asserts that rule 807, the residual exception to the rule against hearsay, encompasses American Indian oral tradition evidence. See Oral Evidence Memo. at 8.

The residual exception exists to admit hearsay evidence of high probative value in individual situations, but not to create new exceptions. See United States v. Doe, 860 F.2d 488, 491 (1st Cir. 1988)(concluding that the residual exception criteria "involve considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve 'the interests of justice'"). By asking the Court to admit hearsay in oral tradition evidence, Jemez Pueblo is, in effect, asking the Court to create a new exception to the rule against hearsay. The Court concludes that it lacks authority to fabricate out of whole cloth a blanket rule to cover all oral tradition evidence in this case.

Moreover, rule 807 is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b).'" Conoco Inc., v. Dep't of Energy, 99 F.3d at 392 (quoting S. Rep. No. 94-199, at 20 (1975)). See United States v. Trujillo, 136 F.3d 1388, 1395-96 (10th Cir. 1998)(stating that, because residual hearsay exceptions are intended for "exceptional circumstances," offerors of such evidence bear a "heavy burden" of presenting the trial court with sufficient indicia of trustworthiness). As discussed above, the Court will admit hearsay in oral tradition evidence, provided such evidence is admissible pursuant to rule 803. The

Court concludes, however, that this case's circumstances are not sufficiently exceptional to warrant admission pursuant to rule 807.

Within the Tenth Circuit, exceptional circumstances occur when hearsay evidence is relevant and reliable, and no other evidence, or little other evidence, is available on the same point. See Marsee v. United States Tobacco Co., 866 F.2d at 324-25 (concluding that reports were not admissible because much of their contents were already admitted through expert testimony). Rule 807 requires a district court to consider the availability of other admissible evidence through reasonable efforts, which depend on matters such as the evidence's importance and the proponent's ability to provide it. See United States v. Shaw, 824 F.2d 601, 610 (8th Cir. 1987)(stating that exceptional circumstances generally exist when children relate abuse details to adults); Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 391-92 (5th Cir. 1989)(concluding that answers to interrogatories were admissible pursuant to rule 807, because relevant records were lost or destroyed, trial was held several years after violations took place, and witnesses were illiterate). The most relevant oral tradition evidence in this case consists of testimony regarding Valles Caldera land use boundaries, which the Court concludes may be admissible, as reputation evidence, pursuant to rule 803(20). Furthermore, much of this oral tradition evidence is coterminous with expert opinion evidence, which is admissible pursuant to rule 702. See Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion."). The Court therefore considers the need for oral tradition evidence in light of the basic assumption underlying the rule against hearsay -- that statements made directly in the courtroom are more reliable than those made elsewhere -- and concludes that, on balance, such need is insufficient to compel admission pursuant to rule 807.

The Court need not and should not shoehorn to get the oral history evidence in. It is not worth much. It is often legend or myth that defies scientific proof, or it is self-serving testimony that does little more than state Jemez Pueblo's position. The Court knows Jemez Pueblo's position. The Court does not need rule 807 to get that position into the case.

**IT IS ORDERED** that the requests in the Plaintiff Pueblo of Jemez's Memorandum of Law: Native American Oral Traditional Evidence at 1, filed October 29, 2018 (Doc. 320), are granted in part and denied in part. The Court will admit hearsay in American Indian oral tradition evidence only pursuant to the applicable hearsay exceptions enumerated in Federal Rule of Evidence 803. The Court will not admit Native American oral tradition evidence pursuant to Federal Rule of Evidence 807.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Randolph H. Barnhouse
Kelli J. Keegan
Justin J. Solimon
Christina S. West
Veronique Richardson
Dianna Kicking Woman
Karl E. Johnson
Tierra Marks
Michelle T. Miano
Barnhouse Keegan Solimon & West LLP
Los Ranchos de Albuquerque, New Mexico

--and--

Thomas E. Luebben, Jr.
Law Offices of Thomas E. Luebben
Sandia Park, New Mexico

*Attorneys for the Plaintiff*

Jeffrey Wood
  Acting Assistant Attorney General
Peter K. Dykema
Matthew Marinelli
Jacqueline M. Leonard
Amarveer Brar
Kenneth Rooney
Kristofor R. Swanson
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Washington, D.C.

*Attorneys for the Defendant United States of America*

Kirk R. Allen
Elizabeth Reitzel
Miller Stratvert P.A.
Albuquerque, New Mexico

*Attorneys for the Intervenor Defendant*