# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF JEMEZ, a federally recognized
Indian Tribe,

       Plaintiff,

vs.                                                         No. CIV 12-0800 JB\JHR

UNITED STATES OF AMERICA,

       Defendant,

and

NEW MEXICO GAS COMPANY,

       Defendant-in-Intervention.

## **ORDER**[1]

**THIS MATTER** comes before the Court on: (i) the United States' Motion on the Pleadings and for Summary Judgment, filed August 17, 2018 (Doc. 232); and (ii) the United States' Motion On the Pleadings and For Summary Judgment, filed August 17, 2018 (Doc. 233)(collectively the "Motion").[2] The Court held a hearing on September 14, 2018. The primary issues are: (i) whether Plaintiff Pueblo of Jemez' admissions that other Tribes used the Valles Caldera National Preserve lands defeat its claim that it was the exclusive aboriginal user of the lands; (ii) whether admissions that the third-party owners interfered with Jemez Pueblo's Valles Caldera use means that Jemez

---

[1]This Order disposes of the United States' Motion in Limine, filed August 17, 2018 (Doc. 232) and the United States' Motion in Limine, filed August 17, 2018 (Doc. 233). The Court will issue, however, a Memorandum Opinion at a later date more fully detailing its rationale for this decision.

[2]Doc. 233 is the unredacted version of Doc. 232.

Pueblo did not maintain any aboriginal title through continuous use; (iii) whether any statutes of limitations accrued and expired in the decades preceding the United States purchase of the Valles Caldera; (iv) whether rule 19 of the Federal Rules of Civil Procedure bars Jemez Pueblo's claim, because the Pueblo of Santa Clara is a necessary and indispensable party; (v) whether the laches doctrine bars Jemez Pueblo's claim, because Jemez Pueblo supported the United States' acquisition of the Valles Caldera rather than asserting its aboriginal title claim. At the hearing, the Court indicated its need to study the issues further. See Transcript of Hearing at 59:21-22 (taken September 14, 2018), filed September 21, 2018 (Doc. 278)(Court). Having carefully reviewed the record and considered the law, the Court denies the Motion.

First, the Court concludes that whether other Tribes used the Valles Caldera does not per se defeat Jemez Pueblo's claim to aboriginal title over that land. The Court concludes further that genuine issues of material fact remain regarding the extent of other Tribes' Valles Caldera use. The United States asserts that "[i]t cannot reasonably be disputed that other tribes used the Preserve lands in a manner that defeats Plaintiff's aboriginal title claim." Motion at 15. Although the United States Court of Appeals for the Tenth Circuit in this case stated that, "to establish aboriginal title, a Tribe "must show that it used and occupied the land to the *exclusion of other Indian groups*," Pueblo of Jemez v. United States, 790 F.3d 1143, 1165-66 (10th Cir. 2015) (emphasis in original) (internal quotation marks omitted), the exclusive-use-and-occupancy rule is subject to exceptions for joint and amicable use, dominant use, and permissive use, see Alabama-Coushatta Tribe of Tex. v. United States, No. 3-83, 2000 WL 1013532, at *12 (Fed. Cl. June 19, 2000).[3] Hence,

---

[3]The Court of Claims, Claims Court, and Court of Federal Claims cases that discuss the joint-and-amicable-use exception, the dominated use exception, and the permissive use exception to the exclusive-use-and-occupancy rule are not binding precedent; however, the Court concludes that these cases have persuasive value with respect to joint aboriginal title claims and, thus, will assist the Court in its disposition of the case.

evidence of other Pueblos' Valles Caldera use will not necessarily defeat Jemez Pueblo's aboriginal title claim.

Jemez Pueblo asserts that its "use of the Valles Caldera was dominant." Plaintiff Pueblo of Jemez's Response in Opposition to Defendant United States' Motion on the Pleadings and for Summary Judgment at 19, filed August 31, 2018 (Doc. 250)("Response"). The dominant use exception to the exclusive use rule recognizes that, where another Tribe commonly uses the land with the claimant Tribe, proof of the claimant Tribe's dominance over the other Tribe preserves its exclusive use of the land. See United States v. Seminole Indians of Fla., 180 Ct. Cl. 375, 383-86 (1967). Moreover, the claimant Tribe's dominance illustrates its ability to exclude other Tribes from the area, even if it never chooses to exercise that ability. See United States v. Seminole Indians of Fla., 180 Ct. Cl. at 383. Jemez Pueblo, therefore, could maintain its aboriginal title claim through evidence of dominant use of the Valles Caldera. Indeed, Jemez Pueblo asserts that the Pueblos to which the United States refers "have not continuously used the claimed land and any conflicting aboriginal title claims they may have had were extinguished when Jemez Pueblo entered the area or have been abandoned." Response at 20. Given the Tenth Circuit's mandate, that Jemez Pueblo "will have the opportunity to present evidence to support its claim" that "it exercised its right of aboriginal occupancy to [the Valles Caldera] in 1860 and thereafter," the Court will permit Jemez Pueblo to present and challenge evidence regarding when, where, and how often other Tribes' Valles Caldera use occurred. Pueblo of Jemez v. United States, 790 F.3d at 1165.

Second, the Court concludes that Jemez Pueblo's admission that third-party owners interfered with its Valles Caldera use does not defeat Jemez Pueblo's aboriginal title claim. The United States asserts that the "[t]he Tenth Circuit remanded this case so that the parties could

submit evidence about whether 'the Baca grant or use of the land by the Baca heirs or their successors' 'actually interfered with the Jemez Pueblo's traditional occupancy and uses of the land in question here before or after 1946,'" Motion at 22 (quoting Pueblo of Jemez v. United States, 790 F.3d at 1168), and contends that "[t]he Bond and Dunigan families exercised their ownership in a manner that defeats Jemez's claims that it maintained any title to the Preserve," Motion at 22. Indeed, the Tenth Circuit has directed the Court to determine whether there was "actually substantial interference by others" with Jemez Pueblo's traditional uses of the Valles Caldera, Pueblo of Jemez v. United States, 790 F.3d at 1166, and mentions that substantial interference could result from "white settlement and use, authorized by the federal government both statutorily and in fact," 790 F.3d at 1166 (citing United States v. Pueblo of San Ildefonso, 513 F.2d 1383, 1393 (Ct. Cl. 1975)). The Court, however, in accord with controlling Supreme Court of the United States of America precedent, interprets this statement to indicate that aboriginal title extinguishment could result only from Congressionally authorized interference with Jemez Pueblo's traditional Valles Caldera use. See, e.g., United States v. Santa Fe Pac. R.R. Co., 314 U.S. 339, 347 (1941)("Extinguishment of Indian title based on aboriginal possession is of course a different matter. The power of Congress in that regard is supreme."); Cty. of Oneida v. Oneida Indian Nation, 470 U.S. 226, 247-48 (1985)("[C]ongressional intent to extinguish Indian title must be 'plain and unambiguous,' and will not be 'lightly implied.'" (quoting United States v. Santa Fe Pac. R.R. Co., 314 U.S. at 346, 354)). Hence, based on the Tenth Circuit's mandate to consider evidence of "substantial interference by others," Pueblo of Jemez v. United States, 790 F.3d at 1166, the Court has identified five factors, none of which by itself is dispositive, that could support a finding that non-Indians substantially interfered with aboriginal title over time so as to effectuate a gradual taking absent express Congressional intent: (i) the creation of an Indian reservation; (ii)

Congressionally authorized non-Indian settlement of historic Tribal lands; (iii) a Congressionally ratified Executive Order increasing the size of reservation lands set aside for exclusive Indian use; (iv) a cabinet-level order, pursuant to a Congressional act, imposing restrictions on Indian use of their historic lands; and (v) Congressional or executive action designating Tribal land for conservation, recreation, or commercial use, such as a forest reserve, grazing district, or the like, see United States v. Pueblo of San Ildefonso, 513 F.2d at 1386-90; Gila River Pima-Maricopa Indian Cmty. v. United States, 494 F.2d 1386, 1391-93 (Ct. Cl. 1974). Importantly, each of the above factors, which the Court derived from the cases that the Tenth Circuit cited in Pueblo of Jemez v. United States, involve some action on the part of Congress, either directly or through the President, that significantly affects an Indian Tribe's use of its historic lands. In this way, the Court of Claims never completely abrogated Congressional intent to extinguish aboriginal title, but rather found that Congressional intent was implied based on various actions offensive to aboriginal use and possession. Because, in this case, neither party has suggested that Congress has expressly extinguished aboriginal title to the Valles Caldera, the Court will permit both parties to present evidence to support or refute the five above-mentioned factors, each of which support the Tenth Circuit's mandate to consider evidence of "substantial interference by others" with Jemez Pueblo's traditional Valles Caldera use. Pueblo of Jemez v. United States, 790 F.3d at 1166.

Third, the Court concludes that the statutes of limitations to which the United States directs the Court do not bar Jemez Pueblo's aboriginal title claim. The United States contends that Jemez Pueblo's claim is time-barred if the United States permitted "interference with its aboriginal title," Motion at 27 (quoting Pueblo of Jemez v. United States, 790 F.3d at 1147), then asserts that "the facts make clear that Baca heirs' successors precluded traditional Indian use in a manner that caused Plaintiff's claims to accrue both before and after 1946," Motion at 27. In addressing the

United States' argument that the Baca heirs' use of the Valles Caldera is a cloud on title sufficient to trigger accrual against the United States in 1860, the Tenth Circuit counters that "simultaneous occupancy and use of land pursuant to fee title, and aboriginal title, can occur, because the nature of Indian occupancy differs significantly from non-Indian settlers' occupancy." Pueblo of Jemez v. United States, 790 F.3d at 1165. The Tenth Circuit highlights such disparate use when it states that "it is . . . easy to see how a peaceful and private Indian pueblo might have used portions of this large area of land for its traditional purposes while one agreeable rancher was using portions of it for grazing livestock." Pueblo of Jemez v. United States, 790 F.3d at 1165. Jemez Pueblo argues that Jemez people "alive during both periods of Bond and Dunigan ownership" continued to access the Valles Caldera for traditional purposes, to include hunting game, taking eagles, and conducting religious pilgrimages to Redondo Peak, see Response at 22-23, and that "its claim accrued only when the United States acquired an interest in the Valles Caldera in 2000 and began limiting the Jemez Pueblo's access to the land in a manner inconsistent with its aboriginal title," Response at 27 (quoting Pueblo of Jemez v. United States, 790 F.3d at 1152). Based on the nature of aboriginal occupancy, the Court is not convinced that, as a matter of law, a taking occurred between 1860 and 2000, and, therefore, will not bar Jemez Pueblo's claim based on the United States' theory that the statute of limitations accrued.

Fourth, the Court concludes that the Pueblo of Santa Clara is not a necessary and indispensable party such that the Court must dismiss the case pursuant to rule 19. Jemez Pueblo notes that it "does not make any claim to the land transferred by the Dunigans to Santa Clara Pueblo, or the reciprocal easement transferred by the Dunigans directly to Santa Clara Pueblo." Response at 33. Hence, the Pueblo of Santa Clara's absence does not prevent Jemez Pueblo from receiving its requested relief against the United States. Moreover, the Indian lands exception to

the Quiet Title Act, 28 U.S.C. § 2409, precludes the Court from entering judgment that would affect the Pueblo of Santa Clara's easement. See Block v. North Dakota, 461 U.S. 273, 275-76 (1983)(affirming that, pursuant to the Quiet Title Act, the United States does not waive sovereign immunity where the land either is held in "trust or [is] restricted Indian lands"). Furthermore, the Court is confident that the United States will robustly defend against Jemez Pueblo's aboriginal title claim, and thereby defend the Pueblo of Santa Clara's interests in the United States' continued stewardship of the Valles Caldera.

Finally, the United States asserts that the doctrine of laches bars Jemez Pueblo's claims, because Jemez Pueblo requested that the United States purchase the Valles Caldera in 2000. Motion at 40. Laches "bars a party's dilatory claim . . . when there is: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" Biodiversity Conservation All. v. Jiron, 762 F.3d 1036, 1090-91 (10th Cir. 2014)(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)). The Supreme Court, however, has held that laches "'cannot be invoked to bar legal relief' '[i]n the face of a statute of limitations enacted by Congress.'" SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC, 137 S. Ct. 954, 959 (2017)(alterations in original)(quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 679 (2014)). Here, Jemez Pueblo has filed suit pursuant to the Quiet Title Act, which provides for a twelve-year statute of limitations. Hence, because Congress enacted a statute of limitations in the Quiet Title Act, because Jemez Pueblo brought this action pursuant to the statutory authority granted in the Quiet Title Act, and because Jemez Pueblo did so within the statutorily prescribed limitations period, the Court declines to apply laches to bar Jemez Pueblo's claim to the Valles Caldera. See United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1208 (10th Cir. 2001)("When a limitation on the period for bringing suit has been set by statute, laches will

generally not be invoked to shorten the statutory period."). The Court further concludes that, contrary to the United States' assertions, the period between 2000 and when Jemez Pueblo filed its Complaint to Quiet Title to Aboriginal Indian Land, filed July 20, 2012 (Doc. 1), does not represent the "longstanding observances and settled expectations" at issue in <u>City of Sherrill v. Oneida Indian Nation of New York</u>, 544 U.S. 197 (2005), wherein the Supreme Court noted that "[i]t has been two centuries since the Oneidas last exercised regulatory control over the properties" and thereafter applied laches to bar the Oneida's claim that its land purchases unified the land's fee and aboriginal title such that the Oneidas could assert sovereign authority over the recently-reacquired property. <u>City of Sherrill v. Oneida Indian Nation of New York</u>, 544 U.S. at 200.

**IT IS ORDERED** that: (i) the United States' Motion on the Pleadings and for Summary Judgment, filed August 17, 2018 (Doc. 232), and (ii) the United States' Motion on the Pleadings and for Summary Judgment, filed August 17, 2018 (Doc. 233), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Randolph H. Barnhouse
Kelli J Keegan
Justin J. Solimon
Christina S. West
Karl E. Johnson
Veronique Richardson
Dianna Kicking Woman
Tierra Marks
Michelle T Miano
Barnhouse Keegan Solimon & West LLP
Los Ranchos de Albuquerque, New Mexico

--and--

Thomas E. Luebben, Jr.
Law Offices of Thomas E. Luebben
Sandia Park, New Mexico

--and--

Frederick R. Petti
Petti and Briones, PLLC
Scottsdale, Arizona

    *Attorneys for the Plaintiff*

Jeffrey Wood
  Acting Assistant Attorney General
Peter K. Dykema
Matthew Marinelli
Jacqueline M. Leonard
Amarveer Brar
Kenneth Rooney
Kristofor R. Swanson
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
Washington, D.C.

    *Attorneys for Defendant United States of America*

Kirk R. Allen
Elizabeth Reitzel
Miller Stratvert P.A.
Albuquerque, New Mexico

    *Attorneys for the Intervenor Defendant*