## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **PUEBLO OF JEMEZ**, a federally recognized Indian tribe, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:12-cv-800 (JB)(JFR) |
| v. | ) ) | |
| **UNITED STATES OF AMERICA**, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| **NEW MEXICO GAS COMPANY**, | ) ) | |
| Defendant-in Intervention. | ) ) | |

---

### PLAINTIFF PUEBLO OF JEMEZ'S RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TAX COSTS

Plaintiff Pueblo of Jemez requests that the Court deny or reduce the entire cost bill submitted by the Defendant United States in its Motion to Tax Costs.  ECF No. 411.

### LEGAL STANDARD

While there is a presumption in favor of awarding costs to the prevailing party, there are circumstances where awarding costs would be inequitable.  *Mountain Highlands, LLC v. Hendricks*, No. Civ 08-0239 JB/ACT, 2010 WL 1631856, at *4 (D.N.M. April 2, 2010) (Browning, J.).  It would be inequitable to award costs if the prevailing party was obstructive, acted in bad faith during litigation and incurred unnecessary or unreasonably high costs.  *Id.* (citing *A.D. v. Deere & Co.*, 229 F.R.D. 189, 192 (D.N.M. 2004)).  The Court may also reduce or deny costs based on a losing party's ability to pay.  *Id.*

Taxation of costs is allowed for certain out of pocket expenses paid for transcripts and copies of transcripts "necessarily obtained for use in the case."  28 U.S.C. § 1920.  "Necessarily obtained" does not include materials obtained for convenience or to make the task of the trial judge easier.  *McCoy v. Ltd. Driving School*, No. 15-CV-00639 MCA/LAM, 2017 WL 3610552, at *5 (D.N.M. February 21, 2017) (citing *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)).  The most direct evidence of "necessity" is the "actual use of materials obtained by counsel or by the court."  *McCoy*, 2017 WL 3610552, at *5.  Courts do not employ the benefit of hindsight in determining whether materials obtained are reasonably necessary; and each item proposed as a cost should be carefully scrutinized.  *Id.*

Deposition costs are taxable when the deposition is "reasonably necessary to the litigation."  D.N.M. LR-Civ. 54.2(b).  Deposition costs are reasonably necessary when a substantial portion of the deposition is admitted into evidence or used at trial for impeachment, when used by the Court to rule on a motion for summary judgment, or when the Court so determines.  D.N.M. LR-Civ. 54.2(b)(2).  Depositions taken solely for discovery purposes or for the convenience of counsel are not reasonably necessary to the litigation.  *Crandall v. City and Cnty. of Denver, Colo.*, 594 F. Supp. 2d 1245, 1248 (2009).  Costs for a transcription of a deposition prepared merely because a witness has been deposed also are not reasonably necessary.  *Id.* at 1252.

A.    **The United States' General Assertions Fail to Meet its Burden to Prove it is Entitled to an Award of Costs for any of the Depositions.**

The burden is on the party seeking costs to establish the amount of the compensable costs and expenses to which it is entitled.  *Allison v. Bank-One Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).  The party seeking an award of costs assumes the risk of failing to meet that burden.  *Id.*

2

A party is not entitled to costs when it fails to meet the burden of establishing the necessity of the costs. *Allison*, 289 F.3d at 1249 (affirming denial of costs because "justifications and record references were inadequate to support its claim of reasonable necessity"); *Crandall*, 594 F. Supp. 2d at 1249, 1252 (denying costs because explanation offered was highly generalized and conclusory and lacked specific explanations on why depositions necessarily obtained).

Defendant's general assertions fail to meet its burden as to any of the costs for any of the depositions.  Defendant asserts that these deposition costs were necessary "generally in gathering information" about the claim area "land, its history, usage, and geography, … Plaintiff's claims, Plaintiff's factual assertions, expert analyses and facts used by many experts in their reports, and third party factual support."  ECF No. 411 at 3-4.  Other than "generally in gathering information" about this case, Defendant does not articulate a reason why these deposition costs were necessary for trial purposes.  Gathering information is not a basis for establishing necessity of costs because a variety of tools are available for gathering information.  Because the Court cannot assume necessity, and because Defendant does not identify a necessity to justify its costs, Defendant has not met its burden.  Moreover, because Defendant fails to identify the deposition costs to which its proffered explanation applies, the entire cost bill identified by Defendant for these depositions should be denied, or at a minimum reduced.

**B.     The United States Fails to Meet its Burden to Prove it is Entitled to an Award of Costs for the Depositions of TJ Loretto, Greg Gachupin, and William Fogleman.**

Defendant has not met its burden to prove it is entitled to an award of costs for the depositions of TJ Loretto, Greg Gachupin, and William Fogleman.  The Defendant states that the depositions of Mr. Loretto, Mr. Gachupin, and Mr. Fogleman were "integral to witness examination preparation."  ECF No. 411 at 6, 8, 9.  Explaining how a deposition was used does

not establish the necessity of deposing the witnesses or the necessity of having the deposition

transcribed.  Defendant merely describes how the depositions were used but does not offer any

record references or explain why it believes it was necessary to take these depositions or how

these depositions were "integral to witness exam preparations."  Merely stating that a deposition

is "integral" does not explain how or why that is allegedly so.  Defendant has failed to meet its

burden to show the necessity of these deposition costs and these costs must be denied.

**C.      The United States' Video Depositions of Certain Witnesses Should be Denied
          Because Such Costs are Without a Legitimate Independent Purpose.**

Prior decisions from this Court confirm the impropriety of awarding costs for video

depositions.  *See, e.g., Hendrick v. Fitzgerald*, No. CV-14-964 KG/SCY, 2019 WL 4040602, at

*3 (D.N.M. August 27, 2019) (denying video depositions costs because "neither Local Rule 54.2

nor § 1920 contemplate taxing costs for video-deposition services.").  Costs for video

depositions taken in this case should not be awarded, or at a minimum, costs for video

depositions should be reduced.

Costs of a video deposition are taxable "so long as 'necessarily obtained for use in the

case,'" and when put to "'a legitimate use independent from or in addition'" to the written

transcript.  *Mountain Highlands*, 2010 WL 1631856, at *11 (discussing *Tilton v. Capital

Cities/ABC, Inc.*, 115 F.3d 1471, 1477-78 (1997)).  A litigant must show independent use for the

video to justify taxation of those costs.  *Mountain Highlands*, 2010 WL 1631856, at *11.  The

Federal Rules of Civil Procedure prefer the costs of an additional method of recording to be

borne by the party arranging for that additional recording.  *Id.;* (discussing Fed.R.Civ.P.

30(b)(3)(B) ("any party may designate another method for recording the testimony … That party

bears the expense of the additional record or transcript …")).  For purposes of comparison, the

Pueblo of Jemez did not request a single deposition be videotaped in this action nor did Jemez use any of the video depositions arranged by Defendant throughout this entire action.

Defendant does not offer a legitimate independent use that would support an award of costs for the video depositions of Matthew Liebmann and TJ Ferguson. Defendant argues the video depositions of Dr. Liebmann and Dr. Ferguson were necessary because they "repeatedly assisted the Court in weighing the relative credibility of the Parties' experts." ECF No. 411 at 5. However, assistance by video deposition in weighing witness credibility more readily than a paper transcript is not a basis for establishing video deposition costs are necessary. *McCoy*, 2017 WL 3610552, at *6. In *McCoy*, the Court denied costs for video depositions despite the party arguing that "video recordings record different information from a written transcript, including long silences, facial expressions, body language, and more." *Id*. The Court reasoned that because it was possible the witnesses were going to testify where it could access credibility and because the party offered no other legitimate independent use, the costs must be denied. *Id*.

The Court's reasoning in *McCoy* applies here. Defendant asserts that Dr. Liebmann and Dr. Ferguson's video deposition costs were used to expose contradictions in Plaintiff's testimony and for establishing non-exclusive use – both of which Defendant asserts are tied to assisting the Court in weighing credibility. This explanation fails because Dr. Liebmann and Dr. Ferguson both testified extensively at trial, with each witness's testimony lasting two days and with Dr. Liebmann, testifying a third day as a rebuttal witness. The amount of testimony presented by Dr. Liebmann and Dr. Ferguson allowed the Court to readily assess those witnesses' credibility, and to do so in a manner more reliable than any other presentation. Defendant does not identify a legitimate independent use of these video depositions and therefore these costs should be denied.

**D.     The Video Deposition of Joseph A. Toya Should Not be Taxed for Costs Because Those Costs are Duplicative and Not Reasonably Necessary.**

The cost of the video deposition of Joseph A. Toya should not be awarded to Defendant because use of the video was duplicative and not reasonably necessary.  Information presented in a redundant form does little to aid in the Court's understanding of the evidence.  *Crandall*, 594 F. Supp. 2d at 1251.  The video deposition was duplicative because Mr. Toya's written transcript was admitted into evidence as DX-UH, making the video unnecessary.  Tr. 2128:22-2129:1 (Marinelli, Keegan); *Crandall*, 594 F. Supp. 2d at 1251 ("the fact that Exhibit 249 was also presented in paper form indicates that a computerized presentation of the material was not necessary.").  Defendant's Counsel played Mr. Toya's video deposition during Dr. Ferguson's cross-examination and upon realizing the Court reporter was unable to record the video, Counsel provided the reporter the written transcript of Mr. Toya's deposition.  Tr. 1890:11-23 (Marinelli, "I was not aware as I was using the video that Ms. Bean could not transcript the video. And so what we have done is just taken the official transcript of that video … we understand that that's the preferred way to get the words that are said on video into the court records."), Tr. 1934:23-1935:4 (Marinelli).  Later in Dr. Ferguson's testimony, Defendant's Counsel provided Dr. Ferguson the written transcript of all clips played from Mr. Toya's deposition that day because Dr. Ferguson stated he would "need to go back and read the transcript or re-listen to this clip that I'm hearing for the first time."  Tr. 1942:11-1943:6 (Marinelli, Ferguson).  And, near the end of Dr. Ferguson's examination, the written transcript of all clips played from Mr. Toya's deposition and those used by Plaintiff's counsel during re-direct, were admitted into evidence as DX-UH. Tr. 2128:22-2129:1.

The video deposition of Mr. Toya was also used as an extravagance.  To determine whether costs of a certain type of presentation of evidence is "necessarily obtained," the Court

"should consider whether the manner in which the evidence was presented was vital to its effectiveness, or whether it was simply a convenience or extravagance." *Crandall*, 594 F. Supp. 2d at 1251 (internal citations omitted).  Defendant's Counsel repeatedly played a single brief portion of Mr. Toya's deposition where he testified about his personal position on other tribal use of the claim area and played one other brief clip regarding Mr. Toya's contact with other Pueblos.  Tr. 1935:19-1939:19 (Marinelli, Ferguson), Tr. 2769:25-2773:4 (Marinelli Suina), Tr. 2811:25-2814:7 (Marinelli, Suina).  Defendant's Counsel played these two short clips to only non-Jemez tribal witness, Dr. Suina and Dr. Ferguson.  Defendant followed-up with questions implying that Jemez would be opposed to all other tribal members using the claim area if it recovered the area in the final judgment, and that Mr. Toya did not disclose his personal position on other tribal use of the claim area when he was contacting other Pueblos.  *Id*.  Defendant repeatedly played the same brief portions with the same implication that Jemez would be opposed to all other tribal use of the claim area.  Tr. 1942:11-1943:6, Tr. 2811:25-2814:7.  Again, upon realizing the non-effectiveness of playing short, isolated portions of Mr. Toya's video deposition, Counsel would follow-up with Mr. Toya's written transcript.  This limited use of Mr. Toya's video deposition with only non-Jemez tribal witness (Dr. Suina and Dr. Ferguson) should not be deemed reasonably necessary.

Defendant's assertion that Mr. Toya's video deposition was for impeachment also fails because the Court did not use the video deposition of Mr. Toya in its facts on exclusivity of the claim area, relying instead on witnesses who testified at trial, no doubt because the Court was more readily able to assess credibility, rather than using isolated excerpts of the video deposition of a witness the United States never called to testify.  *See generally* ECF No. 398, FOF ¶¶ 386 and 525-534 and n. 170 (citing DX-UH).  Defendant fails to establish the necessity of the video

deposition of Mr. Toya and cannot do so given its reliance on Mr. Toya's written transcript.

Therefore, these costs should be denied.

E.    **Certain DX-JX Deposition Designation Exhibits Should Not be Taxed for the Entire Deposition Costs Because Only a Portion of those Depositions Were Used and Admitted into Evidence.**

A party should not be taxed for costs when only a portion of the deposition transcript was used because such use is not substantial as required by D.N.M. LR-Civ. 54.2(b)(2).  Defendant requests an award for costs for the entire deposition costs of Margaret Loretto (DX-JX-1), Jonathan Romero (DX-JX-4), Steven Gachupin (DX-JX-6), Gregory Kaufman (DX-JX-9), and Eusebio Toya (DX-JX-11)[1] – when only a portion of those depositions were used and admitted into evidence.  The Court should exclude or in the alternative reduce these costs.

Plaintiff should not be taxed for costs for entire depositions when only a fraction of the deposition was used, specifically discussed in witness testimony, or considered by the Court. *Crandall*, 594 F. Supp. 2d at 1251.  In *Crandall*, the Court admitted a computerized exhibit consisting of 203 pages but only considered seven pages, which was less than 5% of the exhibit. *Id*. at 1250.  The Court considered seven pages because only those pages were either specifically discussed in a witness' testimony or referred to in closing arguments.  Because neither the Court or the parties considered the vast majority of the exhibit and because there was no indication in the record that would identify tasks that related solely to developing the portions of the exhibit that were actually considered by the Court, the Court denied the entire costs for the exhibit.  *Id*.

---

[1] Plaintiff is not disputing the costs for the deposition designations of Patrick Dunigan (DX-JX-8) or Allen Raymond Gachupin (DX-JX-2) because unlike the other designation depositions, those deposition designations were actually used by the parties, considered by the Court, and a substantial part of those depositions were admitted into evidence.

The cover sheets for DX-JX-1, DX-JX-4, and DX-JX-11 show that less than one-third of the deposition transcript was admitted.

DX-JX-6 and DX-JX-9 are not cited by the Court in its final opinion and the cover sheets for these exhibits show that less than half of the deposition transcript was admitted.

These DX-JX exhibits were also not specifically discussed in any witness testimony nor were they referred to by the parties except when they were being admitted into evidence.  There is no indication in the record to support an award of costs as to these exhibits, or to assist the Court in determining which portions of the deposition were considered by the Court.  The entire deposition costs for these exhibits should be denied.

**F.    "Convenience Costs" Identified By the United States Should Not Be Included In An Award of Costs To the Defendant.**

Plaintiff objects to Defendant's costs for the video services of Dr. Liebmann's deposition. Defendant identifies $1,203.60 in costs for Day 1 of Dr. Liebmann's video deposition, which appear to include costs for "Appearance," "Technical/Expert," "Videotaped deposition," "Video – Setup and 1st hour," "Video – Additional Hours," and "Processing/Repository."  ECF No. 411-1 at 4.  For Day 2, Defendant identifies costs $1,230.90.  ECF 411-1 at 6.  Because the total cost for each day is close, it seems certain that the same items for Day 1 costs are included in Day 2 costs, however, Day 2 has a thirty dollar and thirty cent increase.  Plaintiff objects to the costs for the video services, including the "Appearance,"[2] "Technical/Expert," and

---

[2] The only other "Appearance" charge in Defendant's Exhibit A is in the invoice for Greg Gachupin's deposition.  Defendant did not include that Appearance charge in its Costs for Mr. Gachupin's deposition, yet includes that charge in its costs for Dr. Liebmann's deposition. *Compare* ECF No. 411 at 9 and ECF No. 411-1 at 15.  Plaintiff objects to that Appearance charge.

"Processing/Repository" fees; and objects to the difference in costs for the video services of Day 1 and Day 2 because both days lasted the same amount of time.[3]

The Court should also reject costs Defendant incurred for convenience of its counsel. *Burton v. R.J. Reynolds Tobacco Co.,* 395 F. Supp. 2d 1065, 1080 (D.Kan. 2005) (disallowing additional charges on court report invoices, including reporter's expeditated rates because items are for convenience of counsel).  Defendant includes costs for the court reporter's expedited rate and rush delivery in some deposition costs.  Defendant identifies $801.45 in costs for Lois Weslowski's deposition.  The cited documentation shows the $801.45 includes "Original & Copy – Expedite Delivery."  ECF No. 411-1 at 12.  Defendant identifies $1,231.95 in costs for Joseph Suina's deposition.  The cited documentation shows the $1,231.95 includes "Original & Copy Transcript(s) – Expedite & Rush Draft Delivery."  ECF 411-1 at 19.  Because expedite and rush draft delivery services are for the convenience of counsel, these costs must be denied.

Plaintiff objects to John Roney's deposition costs because the costs are for convenience and Defendant miscalculates the costs.  Defendant identifies $786.50 in written deposition costs for Mr. Roney.  The cited documentation shows the $786.50 includes "Original & Copy Transcript(s) – Rough & Rush Draft Delivery."  ECF No. 411-1 at 29.  Defendant identifies $1,112.50 in video deposition costs for Mr. Roney, however the cited documentation does not support that amount.  It appears that Defendant is adding the costs of the increased rate of "Deposition Hours (Sunday X 1.5 regular rate),"  "Synced Video with Transcript … Roney" and "Synced Video with Transcript … Ferguson."  ECF No. 411-1 at 30.  Plaintiff objects to costs for the reporter's rough and rush draft delivery, video-syncing services; and objects to

---

[3] Day 1 of Dr. Liebmann's deposition began at 9:11 AM and ended at 3:55 PM.  Day 2 of Dr. Liebmann's deposition began at 9:03 AM and ended at 3:52 PM.

Defendant's cost calculations for the video-syncing services of Mr. Roney and Mr. Ferguson. These costs are for convenience rather than necessity and must be denied.

**G.      Due to Plaintiff's Financial Position, Defendant's Costs Should be Excluded or in the Alternative Reduced.**

Costs can be denied on grounds of indigence if the losing party shows an inability to pay. *Lucero v. Bureau of Collection Recovery Inc.,* No. CIV 09-0532 JB/WDS, 2012 WL 3861986, at *3 (D.N.M. August 30, 2012) (Browning. J.).  While Courts are hesitant to deny costs solely on the basis of inability to pay, Courts are less hesitant when there is some other apparent reason for denying costs.  *Id*.

Although if ordered to do so, the Pueblo of Jemez will pay awarded costs, however, the Pueblo has no significant source of income and payment of these costs would be a burden on its resources.  Given that the presentation of issues in this action are close and difficult, and that many of the requested costs are unreasonably or unnecessarily high, it would be inequitable to require Jemez to pay the requested costs.  *Id*.  at *4 (discussing *Rodriguez v. Whiting Farms Inc.,* 360 F.3d 1180, 1190 (10th Cir. 2004)) ("case presents close and difficult questions can serve as a valid basis to deny costs").  In *Lucero*, while the Court found that the non-prevailing party was indigent because he provided actual documentation, the Court still awarded costs because there lacked other apparent reasons to deny the award.  Here, in contrast, are many reasons to deny or reduce Defendant's requested award of costs.

Throughout this action, Defendant has made it part of their litigation strategy to establish Jemez is without adequate finances and is not financially self-sufficient.  Defendant has repeatedly argued that "Jemez does not currently have the funds to manage the Valles Caldera on its own going forward."  Tr. 2586:22-2587:1 (Marinelli, J. Madalena), Tr. 3814:10-17 (Brar, R. Loretto); Defendant's Proposed Facts, ECF No. 386, PFOF ¶ 209 at 55 ("Plaintiff cannot

maintain the Preserve lands without federal assistance."); *see also* ECF No. 398, FOF ¶ 336 at 149.  Defendant has repeatedly established for the Court that Jemez relied on other tribes, grants, and organizations to fund this litigation.  Tr. 2634:9-13 (Marinelli, J. Madalena).  Defendant also repeatedly established that Jemez's tribal government programs are without adequate financial means.  For example, Defendant cross-examined Jemez witnesses on the budget of Jemez's Volunteer Fire Department and whether it could afford to fight for example, the Thompson Ridge Fire.  Tr. 4376:11-16 (Marinelli, V. Gachupin); *see also* Defendant's Post-Trial Brief, ECF No. 390 at 109 ("Plaintiff's inability to fund fire prevention and suppression").  Defendant's trial strategy has been to repeatedly show that Jemez is unable to operate and manage the claim area, pay for this litigation, and is not financially self-sufficient – yet Defendant now seeks an award of costs totaling $30,867.79, from this financially challenged Indian Pueblo.

During trial, the Court heard testimony on Jemez Pueblo's limited revenue generating operations.  For example, Jemez Pueblo does not have gaming, does not receive oil or gas revenues, and has only limited tourist-related income.  Most of Jemez Pueblo's tribal government programs are supported entirely by federal grant funding.  Tr. 1465:3-1466:5 (Johnson, P. Chinana).  Jemez Pueblo relies extensively on federal funding and grants, and because its income received from its timber industry is so small, Jemez Pueblo is forced to rely on fundraising initiatives such as its annual golf tournament.  *Id.*

Jemez Pueblo's financial condition is not the sole basis for the Court to consider when evaluating whether to deny an award of costs to Defendant.  Jemez Pueblo's financial challenges, coupled with Defendant's failure to meet its burden to establish necessity of costs, the lack of a legitimate independent purpose for certain videotaped depositions, the duplicative and extravagant use of video depositions, the lack of substantial use of certain DX-JX deposition

designations, and Defendant's taxation of costs for convenience and miscalculated costs are all

substantive reasons to deny Defendant's motion for an award of costs.

And finally, the presentations of fact and law addressing the issues in this case were

extremely close and difficult.  Jemez has had success on significant issues in this litigation which

have achieved for Jemez some of the benefits of why it brought this suit.  *Kopunec v. Nelson*,

801 F.2d 1226, 1228-29 (10th Cir. 1986) (The court looks to the substance of the litigation to

determine whether an applicant has substantially prevailed in its position, and not merely the

technical disposition of the case or motion); *see also Citizens For Better Forestry v. U.S. Dep't*

*of Agr.*, 567 F.3d 1128, 1133 (9th Cir. 2009) ("[A] favorable determination on a legal issue … is

not enough by itself.").  During this litigation,

- Jemez prevailed on its argument that neither Santa Clara or Zia or any other Pueblo or Tribe are necessary and indispensable parties to this litigation.  ECF No. 398 at 468.
- Jemez prevailed on its argument that the Indian Claims Commission Act's Statute of Limitation does not bar its Aboriginal Title Claim.  ECF No. 398 at 472.
- Jemez prevailed on its argument that laches does not bar its Aboriginal Title Claim.  ECF No. 398 at 476.
- Jemez prevailed on its argument that interference by private landowners with Plaintiff's aboriginal uses prior to 2000 is insufficient to defeat its Aboriginal Title Claim.  ECF No. 398 at 497.
- Jemez prevailed on its argument that to extinguish aboriginal title, there must be express Congressional intent and that intent must be obvious.  ECF No. 398 at 496, ECF No. 317 at 118-121 n.39.
- Jemez prevailed on its argument that Article I Indian Claims Commission courts opinions are not binding on Article III courts.  ECF No. 317 at 118-121 n.39.
- Jemez prevailed on proving it actually and continuously used the claim area for a long time.  ECF No. 398 at 483.

Jemez has prevailed on many of its positions and while this case was technically disposed

of in favor of Defendant, as recently argued by Jemez in its Motion for Reconsideration and

acknowledged by the Court in closing argument, this case boils down to discrete legal issues of

exclusivity.  For these reasons, Defendant's request for an award of costs should be denied, or its

request substantially reduced.

## CONCLUSION

The Pueblo of Jemez respectfully requests that the Court deny Defendant's Motion to

Tax Costs or reduce the entire cost bill for the reasons identified above.

Respectfully Submitted,

*/s/ Randolph H. Barnhouse*

Randolph H. Barnhouse
Tierra Njoni Marks
Barnhouse Keegan Solimon & West LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
Phone:  (505) 842-6123
Fax:      (505) 842-6124
E-mail: dbarnhouse@indiancountrylaw.com
            tmarks@indiancountrylaw.com

*Counsel for Plaintiff Pueblo of Jemez*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 30, 2019, I caused to be filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew Marinelli, Matthew.Marinelli@usdoj.gov
Peter Dykema, Peter.Dykema@usdoj.gov
Jacqueline Leonard, Jacqueline.Leonard@usdoj.gov
*Counsel for Defendant United States*

Kirk R. Allen, kallen@mstlaw.com
Elizabeth M. Reitzel, ereitzel@mstlaw.com
*Counsel for Defendant-in-Intervention NMGC*

*/s/ Randolph H. Barnhouse*
Randolph H. Barnhouse